No. 24-1754

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

YAPP USA AUTOMOTIVE SYSTEMS, INC., *Plaintiff-Appellant*,

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency;
JENNIFER ABRUZZO, in her official capacity as the General Counsel of the
National Labor Relations Board; LAUREN M. McFERRAN, in her official
capacity as the Chairman of the National Labor Relations Board; MARVIN E.
KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official
capacities as Board Members of the National Labor Relations Board; and
ARTHUR AMCHAN in his official capacity as an Administrative Law Judge of
the National Labor Relations Board, *Defendants-Appellees*.

On Appeal from the United States District Court
for the Eastern District of Michigan
Docket No. 2:24-cv-12173
The Honorable Laurie J. Michelson

**APPELLANT YAPP USA AUTOMOTIVE SYSTEMS, INC.'S
EMERGENCY MOTION FOR PRELIMINARY INJUNCTION & STAY
PENDING APPEAL**

Matthew T. Nelson
Amanda M. Fielder
Warner Norcross + Judd LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
Telephone: (616) 752-2000
E-mail: mnelson@wnj.com

Hunter K. Yoches
Robert W. Horton
Timothy K. Garrett
Bass Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6200
Email: hunter.yoches@bassberry.com

*Attorneys for Plaintiff-Appellant*

Dated: September 17, 2024

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Sixth Circuit Rule 26.1, Plaintiff-Appellant, YAPP USA Automotive Systems, Inc. makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?

**Answer**: Yes. YAPP USA Automotive Systems, Inc. is wholly owned by YAPP America Holding, Inc. YAPP America Holding, Inc., in turn, is wholly owned by YAPP Automotives Systems Co., LTD.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

**Answer**: No.

Dated: September 17, 2024

*s/ Matthew T. Nelson*
Matthew T. Nelson
Amanda M. Fielder
R. Michael Azzi
Warner Norcross + Judd LLP
1500 Warner Building
150 Ottawa Avenue NW
Grand Rapids, MI 49503
(616) 752-2000
mnelson@wnj.com

Attorneys for Plaintiff-Appellant

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................. iii

INTRODUCTION ............................................................................................... 1

STATEMENT OF THE CASE.............................................................................. 2

ARGUMENT ....................................................................................................... 4

    I.    YAPP is likely to succeed on the merits ................................................ 5

        A.    NLRB Board Members are unconstitutionally insulated
            from removal .............................................................................. 5

        B.    NLRB ALJs are unconstitutionally insulated from
            removal...................................................................................... 11

    II.    YAPP will suffer irreparable harm without a preliminary
        injunction............................................................................................. 15

    III.    The balance of equities tips in YAPP's favor and an injunction
        is in the public interest ........................................................................ 19

CONCLUSION AND REQUESTED RELIEF ....................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. McCreary County*,
  354 F.3d 438 (6th Cir. 2003) ...............................................................20

*Alpine Securities Corp. v. FINRA*,
  2023 WL 4703307 (D.C. Cir. July 5, 2023) .......................................21

*Axon Enterprises v. FTC*,
  598 U.S. 175, 191 (2023).............................................................*passim*

*Bonnell v. Lorenzo*,
  241 F.3d 800 (6th Cir. 2001) ...............................................................20

*BST Holdings, L.L.C. v. OSHA*,
  17 F.4th 604 (5th Cir. 2021) ................................................................23

*Calcutt v. FDIC*,
  37 F.4th 293 (6th Cir. 2022) ..............................................17, 20, 21

*Cochran v. SEC*,
  20 F.4th 194 (5th Cir. 2021) .........................................................21, 22

*Collins v. Yellen*,
  594 U.S. 220 (2021).........................................................................9, 12

*Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville &
  Davidson County*,
  274 F.3d 377 (6th Cir. 2001) ...............................................................24

*In re DeLorean Motor Co.*,
  755 F.2d 1223 (6th Cir. 1985) ..........................................................7, 8

*Energy Transfer, LP, v. NLRB*,
  --- F. Supp.3d ---, 2024 WL 3571494 (S.D. Tex. 2024).............17, 22

*Free Enterprise Fund v. Public Company Accounting Oversight
  Board*,
  561 U.S. 477 (2010).....................................................................*passim*

*Humphrey's Executor v. United States*,
295 U.S. 602 (1935) .................................................................. 10, 13

*Jarkesy v. SEC*,
34 F.4th 446 (5th Cir. 2022) ....................................................... 15, 16

*Leachco, Inc. v. Consumer Product Safety Commission*,
103 F.4th 748 (10th Cir. 2024) ................................................... 13

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ........................................................ 23

*Lucia v. SEC*,
585 U.S. 237 (2018) .................................................................... 14

