No. 24-1754

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

YAPP USA AUTOMATIVE SYSTEMS, INC.,

*Plaintiff-Appellant*,

v.

NATIONAL LABOR RELATIONS BOARD, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Michigan
Docket No. 2:24-cv-12173
The Honorable Laurie J. Michelson

## INTERNATIONAL UNION, UAW'S AND ITS LOCAL 174'S UNOPPOSED MOTION FOR LEAVE TO FILE *AMICI CURIAE* BRIEF WHILE MOTION TO INTERVENE IS PENDING

Maneesh Sharma
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, DC 20006
(202) 637-5336
msharma@aflcio.org

Robert Fetter
Miller Cohen, P.L.C.
7700 Second Avenue, Ste. 335
Detroit, MI 48202
(313) 964-4490
rfetter@millercohen.com

James A. Britton
International Union, UAW
8000 E. Jefferson Ave.
Detroit, MI 48214
(313) 926-5216
jbritton@uaw.net

NOW COME the International Union, Automobile, Aerospace and

Agricultural Implement Workers of America (UAW) and its Local 174

(collectively Unions) and, pursuant to FRAP 29(a)(3), move for leave to file an

*amici curiae* brief (attached as Exhibit 1) in response to YAPP USA Automotive

Systems, Inc.'s emergency motion for preliminary injunction pending appeal.  In

support of this motion, the Unions' state the following:

1.      YAPP seeks a preliminary injunction from this Court that would halt

the National Labor Relations Board's unfair labor practice proceedings against

YAPP.  The UAW, through its Local 174, is the Charging Party in that proceeding.

2.      The NLRB's General Counsel's complaint alleges that YAPP engaged

in a number of serious unfair labor practices in the lead up to an NLRB election in

which YAPP's production and maintenance employees voted on whether to be

represented by the Unions for purposes of collective bargaining.  As a remedy, the

General Counsel seeks an order requiring YAPP to recognize and bargain with the

Unions.  The Unions and the employees they seek to represent, therefore, have a

substantial legal interest in the outcome of the NLRB proceedings, as well as any

action seeking to enjoin that proceeding.

3.      In order to protect that legal interest, the Unions filed a motion to

intervene with this Court on September 17, 2024.  The Unions indicated in the

motion to intervene that they sought intervention in part to be able to submit briefs in response to emergency motions that they anticipated YAPP would file.

4.      Also on September 17, 2024, YAPP indeed did file an emergency motion for preliminary injunction pending appeal.

5.      Under FRAP 27(a)(3), responses to both motions are due September 27, 2024.

6.      Because it is unlikely that this Court will rule on the Unions' motion to intervene prior to September 27, 2024, the Unions want to ensure that they have the opportunity to file a brief in response to YAPP's motion for injunctive relief. The Unions have unique interests that they want to protect, and would be subject to unique harms if an injunction were to issue, and believes this Court will benefit from their briefing.

7.      As such, the Unions seek to file the attached *amici curiae* brief while its motion to intervene is pending.  If this Court does grant the motion to intervene while considering YAPP's motion for injunctive relief, the Unions respectfully request that the Court simply treat the Unions brief as the Intervenors' brief in response to YAPP's motion.

8.      The NLRB consents to the filing of this *amici curiae* brief.  YAPP does not consent, thus requiring the filing of this motion.  FRAP 29(a)(2).  Neither party opposes this motion for leave to file.

For those reasons, the Unions respectfully request that this Court grant their motion for leave to file an *amici curiae* brief while their motion to intervene is pending. If the motion to intervene is granted while this Court is considering YAPP's motion for injunctive relief, the Unions' request that the attached *amici curiae* brief be treated as Intervenors' response brief to YAPP's motion.


Date: September 27, 2024

Respectfully submitted,

/s/ Maneesh Sharma
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, D.C. 20006
(202) 637-5336
msharma@aflcio.org

James A. Britton
International Union, UAW
8000 E. Jefferson Ave.
Detroit, MI 48214
(313) 926-5216
jbritton@uaw.net

Robert Fetter
Miller Cohen, P.L.C.
7700 Second Avenue, Ste. 335
Detroit, MI 48202
(313) 964-4490
rfetter@millercohen.com

# EXHIBIT 1

No. 24-1754

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

YAPP USA AUTOMATIVE SYSTEMS, INC.,

*Plaintiff-Appellant*,

v.

