**No. 24-1754**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

---

**YAPP USA AUTOMATIVE SYSTEMS, INC.,**

***Plaintiff-Appellant,***

**v.**

**NATIONAL LABOR RELATIONS BOARD, et al.,**

***Defendants-Appellees.***

---

On Appeal from the United States District Court
for the Eastern District of Michigan
Docket No. 2:24-cv-12173
The Honorable Laurie J. Michelson

---

# *AMICI CURIAE* BRIEF OF INTERNATIONAL UNION, UAW AND ITS LOCAL 174

---


Maneesh Sharma
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, DC 20006
(202) 637-5336
msharma@aflcio.org

James A. Britton
International Union, UAW
8000 E. Jefferson Ave.
Detroit, MI 48214
(313) 926-5216
jbritton@uaw.net

Robert Fetter
Miller Cohen, P.L.C.
7700 Second Avenue, Ste. 335
Detroit, MI 48202
(313) 964-4490
rfetter@millercohen.com

## Table of Contents

INTEREST OF AMICI CURIAE .......... 1

ARGUMENT .......... 1

I. YAPP Must Demonstrate a Harm Caused by the Removal Restrictions—Such as the Frustration of a Presidential Desire to Remove the ALJ or Board Members—to Secure Injunctive Relief .......... 1

III. The Courts of Appeals Have Long-Recognized that Delay in the NLRB's Proceedings Creates Irreparable Harm to Workers and Unions .......... 7

CONCLUSION .......... 11

## Table of Authorities

### Cases

*Agostini v. Felton*, 521 U.S. 203, 237 (1997) ....................................................6

*Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226 (6th Cir. 2003) ..........................9, 10

*Axon Enterprises, Inc. v. FTC,* 598 U.S. 175 (2023)................................................4

*Calcutt v. FDIC*, 37 F.4th 293 (6th Cir. 2022) .........................................................3

*CFPB v. All American Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) ......5

*Collins v. Mnuchin*, 938 F.3d 553 (5th Cir. 2019).................................................2, 3

*Collins v. Yellen*, 594 U.S. 220, 258 n. 23 (2021) .......................................... 2, 3, 5

*Cooper v. MRM Investment*, 367 F.3d 493, 507 (6th Cir. 2004)..............................6

*Frankl v. HTH Corp.*, 650 F.3d 1334 (9th Cir. 2011) ..............................................9

*Franks Bros. Co. v. NLRB*, 321 U.S. 702 (1944) ..................................................10

*Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010)...........................................7

*Frye v. Speciality Envelope, Inc.*, 10 F.3d 1221 (6th Cir. 1993).............................10

*Lineback v. Spurlino Materials, LLC*, 546 F.3d 491 (7th Cir. 2008) ........................9

*NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559 (7th Cir. 1996) ....................................10

*Pascarell v. Vibra Screw*, 904 F.2d 874 (3d Cir. 1990) ...........................................8

*Schaub v. West Michigan Plumbing & Heating, Inc.*, 250 F.3d 962 (6th Cir. 2001) ......................................................................................................9, 10

*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020)..........................................................2

*Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Loc. 200*, 611 F.3d 483 (9th Cir. 2010) ..........................................................................................9

**Statutes**

29 U.S.C. § 160(j) ........................................................................................................10

## INTEREST OF AMICI CURIAE

The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") is a labor organization affiliated, and, through its Local 174, is the Charging Party in the underlying unfair labor practice matter.[1]

For almost 90 years, the UAW and its local unions have relied on the National Labor Relations Board ("NLRB" or "Board") to preserve their members' right to engage in protected concerted activity, to remedy unfair labor practices, and to resolve questions concerning representation under the National Labor Relations Act. The UAW and its Local 174 have a strong interest in ensuring that the Board is able to continue to carry out its vital function to ensure that neither employers nor unions can evade accountability for violations of workers' labor rights.

## ARGUMENT

### I. YAPP Must Demonstrate a Harm Caused by the Removal Restrictions—Such as the Frustration of a Presidential Desire to Remove the ALJ or Board Members—to Secure Injunctive Relief

The Constitution "vest[s] in a President" the "executive power"—"all of it"—and charges the President with the duty to "take Care that the Laws be

[1] No counsel for a party authored this brief in whole or in part, and no person or entity, other than the *amici*, made a monetary contribution to the preparation or filing of this brief.

faithfully executed." *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (*quoting* U.S. Const. Art. II, § 3, cl. 1). But "no single person could fulfill that responsibility alone," and so the President may appoint subordinates to assist him in faithfully executing the laws. *Id*. Where those subordinates are "properly appointed[,]" they possess "the authority to carry out the functions of the[ir] office." *Collins v. Yellen*, 594 U.S. 220, 257–58 (2021) (emphasis omitted).