*Nken v. Holder*,
556 U.S. 418 (2009) .................................................................... 23

*Overstreet v. El Paso Disposal, L.P.*,
625 F.3d 844 (5th Cir. 2010) ...................................................... 11

*Overstreet v. Lexington–Fayette Urban County Government*,
305 F.3d 566 (6th Cir. 2002) ...................................................... 22, 23

*Planned Parenthood Association of Cincinnati, Inc. v. City of Cincinnati*,
822 F.2d 1390 (6th Cir. 1987) .................................................... 23

*Rieth-Riley Construction Co. v. NLRB*,
--- F.4th ---, 2024 WL 3811837 (6th Cir. 2024) ......................... 9

*SEC v. Jarkesy*,
144 S. Ct. 2117 (2024) ................................................................ 16

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020) ............................................................... *passim*

*Space Exploration Technolo-Gies Corp. v. NLRB*,
--- F. Supp. 3d ---, 2024 WL 33512082 (W.D. Tex. 2024) .......... 13, 14, 17

*Stern v. Marshall*,
564 U.S. 462 (2011) .................................................................... 24

iv

*United States v. Texas*,
  599 U.S. 670 (2023)............................................................................11

*Westrock Servs., Inc.*,
  366 NLRB No. 157 (Aug. 6, 2018) ....................................................15

*Winter v. Natural Resource Defene Council, Inc.*,
  555 U.S. 7 (2008).................................................................................7

*YAPP USA Automotive Systems, Inc. v. NLRB*,
  2024 WL 4119058 (E.D. Mich. Sept. 9, 2024) ....................................4

**Constitutional Provisions**

U.S. Constitution Article II ................................................................8, 14

**Statutes**

5 U.S.C. § 1202 .....................................................................................17

5 U.S.C. § 7521 .....................................................................................17

28 U.S.C. § 1292 .....................................................................................4

29 U.S.C. § 153 ..................................................................................9, 13

29 U.S.C. § 154 .....................................................................................10

29 U.S.C. § 156 .....................................................................................11

29 U.S.C. § 159 .....................................................................................11

29 U.S.C. § 160 ........................................................................11, 15, 18

**Other Authorities**

12 CFR § 208.39 ...................................................................................18

29 CFR §102.4 ............................................................................15, 18

29 CFR § 102.35 ....................................................................................15

# INTRODUCTION

This is an action challenging the constitutionality of proceedings before the National Labor Relations Board ("NLRB" or "Board"). Similar challenges are pending in various other courts, including the Fifth Circuit. *See YAPP USA Auto. Sys., Inc. v. NLRB*, 2024 WL 4119058, at *1 fn.1 (E.D. Mich. Sept. 9, 2024). Plaintiff-Appellee YAPP USA Automotive Systems, LLC is the subject of NLRB proceedings before an NLRB ALJ. Those hearings were scheduled for four days starting September 10, 2024, until the district court stayed the proceeding. That stay has been lifted, and the NLRB has rescheduled the hearing for October 15, 2024. YAPP sought a preliminary injunction from the district court, but that court denied the motion (initially granting a stay and injunction pending appeal and then reversing that ruling). The district court's ruling is an abuse of discretion, so YAPP promptly appealed pursuant to 28 U.S.C. § 1292(a)(1).

Based on recent Supreme Court precedent, YAPP will suffer the very harm that its challenge to the constitutionality of the NLRB's proceedings is intended to prevent if the NLRB proceedings go forward. Accordingly, pending resolution of YAPP's appeal, this Court should (1) preliminarily enjoin the NLRB from further administrative proceedings against YAPP, and (2) stay the proceedings in the district court.

**STATEMENT OF THE CASE**

YAPP is a world class, Tier 1 automotive supplier. (R.4-1, Pratt Decl. ¶ 4, PageID.83.) YAPP has a facility located in Romulus, Michigan. (*Id*. ¶ 5, PageID.83.)

Former YAPP employee Jesse Dowling worked as an Advanced Maintenance Technician at the Romulus plant. (*Id*. ¶ 6, PageID.83.) On May 5, 2023, YAPP terminated Mr. Dowling for workplace violence. (*Id*. ¶ 7, PageID.83.) On June 22, 2023, UAW Local 174 ("Charging Party") filed an unfair labor practice charge (Case 07-CA-320369) regarding Mr. Dowling's termination. (R.4-2, Garrett Decl. ¶ 5, PageID.86.)