NATIONAL LABOR RELATIONS BOARD, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Michigan
Docket No. 2:24-cv-12173
The Honorable Laurie J. Michelson

*AMICI CURIAE* BRIEF OF INTERNATIONAL UNION, UAW
AND ITS LOCAL 174

Maneesh Sharma
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, DC 20006
(202) 637-5336
msharma@aflcio.org

Robert Fetter
Miller Cohen, P.L.C.
7700 Second Avenue, Ste. 335
Detroit, MI 48202
(313) 964-4490
rfetter@millercohen.com

James A. Britton
International Union, UAW
8000 E. Jefferson Ave.
Detroit, MI 48214
(313) 926-5216
jbritton@uaw.net

**Table of Contents**

INTEREST OF AMICI CURIAE ...............................................................1

SUMMARY OF ARGUMENT .................................................................1

ARGUMENT ..........................................................................................3

   I.   YAPP's Claim Regarding the NLRB Members' Removal Protections is Not Ripe for Review ..................................................................................3

   II.     YAPP Must Demonstrate a Harm Caused by the Removal Restrictions—Such as the Frustration of a Presidential Desire to Remove the ALJ or Board Members—to Secure Injunctive Relief ................................................................4

   III.   The Courts of Appeals Have Long-Recognized that Delay in the NLRB's Proceedings Creates Irreparable Harm to Workers and Unions ..........................13

CONCLUSION ......................................................................................17

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)..........................................................3

*Agostini v. Felton*, 521 U.S. 203, 237 (1997) ..........................................................11

*Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226 (6th Cir. 2003) ....................... 14, 15

*Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023)..............................................8, 9

*Bhatti v. FHFA,* 97 F.4th 556, 561 (8th Cir. 2024) ....................................................7

*Calcutt v. FDIC*, 37 F.4th 293 (6th Cir. 2022) ....................................................6, 12

*CFPB v. All American Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) ......9

*CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023).....7, 8

*CFPB v. Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th 599, 615 (3d Cir. 2024)..................................................................................................................7

*Cmty. Fin. Servs. Assoc. of Am. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022).......7, 8

*Collins v. Mnuchin*, 938 F.3d 553 (5th Cir. 2019)....................................................5

*Collins v. Yellen*, 594 U.S. 220, 258 n. 23 (2021) ............................... 4, 5, 9, 10, 12

*Cooper v. MRM Investment,* 367 F.3d 493, 507 (6th Cir. 2004) ............................11

*Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ........................7

*Frankl v. HTH Corp.*, 650 F.3d 1334 (9th Cir. 2011) ............................................14

*Franks Bros. Co. v. NLRB*, 321 U.S. 702 (1944) ...................................................15

*Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010) ..........................................12

*Frye v. Speciality Envelope, Inc.*, 10 F.3d 1221 (6th Cir. 1993) ............................15

*K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023) ....................7

*Leachco, Inc. v. CPSC*, 103 F.4th 748, 757 (10th Cir. 2024) ................... 6, 8, 10, 11

*Lineback v. Spurlino Materials, LLC*, 546 F.3d 491 (7th Cir. 2008) ...................14

*NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559 (7th Cir. 1996) ...................................15

*Pascarell v. Vibra Screw*, 904 F.2d 874 (3d Cir. 1990) ..........................................13

*Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Commissioners*, 53 F.4th 1014 (6th Cir. 2022) ......................................................................................................3

*Schaub v. West Michigan Plumbing & Heating, Inc.*, 250 F.3d 962 (6th Cir. 2001) ......................................................................................................... 14, 15

*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020)......................................................4, 5

*Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Loc. 200*, 611 F.3d 483 (9th Cir. 2010) ...............................................................................................14

*Starbucks Corp. v. McKinney*, 144 S. Ct. 1570 (2024) ..........................................15

**Statutes**

29 U.S.C. § 160(j) ...................................................................................................15

**Regulations**

29 C.F.R. § 102.46(a)................................................................................................4

29 C.F.R. § 102.48(a)................................................................................................4

**Constitutional Provisions**

U.S. Const. Art. II, § 3, cl. 1 ................................................................................1, 4

## INTEREST OF AMICI CURIAE

The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") is a labor organization affiliated, and, through its Local 174, is the Charging Party in the underlying unfair labor practice matter.