YAPP seeks to enjoin the NLRB proceeding against it because of alleged statutory flaws related to the ALJ assigned to the matter, and the Board Members themselves. But in seeking to prohibit these officials from faithfully executing the duties of their office, YAPP does not claim that those officials were improperly appointed, in which case they would have been "vested with authority that was never properly theirs to exercise" and their actions would be "void *ab initio*." *Collins v. Mnuchin*, 938 F.3d 553, 593 (5th Cir. 2019) (en banc). Instead, YAPP contends the ALJ and Board Members must be prevented from assisting the President in faithfully executing the law because their statutory removal protections violate the Take Care clause of the Constitution by interfering with the President's "supervis[ory]" authority over these officeholders. YAPP Mot. 6 (quoting *Seila Law*, 591 U.S. at 204).

But the "unlawfulness of [a] removal provision does not strip [an inferior officer] of the power to undertake the . . . responsibilities of his office." *Collins v.*

*Yellen*, 594 U.S. 220, 258 n. 23 (2021). Accordingly, cases involving "[r]estrictions on removal are different" from cases alleging improper appointments, because in removal protection cases, "the conclusion is that the officers are duly appointed by the appropriate officials and exercise authority that is properly theirs." *Collins v. Mnuchin*, 938 F.3d at 593. A plaintiff seeking relief from agency action on a removal-restrictions claim may then only prevail by proving that the restriction *has actually interfered with the President's authority to supervise subordinates* in their particular case, and thereby inflicted "compensable harm" on the *plaintiff*—for instance, where "the President had attempted to remove [an officer] but was prevented from doing so" or "had made a public statement expressing displeasure" with the officer's actions. *Collins*, 594 U.S. at 259–60. To not require this showing would actually *prevent* the President, through his subordinates, from ensuring that the "Laws be faithfully executed," based on a totally theoretical assertion that the President *may* someday want to remove those subordinates.

In *Calcutt v. FDIC*, this Court recognized that "*Collins* [] provides clear instruction: To invalidate an agency action due to a removal violation, that constitutional infirmity must cause harm to the challenging party." 37 F.4th 293, 316 (6th Cir. 2022) (cleaned up). The "very possibility that harm *might* occur" is insufficient; rather, *Collins* requires that a "more concrete showing [of harm] was

needed." *Id*. at 317 (emphasis in original). Such harm could possibly be shown by proving that the removal protections "prevent[ed] superior officers from removing" the insulated actor, or that the insulated actors' behavior would have been "altered" if not for the removal protections. *Id*. at 316.

YAPP's only effort to address *Calcutt*'s causal-harm requirement is to argue that the Supreme Court impliedly overruled *Calcutt* in *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023), and established a rule that no showing of causal harm is required to make out a removal-protection claim because the Supreme Court explained that being subject to unconstitutional agency authority is a "here-and-now injury" that cannot be remedies after the fact. *See* YAPP Mot. 16. That is plainly wrong.

*Axon* did not address the merits of a removal-protections claim or the showing necessary to warrant injunctive relief—it was a case about subject-matter jurisdiction. In deciding solely the question of whether a district court had jurisdiction over a removal protection claim brought outside the process for review of an agency's decision—and where the plaintiff alleged that the removal-protections rendered the entire agency proceeding invalid—the Court held that "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker" was a "here-and-now" constitutional injury that could be addressed in a proceeding collateral to post-enforcement judicial review. *Axon*. 598 U.S. at 191.

But whether or not YAPP has alleged facts that establish jurisdiction does not mean that it has alleged facts that entitle it to relief. An unconstitutional removal restriction is, "remedially speaking, unique[,]" *CFPB v. All American Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) (Jones, J., concurring), because the infirm removal provision "does not strip [an inferior officer] of the power to undertake the other responsibilities of his office," unless the plaintiff makes a cognizable showing of harm, *Collins*, 594 U.S. at 258 n. 23. No relief is warranted without that showing.