On July 31, 2023, the UAW filed a Certification of Representative Petition for a Unit at YAPP's Romulus plant consisting of all full-time and regular part-time production and maintenance employees. (*Id*. ¶ 6, PageID.86.) An election was held, and on September 25, 2023, Elizabeth Kerwin, Region 7 Regional Director, certified the elections results, noting that a collective-bargaining representative had not been selected and that no timely objections had been filed. (*Id*. ¶ 7 & Ex. A (Cert. of Results of Election), PageID.86, 89.)

On September 29, 2023, the UAW filed an amended unfair labor practice charge regarding the Dowling termination and certain terms and conditions of employment for YAPP employees, but it made no allegation with respect to the election's conduct. (*Id*. ¶ 8, PageID.86-87.)

On February 1, 2024, UAW filed another unfair labor practice charge (Case 07-CA-336485) regarding the election and other claims. (*Id*. ¶ 9, PageID.87.)

On April 9, 2024, Region 7 Regional Director issued a complaint as to the first charge, 07-CA-320369, and noticed an administrative hearing for July 16, 2024. (*Id*. ¶ 10 & Ex. B (Notice), PageID.87, 90.) YAPP answered the complaint. (*Id*.) By agreement, the hearing was continued to September 10, 2024. (*Id*.)

On August 6, 2024, the Regional Director consolidated the two cases, issued an amended complaint (which YAPP answered), and set an administrative hearing on the amended complaint for the September 10, 2024 date already scheduled. (*Id*. ¶ 11 & Ex. C (Compl. & Notice of Hr'g), PageID.87, 91.)

On August 12, 2024, YAPP moved to postpone the hearing given the numerous new allegations. (*Id*. ¶ 12, PageID.87-88.) YAPP asked for a two-month extension— a reasonable period, given the added allegations and additional material relief sought. (*Id*.) The General Counsel and Union objected, and on August 13, 2024, Defendant ALJ Amchan denied YAPP's motion. (*Id*.) The hearing remained set for September 10, 2024. (*Id*. ¶ 14, PageID.88.)

On August 19, 2024, YAPP sued in the Eastern District of Michigan. (R.1, Compl., PageID.1-28.) YAPP asked the court to enjoin the NLRB proceedings because the NLRB's structure is unconstitutional and so are the administrative proceedings. (R.4, Mot. for Prelim. Inj., PageID.37-38.) On September 9, 2024, the

district court denied YAPP's preliminary-injunction motion. (R.29, Order, PageID.305-38.) YAPP immediately moved for a stay and injunction pending appeal, which the court granted later that day. (R.31, Pl.'s Emerg. Stay, PageID.340-53; R.34, Order, PageID.366-67.) Defendants sought reconsideration, and the court reversed its order staying the case on Friday, September 13. (R.37, Recon. Order, PageID.406-10.) The NLRB has rescheduled the hearing for October 15, 2024. (*See* Hearing Notice, attached.)

## ARGUMENT

To obtain a preliminary injunction, YAPP must show: (1) it is likely to succeed on the merits of its constitutional claims; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Even if the court is not certain that a movant is likely to succeed on the merits, a preliminary injunction is still appropriate where the plaintiff shows "serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant" or if "the merits present a sufficiently serious question to justify further investigation." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229-30 (6th Cir. 1985) (quotations omitted).

While YAPP remains confident on the merits of its challenge, this case is precisely the case contemplated by this Court in *In re DeLorean Motor Co. See id*.

(quoting *Am. Fed. of Musicians v. Stein*, 213 F.2d 679, 683 (6th Cir. 1954) ("When the nature of the questions which arise upon a suit make them a proper subject for deliberate examination, and if a stay of proceedings will not result in too great injury to the defendants, it is proper to preserve the existing state of things until the rights of the parties can be fairly and fully investigated and determined.")). Here, as the district court found in its order granting the stay, "conflicting opinions have been issued on the claims raised in the underlying motion and others remain pending," and the Sixth Circuit has not addressed these claims "in connection with the NLRB." (R.34, Order, PageID.366-67.)

## I. YAPP is likely to succeed on the merits.

### A. NLRB Board Members are unconstitutionally insulated from removal.

Article II of the Constitution states that the President must "take care that the Laws be faithfully executed." U.S. Const. art. II, § 3, cl. 3. Because the executive responsibility remains vested in the President, the officers of every administrative agency—including "independent" ones—must be subject to presidential oversight. *See Free Enter. Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 513-14 (2010). To exercise this power and comply with this "Take Care Clause," the President must be able to remove subordinate officers who assist in effectuating the President's duties. *Rieth-Riley Constr. Co. v. NLRB*, --- F.4th ---, 2024 WL

3811837, at *6 (6th Cir. 2024). The Constitution thus requires that the President have the "power to remove—and thus supervise—those who wield executive power on his behalf." *Seila Law LLC v. CFPB*, 591 U.S. 197, 204 (2020). "The President's removal power is the rule, not the exception." *Id*. at 228.