For almost 90 years, the UAW and its local unions have relied on the National Labor Relations Board ("NLRB" or "Board") to preserve their members' right to engage in protected concerted activity, to remedy unfair labor practices, and to resolve questions concerning representation under the National Labor Relations Act. The UAW and its Local 174 have a strong interest in ensuring that the Board is able to continue to carry out its vital function to ensure that neither employers nor unions can evade accountability for violations of workers' labor rights.

## SUMMARY OF ARGUMENT

Under our Constitution, the executive power is vested in the President, who is charged with the duty to "take Care that the Laws be faithfully executed." U.S. Const. Art. II, § 3, cl. 1. But YAPP wants to prevent the President from fulfilling that duty by asking this Court to enjoin the Board proceeding against it. Without irony, YAPP argues that the NLRB proceeding must be enjoined in order to *protect* the President's duty to "take Care that the Laws be faithfully executed."

According to YAPP, no enforcement proceeding against it under the National Labor Relations Act ("NLRA") can go forward—*i.e.*, the NLRA cannot be faithfully executed here—because the properly-appointed administrative law judge ("ALJ") assigned to preside over the proceedings, and the properly-appointed Board Members who *may* eventually hear the case, are improperly insulated from removal by the President.

But the President has never expressed any desire to remove these officeholders, nor has YAPP shown that he would have removed them but for the tenure protections. YAPP is then asking this Court to stop the President and his subordinates from faithfully executing the law in order to protect the President's right to remove those subordinates, in a situation where the President has not sought to exercise that right himself or even indicated that he intends to. YAPP's assertion of the President's right—which the President has expressed no desire to exercise—cannot be the basis for blocking execution of the law.

For that reason, YAPP's arguments have been repeatedly rejected—by the Supreme Court, this Court, and every other circuit court to have addressed the issue. The Supreme Court and this Court have directly refuted the notion that abstract claims about the constitutionality of removal protections can entitle a party to relief against agency action. Instead, these Courts emphasize that executive officers who have such protections retain the constitutional authority (and

obligation) to carry out their duties.  To secure relief, YAPP must make a concrete

showing that the removal protections caused harm to *YAPP*—rather than a

hypothetical harm to the *President*—by showing that the removal protections

would make a difference in its particular case, *e.g.* that the President sought to

remove the ALJ assigned to YAPP's case and the Board Members.  YAPP has not

done so.  The Court should deny YAPP's motion.

## ARGUMENT

### I.      YAPP's Claim Regarding the NLRB Members' Removal Protections is Not Ripe for Review

The ripeness doctrine, "through avoidance of premature adjudication,

[prevents courts] from entangling themselves in abstract disagreements over

administrative policies."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967).

"[A] claim is not ripe if it turns on contingent future events that may not occur as

anticipated, or indeed may not occur at all."  *Safety Specialty Ins. Co. v. Genesee*

*Cnty. Bd. of Commissioners*, 53 F.4th 1014, 1020 (6th Cir. 2022) (cleaned up).

YAPP's argument about the President's authority to remove Board members

relies precisely on speculative "future events that . . . may not occur at all."  Any

removal protections extended to *Board Members* is not implicated by the

commencement of a hearing before an *ALJ*.  The Board Members may never hear

or decide this case.  Only if a party seeks review of an adverse ALJ decision would

the Board even consider the case. *See* 29 C.F.R. §§ 102.46(a), 102.48(a). Any

such Board consideration of the matter is not imminent.

Accordingly, any request for injunctive relief based on YAPP's removal-

protections claim related to the Board Members is not ripe and must be denied.

## II.     YAPP Must Demonstrate a Harm Caused by the Removal Restrictions—Such as the Frustration of a Presidential Desire to Remove the ALJ or Board Members—to Secure Injunctive Relief

The Constitution "vest[s] in a President" the "executive power"—"all of

it"—and charges the President with the duty to "take Care that the Laws be

faithfully executed." *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (*quoting*

U.S. Const. Art. II, § 3, cl. 1). But "no single person could fulfill that

responsibility alone," and so the President may appoint subordinates to assist him

in faithfully executing the laws. *Id*. Where those subordinates are "properly

appointed[,]" they possess "the authority to carry out the functions of the[ir]

office." *Collins v. Yellen*, 594 U.S. 220, 257–58 (2021) (emphasis omitted).