The Tenth Circuit, in addressing a motion for emergency injunctive relief pending appeal, recently rejected the erroneous reading of *Axon* that YAPP presses. *Leachco, Inc. v. CPSC*, 103 F.4th 748 (10th Cir. 2024). In rejecting the plaintiff's argument, *Leachco* explained that the "'here-and-now injury' language in *Axon* originated from *Seila Law*," a case that "concerned standing, *not* entitlement to injunctive relief." *Id.* at 759 (emphasis in original). The Tenth Circuit noted that, in *Collins*, the Supreme Court "clarified [that] its 'here-and-now-injury' language from *Seila Law* . . . should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction." *Id.* (citing *Collins*, 594 U.S. at 258 n. 24). Therefore, the Tenth Circuit undertook to "follow the Supreme Court's words of caution when interpreting the same 'here-and-now injury' language," declining to read *Axon*'s "limited jurisdictional

holding" as a "broad ruling that creates an entitlement on the merits to a preliminary injunction in every case where such constitutional challenges are raised." *Id.* Simply put, "[t]he Supreme Court's jurisdictional analysis did not change the relief analysis required under *Collins*." *Id.* at 765.[2]

Accordingly, *Axon* didn't disturb the remedial holdings in *Collins* and *Calcutt*. Indeed, because "[i]mplied overrulings . . . are disfavored" and recognized only "in extremely rare circumstances[,]" *Cooper v. MRM Investment*, 367 F.3d 493, 507 (6th Cir. 2004), YAPP must present far more compelling proof that *Axon* intended to wipe away the compensable-harm showing required by *Collins* and its progeny. Without such compelling proof, this Court should heed the instruction of the Supreme Court in relation to the implicit overruling of its own binding precedent: "[T]he Court of Appeals should follow the case which directly controls, leaving to th[e Supreme C]ourt the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (cleaned up).

---

[2] YAPP perplexingly claims that *Leachco* was "wrongly decided" because "it does not analyze or even acknowledge that harm alleged here—the harm inherent in being made to participate in an unconstitutional proceeding." YAPP Mot. 10 n. 4. It's not clear how YAPP can make such a claim, seeing as the court in *Leachco* specifically found that "Leachco ha[d] failed to show under prevailing law that its mere subjection to administrative proceedings before an agency whose officials possess unconstitutional removal protections, alone, constitutes irreparable harm" and then spent nearly seven pages of its opinion explaining why that is. 103 F.4th at 753-60.

Lastly, YAPP suggests injunctive relief is necessary because it is will ultimately be entitled to declaratory relief on its removal protection claims, and the injunctive relief will prevent it from having to "undergo an unconstitutional proceeding" prior to securing declaratory judgment in a final judgment. YAPP Mot. 16-17. Even assuming YAPP is entitled to declaratory relief that the removal protections are unconstitutional (it is not), YAPP is simply wrong that it would be entitled to broad injunctive relief. YAPP's argument suggests there is something invalid with the ALJs' and Board Members' performance of their validly possessed duties, and as explained above, without a causal-harm showing, there is nothing invalid with this exercise. *See Collins*, 594 U.S. at 261 (Thomas, J., concurring) ("The Government does not necessarily act unlawfully even if a removal restriction is unlawful in abstract."). Accordingly, parties who bring a meritorious removal-protection claim may be entitled to declaratory relief, but not injunctive relief that halts agency proceedings. *See Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 513 (2010) (denying broad injunctive relief for a meritorious removal-protection claim, but issuing declaratory relief).

Ultimately, as YAPP has not demonstrated the harm it needs to state a claim under *Collins* and *Calcutt*, the Court must deny its request for injunctive relief.

## III. The Courts of Appeals Have Long-Recognized that Delay in the NLRB's Proceedings Creates Irreparable Harm to Workers and Unions

YAPP asserts that the balance of equities weighs in its favor because "an injunction would not harm Defendants[.]" YAPP Mot. 20. This entirely discounts the harm that *Amici* Unions and the YAPP employees that the Unions seek to represent would suffer from an injunction. The NLRB's General Counsel's consolidated complaint in this matter alleges that YAPP engaged in numerous unfair labor practices—including the discharge of a union supporter—intended to destroy the Unions' majority support so that the Unions would lose the NLRB election. *See* ECF No. 4-2, PageID.106. The complaint seeks not only to remedy the various individual unfair labor practices, but also seeks an order requiring YAPP to bargain with the Unions. *Id*. at PageID.108-09. The delay caused by an injunction would make it difficult, if not impossible, for any remedies—particularly the bargaining order—to have any meaningful effect.