The President has the power to appoint NLRB Board members. *See* 29 U.S.C. § 153(a). The NLRB consists of five Board members. *Id*. With the advice and consent of the Senate, the President appoints Board members to staggered, five-year terms. The President designates one Board member to serve as the Chairman. *Id*. Article II requires the President to maintain "unrestricted removal power" over all federal officials "who wield executive power," subject to two potential exceptions. *Seila Law*, 591 U.S. at 204. However, under the NLRA, the President may only remove Board members "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). These limitations restrict the President's "unrestricted removal power" guaranteed by Article II. *Seila Law*, 591 U.S. at 204.

The Supreme Court has found this restriction on the President's power to be unconstitutional. *See Collins v. Yellen*, 594 U.S. 220, 256 (2021) ("The President must be able to remove not just officers who disobey his commands but also those he finds 'negligent and inefficient[.]'" (quoting *Myers v. United States*, 272 U.S. 52, 135 (1926))). In *Seila Law*, the Supreme Court held that "the [Consumer Financial

Protection Bureau]'s leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers." 591 U.S. at 213.

For principal officers, the Supreme Court has recognized only one narrow exception "for multimember expert agencies that do not wield substantial executive power." *Id.* at 218. This exception originated in *Humphrey's Executor v. United States*, which determined that the Commissioners of the Federal Trade Commission ("FTC") did not at the time exercise "executive power in the constitutional sense." 295 U.S. 602, 628 (1935).[1]

However, contrary to the district court's ruling, NLRB Board Members do wield substantial executive power. The Board has power to appoint the "executive secretary, and such attorneys, examiners, and regional directors, and other such employees as it may...find necessary for the proper performance of its duties." 29 U.S.C. § 154. The Board has the executive power to prevent any person from engaging in an unfair labor practice, decide unfair-labor-practice charges, issue subpoenas, engage in rulemaking, conduct union-representation elections, determine appropriate units for the purpose of collective bargaining, and adjudicate

---

[1] In *Seila Law*, the Supreme Court stated that its conclusion that "the FTC did not exercise executive power has not withstood the test of time. . . . '[I]t is hard to dispute that the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree.'" 591 U.S. at 216 n.2.

representation-election disputes. *See* 29 U.S.C. §§ 156, 159, 160. By further example, Section 10(j) gives the Board authority to exercise quintessentially prosecutorial power in federal district courts. 29 U.S.C. § 160(j); *see, e.g.*, *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010) ("Petition power under § 10(j) is prosecutorial in nature[.]").  The NLRA vests in the Board the authority "to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce." 29 U.S.C. § 160(a). In this way, the NLRB wields substantial executive power as an enforcement body.

The Supreme Court has made clear that even when "the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they are exercises of—indeed, under our constitutional structure they must be exercises of—the "executive Power.'" *Seila Law*, 591 U.S. at 216 n.2.[2] And prosecuting someone for alleged violations of federal law lies at the heart of the Constitution's concept of Executive Power. *See, e.g.*, *United States v. Texas*, 599 U.S. 670, 678-79 (2023); *Seila Law*, 591 U.S. at 218-19.  Because Board Members exert substantial executive authority, the President must be able to remove them without barriers.

---

[2] The Supreme Court's statements here show that *Leachco* and the district court's reliance upon it in this regard, is error.

The Supreme Court recognizes this removal power is impermissibly restrained by statutes that limit the President's ability to remove an executive official, either by restricting who can remove, or limiting the rationale for removal. *See Free Enter.*, 561 U.S. at 495; *Seila Law*, 591 U.S. at 205; *Collins*, 594 U.S. 220 at 250-51. For example, in *Free Enterprise Fund*, the Court invalidated a for-cause removal restriction on the members of the Public Company Accounting Oversight Board. 561 U.S. at 495-96. The officers in question could be removed only for cause by officers of the SEC, who in turn could be removed only for cause by the President. The Court held that this removal restriction "subvert[ed] the President's ability to ensure that the laws are faithfully executed" and was thus "incompatible with the Constitution's separation of powers." *Id*. at 498. Indeed, the Supreme Court stated:

> No one doubts Congress's power to create a vast and varied federal bureaucracy. But where, in all this, is the role for oversight by an elected President? The Constitution requires that a President chosen by the entire Nation oversee the execution of the laws. And the 'fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution,' for '[c]onvenience and efficiency are not the primary objectives—or the hallmarks—of democratic government.'"