YAPP seeks to enjoin the NLRB proceeding against it because of alleged

statutory flaws related to the ALJ assigned to the matter, and the Board Members

themselves. But in seeking to prohibit these officials from faithfully executing the

duties of their office, YAPP does not claim that those officials were improperly

appointed, in which case they would have been "vested with authority that was

never properly theirs to exercise" and their actions would be "void *ab initio*."

4

*Collins v. Mnuchin*, 938 F.3d 553, 593 (5th Cir. 2019) (en banc). Instead, YAPP contends the ALJ and Board Members must be prevented from assisting the President in faithfully executing the law because their statutory removal protections violate the Take Care clause of the Constitution by interfering with the President's "supervis[ory]" authority over these officeholders. YAPP Mot. 6 (quoting *Seila Law*, 591 U.S. at 204).

But the "unlawfulness of [a] removal provision does not strip [an inferior officer] of the power to undertake the . . . responsibilities of his office." *Collins v. Yellen*, 594 U.S. 220, 258 n. 23 (2021). Accordingly, cases involving "[r]estrictions on removal are different" from cases alleging improper appointments, because in removal protection cases, "the conclusion is that the officers are duly appointed by the appropriate officials and exercise authority that is properly theirs." *Collins v. Mnuchin*, 938 F.3d at 593. A plaintiff seeking relief from agency action on a removal-restrictions claim may then only prevails by proving that the restriction *has actually interfered with the President's authority to supervise subordinates* in their particular case, and thereby inflicted "compensable harm" on the *plaintiff*—for instance, where "the President had attempted to remove [an officer] but was prevented from doing so" or "had made a public statement expressing displeasure" with the officer's actions. *Collins*, 594 U.S. at 259–60. To not require this showing would actually *prevent* the President, through his

5

subordinates, from ensuring that the "Laws be faithfully executed," based on a totally theoretical assertion that the President *may* someday want to remove those subordinates.

In *Calcutt v. FDIC*, this Court recognized the need to show causal harm to obtain relief on a removal protection claim: "*Collins* [] provides clear instruction: To invalidate an agency action due to a removal violation, that constitutional infirmity must cause harm to the challenging party." 37 F.4th 293, 316 (6th Cir. 2022) (cleaned up). The Court further explained that the "very possibility that harm *might* occur" is insufficient; rather, *Collins* requires that a "more concrete showing [of harm] was needed." *Id*. at 317 (emphasis in original). Such harm could possibly be shown by proving that the removal protections "prevent[ed] superior officers from removing" the insulated actor, or that the insulated actors' behavior would have been "altered" if not for the removal protections. *Id*. at 316.

No fewer than seven other circuit courts have similarly applied this principle after *Collins*, making clear that a plaintiff cannot secure relief—including preliminary injunctive relief—on a removal-restrictions claim without showing the protection has caused harm, such as by frustrating a Presidential desire to remove a specific officeholder. *Leachco, Inc. v. CPSC*, 103 F.4th 748, 757 (10th Cir. 2024) (holding that plaintiff must show that "the challenged removal provisions actually impacted, or will impact, the actions taken by the [agency] against it" and because

6

it did not plaintiff "failed to establish that it would suffer future irreparable harm if the preliminary injunction is denied"); *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023) (explaining that plaintiff must "show that the agency action would not have been taken *but for* the President's inability to remove the [officer]"); *CFPB v. Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th 599, 615 (3d Cir. 2024) (affirming dismissal where plaintiff failed to establish "any link whatsoever between the removal provision and [its] case"); *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023) (holding that claim must be dismissed "absent reason to believe that the unconstitutional removal provision itself inflicted harm"); *Cmty. Fin. Servs. Assoc. of Am. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) ("*CFSA*") (requiring plaintiff to show a "substantiated desire" by the President to remove the officer, a "perceived inability" to do so, and a "nexus" between the desire and the challenged actions); *Bhatti v. FHFA,* 97 F.4th 556, 561 (8th Cir. 2024) (requiring "some nexus" to Presidential inability to remove officer); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) (rejecting challenge where there was "no link" between ALJ decision and removal provisions). There is no circuit-level precedent to the contrary.