The courts of appeals have long-recognized that "the chilling effect of management retaliation" against the exercise of NLRA rights may not be erased by "the curative effects of any remedial action the Board might take including reinstating illegally discharged workers." *Pascarell v. Vibra Screw*, 904 F.2d 874, 878-79 (3d Cir. 1990) (cleaned up). If an employer is allowed to "proceed in its quest to defeat the Union before it becomes established . . . then merely requiring the company to pay its employees damages after the fact will not remedy the adverse impact to the Union and the employees in the interim period." *Lineback v.*

*Spurlino Materials, LLC*, 546 F.3d 491, 501 (7th Cir. 2008). That is because actions such as discharging union supporters "have an inherently chilling effect on other employees" that cannot be remedied long after the fact. *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 239 (6th Cir. 2003); *see also Frankl v. HTH Corp.*, 650 F.3d 1334, 1363 (9th Cir. 2011) ("[T]he discharge of active and open union supporters risks a serious adverse impact on employee interest in unionization and can create irreparable harm to the collective bargaining process."); *Schaub v. West Michigan Plumbing & Heating, Inc.*, 250 F.3d 962, 971 (6th Cir. 2001) ("the absence of the only union organizer at the company for an extended period of time could irreparably harm the union's chances of organizing the employees" (cleaned up)). Ultimately, "permitting an allegedly unfair labor practice to reach fruition and thereby render meaningless the Board's remedial authority is irreparable harm." *Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200*, 611 F.3d 483, 494 (9th Cir. 2010) (cleaned up).

This Court further understands that a long delay in recognizing a union results in continued loss of support that the Board's ultimate remedial authority could fail to cure if a remedial order is delayed. As the Court explained,

> there was a very real danger that if the employer continued to withhold recognition from the Union, employee support would erode to such an extent that the Union could no longer represent those employees. At that point, any final remedy which the Board could impose would be ineffective.

*Frye v. Speciality Envelope, Inc.*, 10 F.3d 1221, 1226–27 (6th Cir. 1993) (cleaned up); *also Franks Bros. Co. v. NLRB*, 321 U.S. 702, 704 (1944) ("unlawful refusal of an employer to bargain collectively with its employees' chosen representatives disrupts the employees' morale, deters their organizational activities, and discourages their membership in unions"); *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1573 (7th Cir. 1996) ("As time passes, the benefits of unionization are lost and the spark to organize is extinguished. The deprivation to employees from the delay in bargaining and the diminution of union support is immeasurable."), *cert. denied*, 519 U.S. 1055 (1997).

This fear of potential remedial failure causes courts, including this one, to regularly grant the Board injunctions under 29 U.S.C. § 160(j) of the NLRA that require employers to return to the pre-unfair labor practice status quo pending the NLRB's proceedings. *See, e.g.*, *Ahearn*, 351 F.3d at 239-40, *Schaub*, 250 F.3d at 971.

Accordingly, this Court and its sister circuits have recognized for decades that delays in the Board's proceedings may cause irreparable harm to the collective-bargaining rights that the NLRA protects. The harms associated with unfair labor practices such as those alleged in the instant case—unfair labor practices aimed at destroying a union's majority support during an organizing drive—may not be easily erased by an eventual remedial order. The indefinite

delay caused by an injunction would almost certainly result in further loss of support for the Unions. That erosion of support would likely impair the Unions' ability to represent the employees even if the Board eventually issues a bargaining order. It is then no exaggeration to say that an injunction threatens to permanently defeat the workers' and Unions' rights to organize and engage in collective bargaining with YAPP, and thereby undermine the public policy of the Act.

That harm is compared to that claimed by YAPP—being required to appear at a hearing before an ALJ who is properly vested with the duties of their office. The Court should not subject the workers and Unions here to the known risk of permanent remedial failure caused by indefinite delay in the vindication of their rights in order to protect YAPP from the entirely speculative risk that they may be subject to some dignity harm by having to appear before an official who may be unconstitutionally insulated from removal, but whom the President has expressed no interest in removing.

## CONCLUSION

The Court should deny YAPP's motion.

Date: September 27, 2024

Respectfully submitted,

/s/ Maneesh Sharma
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, D.C. 20006
(202) 637-5336
msharma@aflcio.org

James A. Britton
International Union, UAW
8000 E. Jefferson Ave.
Detroit, MI 48214
(313) 926-5216
jbritton@uaw.net

Robert Fetter
Miller Cohen, P.L.C.
7700 Second Avenue, Ste. 335
Detroit, MI 48202
(313) 964-4490
rfetter@millercohen.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(a)(5)-(6), 32(a)(7)(B), and 32(g)(1), *Amici* certify that their brief contains 2,564 words of proportionally spaced 14-point type, and the word-processing software used was Microsoft Word for Office 365. *Amici* further certify that the PDF filed submitted to the Court has been scanned for viruses and is virus-free.

/s/ Maneesh Sharma
Maneesh Sharma

Date: September 27, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of September, 2024, a copy of the foregoing *Amici Curiae* Brief was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Maneesh Sharma
Maneesh Sharma

Date: September 27, 2024