*Free Enter.*, 561 U.S. at 499.[3]

---

[3] The removal protections for NLRB Members are stricter than those recognized as the outer limits of constitutional permissiveness that insulated the FTC Commissioners in 1935 (and still do). The latter are removable "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Ex'r*, 295 U.S. at 620 (quoting 15 U.S.C. § 41). NLRB Members, in contrast, are removable only "for

The President's lack of unfettered power to remove NLRB Board members due to these statutory restrictions violates Article II of the Constitution.

Here, the district court incorrectly held that the "NLRB appears to fall comfortably within the *Humphrey's Executor* exception." (R.29, Order, PageID.314.) The district court's application of *Humphrey's Executor* to the NLRB is wrong.[4] There, the Supreme Court recognized only one narrow exception for principal officers, namely "for multimember expert agencies that do not wield substantial executive power." *Seila Law*, 591 U.S. at 218. But that narrow exception

---

neglect of duty or malfeasance in office," but not for other causes like inefficiency, 29 U.S.C. § 153(a).

[4] With respect to the Board Members, as well as with respect to the ALJs and irreparable harm, the district court leans on *Leachco, Inc. v. Consumer Product Safety Comm'n*, 103 F.4th 748 (10th Cir. 2024). However, that case was wrongly decided and is not applicable here. First, it does not analyze or even acknowledge the harm alleged here—the harm inherent in being made to participate in an unconstitutional proceeding. The district court erred by relying upon *Leachco* because unlike the issue there, the underlying issue here "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." Even though the agency's order could be vacated after the proceeding, a "separation-of-powers claim" challenging unconstitutional removal protections "is not about that order" but about avoiding "an illegitimate proceeding." *See Space Expl.*, --- F. Supp.3d ---, 2024 WL 3512082, at *4 (W.D. Tex. 2024) (citing *Axon Enterp. v. FTC*, 598 U.S. 175, 191 (2023)). Second, the Consumer Product Safety Commission is not akin to the NLRB. Therefore, the holding in *Leachco* should not apply to the NLRB. Instead, this case is now before the Court following the Supreme Court's decision in *Axon*, which is binding. Furthermore, the district court's reliance upon *Morrison*, which *Leachco* heavily relies upon, is also misplaced as *Morrison* dealt with inferior officers. *See Seila Law*, 591 U.S. at 219 ("The logic of *Morrison* also does not apply.").

does not apply here because NLRB Board Members *do* wield substantial executive power. Indeed, this very application of *Humphrey's Executor* was rejected in *Space Exploration Technolo-Gies Corp. v. NLRB*:

> [A]llowing Congress to eliminate the President's ability to remove principal officers for inefficiency would be an unjustified expansion of Humphrey's Executor. *See Collins*, 141 S. Ct. at 1787. ("The President must be able to remove not just officers who disobey his commands but also those he finds 'negligent and inefficient[.]' ") (quoting *Myers v. U.S.*, 272 U.S. 52, 135, 47 S. Ct. 21, 71 L. Ed. 160 (1926)). **Finding that NLRB Member's removal protection constitutional would require this court to expand *Humphrey's Executor* where the Supreme Court has repeatedly declined to do so.** *See Free Enterprise Fund*, 561 U.S. 477 …; *see also Seila L. LLC*, 591 U.S. 197 …; *Collins*, 594 U.S. 220….

--- F. Supp.3d ---, 2024 WL 3512082, at *4 (W.D. Tex. 2024) (emphasis added).

## B.     NLRB ALJs are unconstitutionally insulated from removal.

Article II's Appointments Clause also provides the President authority to appoint officers and inferior officers of the United States. *See* U.S. Const. art. II, § 2. ALJs function as inferior officers of an executive agency. *See Lucia v. SEC*, 585 U.S. 237, 248-49 (2018); *Westrock Servs., Inc.*, 366 NLRB No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). Inferior officers "are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy v. SEC*, 34 F.4th 446, 464 (5th Cir. 2022), *aff'd*, 144 S. Ct. 2117 (2024). "If principal

officers cannot intervene in their inferior officers' actions except in rare cases, the President lacks the control necessary to ensure that the laws are faithfully executed." *Jarkesy*, 34 F.4th at 464.

The Supreme Court did recognize in *Humphrey's Executor* an exception to the President's removal power as it relates to inferior officers: "one for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 591 U.S. at 218. That exception does not apply here, however, because NLRB ALJs possess vast "administrative authority." *Id*. The NLRB's ALJs exercise considerable power over administrative case records by controlling the presentation and admission of evidence. 29 CFR § 102.35-45. In some cases, ALJ decisions are final and binding. Once an ALJ files a decision and recommended order, absent timely exceptions, the findings, conclusions, and recommendations contained in the ALJ's decision will automatically become the decision and order of the Board pursuant to Section 10(c) of the Act. 29 U.S.C. §160(c) and 29 CFR §102.48(a).