Furthermore, it does not matter that YAPP seeks to enjoin a future administrative proceeding rather than vacate a decision already taken. In *Calcutt*, this Court—consistent with the Second, Fifth, and Tenth—held that the relief

analysis in *Collins* "does not rest on whether relief is prospective or retrospective." 37 F.4th at 316 and n. 9[1]; *see also Leachco*, 103 F.4th at 757 (*Collins* "applies to both retrospective and prospective relief"); *L. Offs. of Crystal Moroney*, 63 F.4th at 180–81 (*Collins* "applies with equal force regardless of the relief sought by the party challenging the officer's actions"); *CFSA*, 51 F.4th at 632 ("*Collins* does not rest on whether relief is prospective or retrospective"). Once again, no circuit has held the opposite.

YAPP's only effort to address *Calcutt*'s causal-harm requirement is to argue that the Supreme Court impliedly overruled *Calcutt* in *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023), and established a rule that no showing of causal harm is required to make out a removal-protection claim because the Supreme Court explained that being subject to unconstitutional agency authority is a "here-and-now injury" that cannot be remedies after the fact. *See* YAPP Mot. 16. That is plainly wrong.

*Axon* did not address the merits of a removal-protections claim or the showing necessary to warrant injunctive relief—it was a case about subject-matter jurisdiction. In deciding solely the question of whether a district court had jurisdiction over a removal protection claim brought outside the process for review

---

[1] YAPP claims it is not fair to read *Calcutt* as requiring the need for causal harm when seeking prospective relief, as well as retrospective relief. YAPP Mot. 17 n. 7. But the plain reading of *Calcutt* is just that.

of an agency's decision—and where the plaintiff alleged that the removal-protections rendered the entire agency proceeding invalid—the Court held that "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker" was a "here-and-now" constitutional injury that could be addressed in a proceeding collateral to post-enforcement judicial review. *Axon.* 598 U.S. at 191.

But whether or not YAPP has alleged facts that establish jurisdiction does not mean that it has alleged facts that entitle it to relief. An unconstitutional removal restriction is, "remedially speaking, unique[,]" *CFPB v. All American Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) (Jones, J., concurring), because the infirm removal provision "does not strip [an inferior officer] of the power to undertake the other responsibilities of his office," *i.e.*, does not render him or her an "illegitimate decisionmaker," unless the plaintiff makes a cognizable showing of harm, *Collins*, 594 U.S. at 258 n. 23. No relief is warranted without that showing.

At bottom then, *Axon* determined *where* (district court) and *when* (pre-enforcement) a plaintiff can challenge removal protections. It did not modify *what* a plaintiff needs to prove to demonstrate that the proceeding and decisionmaker it faces are, in fact, "illegitimate."[2]

_____

[2] Indeed, Justice Kagan, the author of the unanimous opinion in *Axon*, would be particularly astonished by the notion that *Axon* silently overruled *Collins*'s causal-harm requirement for prospective relief. In her concurrence in *Collins*, she made

The Tenth Circuit, in addressing a motion for emergency injunctive relief pending appeal, recently rejected the erroneous reading of *Axon* that YAPP presses. *Leachco, Inc. v. CPSC*, 103 F.4th 748 (10th Cir. 2024). In rejecting the plaintiff's argument, *Leachco* explained that the "'here-and-now injury' language in *Axon* originated from *Seila Law*," a case that "concerned standing, *not* entitlement to injunctive relief." *Id.* at 759 (emphasis in original). The Tenth Circuit noted that, in *Collins*, the Supreme Court "clarified [that] its 'here-and-now-injury' language from *Seila Law* . . . should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction." *Id.* (citing *Collins*, 594 U.S. at 258 n. 24). Therefore, the Tenth Circuit undertook to "follow the Supreme Court's words of caution when interpreting the same 'here-and-now injury' language," declining to read *Axon*'s "limited jurisdictional holding" as a "broad ruling that creates an entitlement on the merits to a preliminary injunction in every case where such constitutional challenges are

---

clear her view that "plaintiffs alleging a removal violation are entitled to injunctive relief . . . only when the President's inability to fire an agency head affected the complained-of decision," and that "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue." 594 U.S. at 274–75 (Kagan, J., concurring).

raised." *Id.* Simply put, "[t]he Supreme Court's jurisdictional analysis did not change the relief analysis required under *Collins*." *Id.* at 765.[3]

Accordingly, *Axon* didn't disturb the remedial holdings in *Collins* and *Calcutt*. Indeed, because "[i]mplied overrulings . . . are disfavored" and recognized only "in extremely rare circumstances[,]" *Cooper v. MRM Investment,* 367 F.3d 493, 507 (6th Cir. 2004), YAPP must present far more compelling proof that *Axon* intended to wipe away the compensable-harm showing required by *Collins* and its progeny. Without such compelling proof, this Court should heed the instruction of the Supreme Court in relation to the implicit overruling of its own binding precedent: "[T]he Court of Appeals should follow the case which directly controls, leaving to th[e Supreme C]ourt the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (cleaned up).