Relying on this Supreme Court precedent, the Fifth Circuit recently ruled that SEC ALJs were unconstitutionally insulated from removal by a two-layer "for cause" removal system. Under the SEC structure, SEC ALJs could be removed: (1) by the SEC "for good cause established and determined by the Merit Systems Protection Board (MSPB) on the record after opportunity for hearing before the

Board,"[5] and (2) the SEC Commissioners could only be removed by the President for good cause. *Jarkesy*, 34 F.4th at 463.[6]

The Fifth Circuit ruled that "SEC ALJs exercise considerable power over administrative case records by controlling the presentation and admission of evidence; they may punish contemptuous conduct; and often their decisions are final and binding." *Id.* Because ALJs were so insulated from removal, the Fifth Circuit determined that the President could not take care to faithfully execute the laws as required by the Take Care Clause.

This structure, found unconstitutional by the Fifth Circuit based on Supreme Court precedent, is nearly identical to the NLRB's structure for ALJs, including the ALJ assigned to preside over the pending NLRB proceedings against YAPP. The NLRB appoints ALJs, but the NLRA provides at least two layers of for-cause removal protections for them, which in turn unconstitutionally prevents the President from exercising Presidential authority under Article II. NLRB ALJs can only be removed "for good cause established and determined" by the MSPB after hearing, and the MSPB Members who may remove ALJs are removable by the President only

---

[5] If the MSPB finds good cause to remove an SEC ALJ, the Commission must then choose to act on that finding. *Jarkesy*, 34 F.4th at 463

[6] The Supreme Court affirmed the Fifth Circuit's ruling on other grounds without considering the Article II argument. *SEC v. Jarkesy*, 144 S. Ct. 2117, 2127-28 (2024).

for "inefficiency, neglect of duty, or malfeasance in office." Thus, NLRB ALJs are insulated from the President by at least two layers of for-cause removal protections. *See* 5 U.S.C. § 7521(a) and 5 U.S.C. § 1202(d). As the Supreme Court has held, "the added layer of tenure protection makes a difference...[a] second level of tenure protection changes the nature of the President's review...[t]hat arrangement is contrary to Article II's vesting of the executive power in the President." *Free Enter.*, 561 U.S. at 495-96. Therefore, binding Supreme Court precedent shows that YAPP will likely succeed on its claim here. Indeed, two district courts recently addressed this exact issue in the context of the NLRB ALJs, and both have granted motions for preliminary injunctions. *See Space Expl.*, 2024 WL 3512082; *Energy Transfer, LP, v. NLRB*, --- F. Supp.3d ---, 2024 WL 3571494 (S.D. Tex. 2024).

In *Calcutt v. FDIC*, 37 F.4th 293 (6th Cir. 2022) *rev'd in part on other grounds* 598 U.S. 623 (2023), this Court held that ALJs for the Federal Deposit Insurance Corporation (FDIC) were not unconstitutionally protected from removal. That analysis is inapposite here. FDIC ALJs only make recommendations that are subject to review by the FDIC Board. After an FDIC ALJ makes a recommendation, the FDIC Board's final decision "will be based upon review of the entire record of the proceeding, except that the Board of Directors may limit the issues to be reviewed to those findings and conclusions to which opposing arguments or exceptions have been

filed by the parties." 12 CFR § 208.39(c)(1). Thus, the decisions of FDIC ALJs are subject to review in all cases.

In contrast, the NLRA and the NLRB's rules and regulations provide that, absent timely exceptions, the findings, conclusions, and recommendations of the ALJ's decision will automatically become the decision and order of the Board, as discussed above and as provided in Section 10(c) and applicable regulations. 29 U.S.C. § 160(c); 29 CFR § 102.48(a) ("If no exceptions are filed, the administrative law judge's decision and recommended order **automatically become the decision and order of the Board pursuant to section 10(c) of the Act**. All objections and exceptions, whether or not previously made during or after the hearing, are deemed waived for all purposes." (emphasis added)). Indeed, the district court acknowledged that NLRB ALJs' decisions, absent exceptions, do become decisions of the Board, and yet inexplicably found there were only "minor differences" between the NLRB and FDIC ALJs. (R.29, Order, PageID.330.) Thus, NLRB ALJs have greater decisional authority than the FDIC ALJs discussed in *Calcutt*.