Lastly, YAPP suggests injunctive relief is necessary because it is will ultimately be entitled to declaratory relief on its removal protection claims, and the

---

[3] YAPP perplexingly claims that *Leachco* was "wrongly decided" because "it does not analyze or even acknowledge that harm alleged here—the harm inherent in being made to participate in an unconstitutional proceeding." YAPP Mot. 10 n. 4. It's not clear how YAPP can make such a claim, seeing as the court in *Leachco* specifically found that "Leachco ha[d] failed to show under prevailing law that its mere subjection to administrative proceedings before an agency whose officials possess unconstitutional removal protections, alone, constitutes irreparable harm" and then spent nearly seven pages of its opinion explaining why that is. 103 F.4th at 753-60.

injunctive relief will prevent it from having to "undergo an unconstitutional proceeding" prior to securing declaratory judgment in a final judgment. YAPP Mot. 16-17. Even assuming YAPP is entitled to declaratory relief that the removal protections are unconstitutional (it is not), YAPP is simply wrong that it would be entitled to broad injunctive relief. YAPP's argument suggests there is something invalid with the ALJs' and Board Members' performance of their validly possessed duties, and as explained above, without a causal-harm showing, there is nothing invalid with this exercise. *See Collins*, 594 U.S. at 261 (Thomas, J., concurring) ("The Government does not necessarily act unlawfully even if a removal restriction is unlawful in abstract."). Accordingly, parties who bring a meritorious removal-protection claim may be entitled to declaratory relief, but not injunctive relief that halts agency proceedings. *See Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 513 (2010) (denying broad injunctive relief for a meritorious removal-protection claim, but issuing declaratory relief).

Ultimately, as YAPP has not demonstrated the harm it needs to state a claim under *Collins* and *Calcutt*, the Court must deny its request for injunctive relief.[4]

---

[4] The District Court also denied YAPP's motion for preliminary injunction because it found that the removal protections extended to NLRB ALJs and Board Members were lawful. *Amici* agree that the removal protections are lawful. However, in *Calcutt*, this Court first addressed the causal-harm requirement prior to considering the lawfulness of the removal protections. *See* 37 F.4th at 318-19 (rejecting challenge to agency action based on ALJ removal protections first because of failure to show harm and second because of doubt regarding the merit of the

### III. The Courts of Appeals Have Long-Recognized that Delay in the NLRB's Proceedings Creates Irreparable Harm to Workers and Unions

YAPP asserts that the balance of equities weighs in its favor because "an injunction would not harm Defendants[.]" YAPP Mot. 20. This entirely discounts the harm that *Amici* Unions and the YAPP employees that the Unions seek to represent would suffer from an injunction. The NLRB's General Counsel's consolidated complaint in this matter alleges that YAPP engaged in numerous unfair labor practices—including the discharge of a union supporter—intended to destroy the Unions' majority support so that the Unions would lose the NLRB election. *See* ECF No. 4-2, PageID.106. The complaint seeks not only to remedy the various individual unfair labor practices, but also seeks an order requiring YAPP to bargain with the Unions. *Id*. at PageID.108-09. The delay caused by an injunction would make it difficult, if not impossible, for any remedies— particularly the bargaining order—to have any meaningful effect.

The courts of appeals have long-recognized that "the chilling effect of management retaliation" against the exercise of NLRA rights may not be erased by "the curative effects of any remedial action the Board might take including reinstating illegally discharged workers." *Pascarell v. Vibra Screw*, 904 F.2d 874,

---

challengers arguments as to the unconstitutionality of protections). Since the causal-harm requirement forecloses YAPP's emergency motion here regardless of the lawfulness of the protections, there is no need to address those further questions.