## II.     YAPP will suffer irreparable harm without a preliminary injunction.

YAPP will suffer immediate and irreparable harm absent injunctive relief. The Supreme Court recently confirmed that irreparable harm is inflicted on a party that is subject to a proceeding before a decisionmaker who is unconstitutionally

insulated from presidential oversight in *Axon*. In *Axon*, the plaintiffs sought to enjoin FTC and SEC enforcement proceedings by challenging the constitutionality of tenure protection for the FTC's and SEC's ALJs. *Axon Enterp. v. FTC*, 598 U.S. 175, 179 (2023). The Supreme Court recognized that the "harm" of "'being subjected' to 'unconstitutional agency authority'—'a proceeding by an unaccountable ALJ'" is a "here-and-now injury" because "**it is impossible to remedy once the proceeding is over, which is when appellate review kicks in**." *Id*. (emphasis added). Were the "illegitimate proceeding before an illegitimate decisionmaker" to go forward, "structural constitutional claims would come too late to be meaningful." *Id*. The same rationale applies here. Should the NLRB proceeding go forward, YAPP will lose its right not to undergo an unconstitutional proceeding, an "injury...impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Id.* at 175.

When alleging a "constitutional injury from the threat of being subject[ed] to a regulatory scheme and governmental action lacking Article II oversight," the Supreme Court's ruling in *Free Enterprise Fund* is also instructive. 561 U.S. at 513. There, the Supreme Court explained, "We normally do not require plaintiffs to bet the farm…by taking the violative action before testing the validity of the law, and we do not consider this a meaningful avenue of relief." *Id.* at 489-91. In other words,

YAPP should not have to undergo the unconstitutional proceeding and receive an unfavorable decision before it contests the agency's ability to issue that decision in a constitutional manner. Rather, YAPP is "entitled to declaratory relief sufficient to ensure that the [administrative] requirements...to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Id.* at 513.

This Court has long held that a successful showing that a constitutional right is being threatened or impaired mandates a finding of the second factor, irreparable injury. *ACLU v. McCreary Cnty.*, 354 F.3d 438, 445 (6th Cir. 2003) ("[I]f it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."); *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001).

Before the Supreme Court's decision in *Axon*, this Court ruled that a party challenging an agency action based on an unconstitutional removal process must show an injury that results from the unconstitutional removal process. *Calcutt*, 37 F.4th 293.[7] While *Calcutt* held that an adverse administrative ruling by itself does not constitute the needed harm from the appointment process, the Supreme Court in *Axon* has since made clear – post-*Calcutt* – that a challenge to an agency's "power to proceed at all" differs from a challenge to "action[s] [already] taken in the agency

---

[7] Any attempt to read *Calcutt* as applicable to prospective relief is not a sound reading of *Calcutt* as it related to an agency "adjudication that has already ended," *Id.* And such a reading would be contrary to *Axon's* post-*Calcutt* holding.

proceedings." *Axon*, 598 U.S. at 192. As the Supreme Court ruled, a party's being

subjected "to an illegitimate proceeding, led by an illegitimate decisionmaker," is a

constitutional injury that "cannot be undone" after the fact. *Id*. at 191; *see also*

*Cochran v. SEC*, 20 F.4th 194, 212-213 (5th Cir. 2021) (en banc), *aff'd and*

*remanded sub nom*., *Axon*, 598 U.S. 175 (if removal claim is "meritorious," plaintiff

should not be "forc[ed]" to litigate before an ALJ who is unconstitutionally insulated

from presidential control"); *Alpine Sec. Corp. v. FINRA*, 2023 WL 4703307, at *3

(D.C. Cir. July 5, 2023) (Walker, J., concurring) (finding an injunction of an

administrative adjudication pending appeal appropriate based on *Axon* because the

plaintiff was likely to prevail on claim that officers were unlawfully "shielded from

removal"). Critically, the Supreme Court in *Axon* held that a court of appeals could

of course vacate an order, "[b]ut Axon's separation-of-powers claim is not about that

order; indeed, Axon would have the same claim had it *won* before the agency." *Id*.

at 191. Accordingly, each removal-protection problem poses its own irreparable

harm.

The only avenue YAPP has to avoid suffering an unconstitutional proceeding

is to receive injunctive relief. The district court wrongly relied upon *Collins* to find

that there is no casual harm. The Fifth Circuit, en banc, determined that *Collins* does

not apply when the claimant "does not seek to 'void' the acts of any [administrative]

official," but instead, "seeks an administrative adjudication untainted by separation-

of-powers violations." *Cochran*, 20 F.4th at 210 n.16. An administrative adjudication untainted by separation-of-powers violations is precisely what YAPP seeks here. YAPP does not seek to void acts of an administrative official. YAPP rather seeks the instant preliminary injunction *so it will not have to endure* the acts of unconstitutionally insulated administrative officials.[8]

*Axon* is the controlling case here, and it makes clear that YAPP will suffer irreparable harm if it is required to proceed to an administrative hearing before an unconstitutionally insulated ALJ, and later, unconstitutionally insulated Board Members. *See also Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (The "denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights.").