878-79 (3d Cir. 1990) (cleaned up). If an employer is allowed to "proceed in its quest to defeat the Union before it becomes established . . . then merely requiring the company to pay its employees damages after the fact will not remedy the adverse impact to the Union and the employees in the interim period." *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 501 (7th Cir. 2008). That is because actions such as discharging union supporters "have an inherently chilling effect on other employees" that cannot be remedied long after the fact. *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 239 (6th Cir. 2003); *see also Frankl v. HTH Corp.*, 650 F.3d 1334, 1363 (9th Cir. 2011) ("[T]he discharge of active and open union supporters risks a serious adverse impact on employee interest in unionization and can create irreparable harm to the collective bargaining process."); *Schaub v. West Michigan Plumbing & Heating, Inc.*, 250 F.3d 962, 971 (6th Cir. 2001) ("the absence of the only union organizer at the company for an extended period of time could irreparably harm the union's chances of organizing the employees" (cleaned up)). Ultimately, "permitting an allegedly unfair labor practice to reach fruition and thereby render meaningless the Board's remedial authority is irreparable harm." *Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200*, 611 F.3d 483, 494 (9th Cir. 2010) (cleaned up).

This Court further understands that a long delay in recognizing a union results in continued loss of support that the Board's ultimate remedial authority could fail to cure if a remedial order is delayed. As the Court explained,

> there was a very real danger that if the employer continued to withhold recognition from the Union, employee support would erode to such an extent that the Union could no longer represent those employees. At that point, any final remedy which the Board could impose would be ineffective.

*Frye v. Speciality Envelope, Inc.*, 10 F.3d 1221, 1226–27 (6th Cir. 1993) (cleaned up); *also Franks Bros. Co. v. NLRB*, 321 U.S. 702, 704 (1944) ("unlawful refusal of an employer to bargain collectively with its employees' chosen representatives disrupts the employees' morale, deters their organizational activities, and discourages their membership in unions"); *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1573 (7th Cir. 1996) ("As time passes, the benefits of unionization are lost and the spark to organize is extinguished. The deprivation to employees from the delay in bargaining and the diminution of union support is immeasurable."), *cert. denied*, 519 U.S. 1055 (1997).

This fear of potential remedial failure causes courts, including this one, to regularly grant the Board injunctions under 29 U.S.C. § 160(j) of the NLRA that require employers to return to the pre-unfair labor practice status quo pending the NLRB's proceedings. *See, e.g., Ahearn*, 351 F.3d at 239-40, *Schaub*, 250 F.3d at 971; *see also Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1583 (2024) (Jackson, concurring in part and dissenting in part) ("Congress designed § 10(j) as

a means of preserving or restoring the status quo as it existed before the onset of unfair labor practices so that the Board's ultimate ability to remedy an unfair labor practice would not be impeded." (cleaned up)).

Accordingly, this Court and its sister circuits have recognized for decades that delays in the Board's proceedings may cause irreparable harm to the collective-bargaining rights that the NLRA protects. The harms associated with unfair labor practices such as those alleged in the instant case—unfair labor practices aimed at destroying a union's majority support during an organizing drive—may not be easily erased by an eventual remedial order. The indefinite delay caused by an injunction would almost certainly result in further loss of support for the Unions. That erosion of support would likely impair the Unions' ability to represent the employees even if the Board eventually issues a bargaining order. It is then no exaggeration to say that an injunction threatens to permanently defeat the workers' and Unions' rights to organize and engage in collective bargaining with YAPP, and thereby undermine the public policy of the Act.

That harm is compared to that claimed by YAPP—being required to appear at a hearing before an ALJ who is properly vested with the duties of their office. The Court should not subject the workers and Unions here to the known risk of permanent remedial failure caused by indefinite delay in the vindication of their rights in order to protect YAPP from the entirely speculative risk that they may be

subject to some dignity harm by having to appear before an official who may be unconstitutionally insulated from removal, but whom the President has expressed no interest in removing.

## CONCLUSION

The Court should deny YAPP's motion.

Date: September 27, 2024

Respectfully submitted,

/s/ Maneesh Sharma
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, D.C. 20006
(202) 637-5336
msharma@aflcio.org

James A. Britton
International Union, UAW
8000 E. Jefferson Ave.
Detroit, MI 48214
(313) 926-5216
jbritton@uaw.net

Robert Fetter
Miller Cohen, P.L.C.
7700 Second Avenue, Ste. 335
Detroit, MI 48202
(313) 964-4490
rfetter@millercohen.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of September, 2024, a copy of the foregoing Motion for Leave to File *Amici Curiae* Brief and attached *Amici Curiae* Brief was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Maneesh Sharma
Maneesh Sharma

Date: September 27, 2024