### III. The balance of equities tips in YAPP's favor and an injunction is in the public interest.

Measuring the harm against Defendants, the balance of equities tips strongly in YAPP's favor. Where "the Government is the opposing party," the "harm to the opposing party and the public interest" factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Without an injunction, YAPP stands to lose by having to submit to

---

[8] Alternatively, as the district court in *Energy Transfer* held, "[f]or removal-restriction claims that seek relief before an insulated actor acts, it is not that *Collins's* causal-harm requirement is altogether inapplicable, but rather that it is readily satisfied." 2024 WL 3571494, at *4.

a hearing before an ALJ who is unconstitutionally insulated from Presidential removal, and a process before an agency violating the separation of powers, none of which can be compensated by monetary damages. *See Overstreet*, 305 F.3d at 578 ("A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages."); *see also Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987) (finding irreparable harm based on a violation of constitutional rights.).

Given YAPP's likelihood of success on the merits, an injunction would not harm Defendants because the government suffers no cognizable harm from stopping "the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also, e.g., BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) ("Any interest [the NLRB] may claim in enforcing an unlawful (and likely unconstitutional) proceeding is illegitimate.") (cleaned up). "The Sixth Circuit has found that it is always in the public interest to prevent violation of a party's constitutional rights. *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty*., 274 F.3d 377, 400 (6th Cir. 2001). It is not in the public interest to have an increasingly expansive Executive Branch that nonetheless "slip[s] from the Executive's control, and thus from that of the people," *Free Enter.*, 561 U.S. at 499, or that infringes the constitutional imperative that "the judiciary remain[] truly distinct from ... the executive," *Stern v. Marshall*, 564 U.S.

462, 483 (2011) (alteration in original) (quoting THE FEDERALIST No. 78, at 466

(Alexander Hamilton) (C. Rossiter ed. 1961)).

Additionally, should this Court ultimately rule against YAPP, any alleged

harm to Dowling from this delay can be compensated by monetary damages.

Furthermore, the NLRB maintains considerable powers to correct wrongdoings

under the NLRA. Any alleged harms from a delay in the underlying proceedings,

albeit likely speculative at best, can eventually be righted by the order of an ALJ or

the NLRB. YAPP's injury cannot. As the Supreme Court in *Axon* acknowledges,

should the proceeding take place, there is no remedy for YAPP.

The requested injunction would merely require the NLRB to stay the unfair

labor practice proceedings while this Court makes its determination. While YAPP

will likely suffer constitutional deprivation from the hearing's proceeding,

Defendants do not stand to lose anything nearly so compelling.

## CONCLUSION AND REQUESTED RELIEF

For these reasons, this Court should immediately enjoin the NLRB's

administrative proceedings against YAPP and stay the proceedings in the district

court both pending resolution of YAPP's appeal.


Dated: September 17, 2024          *s/ Matthew T. Nelson*
                                   Matthew T. Nelson
                                   Amanda M. Fielder
                                   Warner Norcross + Judd LLP
                                   150 Ottawa Avenue NW, Suite 1500

Grand Rapids, MI 49503
Telephone: (616) 752-2000
E-mail: mnelson@wnj.com

Hunter K. Yoches
Robert W. Horton
Timothy K. Garrett
Bass Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6200
Email: hunter.yoches@bassberry.com

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the type-volume limitation pursuant to Fed. R. App. P. 27(d)(2)(A). The foregoing motion contains 5,112 words of Arial and Times New Roman 14-point proportional type. The word processing software used to prepare this brief was Microsoft Word 2016.

Dated: September 17, 2024      *s/ Matthew T. Nelson*
Matthew T. Nelson
Amanda M. Fielder
Warner Norcross + Judd LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
Telephone: (616) 752-2000
E-mail: mnelson@wnj.com

Hunter K. Yoches
Robert W. Horton
Timothy K. Garrett
Bass Berry & Sims PLC

150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6200
Email: hunter.yoches@bassberry.com

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

This certifies that Appellant's Emergency Motion for Preliminary Injunction and Stay Pending Appeal was served September 17, 2024, by electronic mail using the Sixth Circuit's Electronic Case Filing system on all parties of record.

*s/ Matthew T. Nelson*
Matthew T. Nelson
Amanda M. Fielder
Warner Norcross + Judd LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
Telephone: (616) 752-2000
E-mail: mnelson@wnj.com

*Attorneys for Plaintiff-Appellant*

45635100.6