No. 24-1754

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

YAPP USA AUTOMOTIVE SYSTEMS, INC.,

Plaintiff-Appellant,

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency;
JENNIFER ABRUZZO, in her official capacity as the General Counsel of the
National Labor Relations Board; LAUREN M. McFERRAN, in her official
capacity as the Chairman of the National Labor Relations Board; MARVIN E.
KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official
capacities as Board Members of the National Labor Relations Board; and
ARTHUR AMCHAN in his official capacity as an Administrative Law Judge of
the National Labor Relations Board,

Defendants-Appellees.

On Appeal from the United States District Court
for the Eastern District of Michigan
Docket No. 2:24-cv-12173
The Honorable Laurie J. Michelson

**APPELLANT YAPP USA AUTOMOTIVE SYSTEMS, INC.'S
PRINCIPAL BRIEF**

Matthew T. Nelson
Amanda M. Fielder
Warner Norcross + Judd LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
Telephone: (616) 752-2000
E-mail: mnelson@wnj.com

Timothy K. Garrett
Robert W. Horton
Hunter K. Yoches
Bass Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6200
Email: tgarrett@bassberry.com

*Attorneys for Plaintiff-Appellant*

Dated: December 20, 2024

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Sixth Circuit Rule 26.1, Plaintiff-Appellant, YAPP USA Automotive Systems, Inc. makes the following disclosure:

1.     Is said party a subsidiary or affiliate of a publicly owned corporation?

**Answer**: Yes. YAPP USA Automotive Systems, Inc. is wholly owned by YAPP America Holding, Inc. YAPP America Holding, Inc., in turn, is wholly owned by YAPP Automotives Systems Co., LTD.

2.     Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

**Answer**: No.

Dated: December 20, 2024         *s/ Matthew T. Nelson*
                                     Matthew T. Nelson
                                     Amanda M. Fielder
                                     Warner Norcross + Judd LLP
                                     150 Ottawa Avenue NW, Suite 1500
                                     Grand Rapids, MI 49503
                                     Telephone: (616) 752-2000
                                     E-mail: mnelson@wnj.com

                                     *Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................... iv

STATEMENT REQUESTING ORAL ARGUMENT ............................................. 1

JURISDICTIONAL STATEMENT ......................................................... 2

STATEMENT OF ISSUES FOR REVIEW ............................................. 3

INTRODUCTION ......................................................................... 4

STATEMENT OF THE CASE ............................................................. 5

SUMMARY OF THE ARGUMENT .................................................... 10

STANDARD OF REVIEW ............................................................... 11

ARGUMENT .............................................................................. 12

    I.    YAPP is likely to succeed on the merits of the constitutional
        claims ............................................................................ 13

        A.    NLRB Board Members are unconstitutionally insulated
            from removal ......................................................... 14

        B.    NLRB ALJs are unconstitutionally insulated from
            removal ................................................................. 22

        C.    YAPP has satisfied the causal harm requirement as to
            NLRB Board Member and ALJ removal ................................. 28

        D.    The NLRB's administrative adjudication of private rights
            and legal relief violates the Seventh Amendment ................... 34

        E.    NLRB Members' wielding of executive, judicial, and
            legislative functions violates the separation of powers
            and due process ....................................................... 44

II.     YAPP will suffer irreparable harm without a preliminary
        injunction ................................................................................. 48

III.    The balance of equities tips in YAPP's favor and an injunction
        is in the public interest .......................................................... 54

CONCLUSION AND REQUESTED RELIEF ...................................................... 57

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABM Industry Groups, LLC v. United States Department of Labor*,
    --- F. Supp. 3d ----, 2024 WL 4642962 (S.D. Tex. Oct. 30, 2024) ....................32

*ACLU v. McCreary County*,
    354 F.3d 438 (6th Cir. 2003) ...............................................................................50

*Airgas USA, LLC*,
    373 NLRB No. 102 ............................................................................36, 38, 39, 40

*Allentown Mack Sales & Service, Inc. v. NLRB*,
    522 U.S. 359 (1998) ............................................................................................45

*Alpine Securities Corp. v. FINRA*,
    2023 WL 4703307 (D.C. Cir. July 5, 2023) ......................................................51

*Axon Enterprises, Inc. v. FTC*,
    598 U.S. 175 (2023)......................................................................................*passim*

*Bonnell v. Lorenzo*,
    241 F.3d 800 (6th Cir. 2001) .............................................................................13

*BST Holdings, L.L.C. v. OSHA*,
    17 F.4th 604 (5th Cir. 2021) .......................................................................52, 55

*Calcutt v. Federal Deposit Insurance Corporation*,
    37 F.4th 293 (6th Cir. 2022) .......................................................................26, 28

*Cochran v. SEC*,
    20 F.4th 194 (5th Cir. 2021) .......................................................................29, 51

*Collins v. Yellen*,
    594 U.S. 220 (2021)..............................................................................15, 19, 22

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
    596 U.S. 212 (2022)............................................................................................43

*Curtis v. Loether*,
415 U.S. 189 (1974)..................................................................43, 44

*In re DeLorean Motor Co.*,
755 F.2d 1223 (6th Cir. 1985) ...........................................12

*Dimick v. Scheidt*,
293 U.S. 474 (1935)..........................................................41

*Doe v. Ohio State University*,
136 F. Supp. 3d 854 (S.D. Ohio 2016) ...............................51

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975)..........................................................53

*Elrod v. Burns*,
427 U.S. 347 (1976)....................................................14, 52

*Energy Transfer, LP v. National Labor Relations Board*,
2024 WL 3571494 (S.D. Tex. July 29, 2024) ...............25, 31

*Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010)..........................................*passim*

*Granfinanciera, S.A. v. Nordberry*,
492 U.S. 33 (1989)......................................................34, 42

*Humphrey's Executor v. U.S.*,
295 U.S. 602 (1935)............................................16, 20, 23

*Jarkesy v. Securities & Exchange Commission*,
34 F.4th 446 (5th Cir. 2022) ............................22, 23, 24, 34

*Leachco, Inc. v. Consumer Product Safety Commission*,
103 F.4th 748 (10th Cir. 2024) ..............................18, 22, 32

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ...........................................55

*Lucia v. SEC*,
585 U.S. 237 (2018)..........................................22, 29, 30

*Mattia v. City of Center Line, Michigan*,
  2017 WL 6422069 (E.D. Mich. Dec. 18, 2017) ..................................55

*Mertens v. Hewitt Associates*,
  508 U.S. 248 (1993)...............................................................35, 43

*Myers v. United States*,
  272 U.S. 52 (1926).......................................................................14

*National Federation of Independent Business v. OSHA*,
  595 U.S. 109 (2022)....................................................................46

*National Licorice Co. v. NLRB*,
  309 U.S. 350 (1940).....................................................................43

*Nken v. Holder*,
  556 U.S. 418 (2009).....................................................................54

*NLRB v. Jones & Laughlin Steel Corp.*,
  301 U.S. 1 (1937).....................................................................36, 44

*Oil States Energy Services, LLC v. Greene's Energy Group*,
  LLC, 138 S. Ct. 1365 (2018) ..............................................42

*Overstreet v. El Paso Disposal, L.P.*,
  625 F.3d 844 (5th Cir. 2010) ...............................................17

*Overstreet v. Lexington–Fayette Urban County Government*,
  305 F.3d 566 (6th Cir. 2002) ........................................53, 54

*Palsgraf v. Long Island Railroad*,
  248 N.Y. 339, 162 N.E. 99 (1928)........................................47

*Planet Aid v. City of St. Johns*,
  782 F.3d 318 (6th Cir. 2015) .........................................11, 12

*Planned Parenthood Association of Cincinnati, Inc. v. City of
  Cincinnati*, 822 F.2d 1390 (6th Cir. 1987) .........................55

*Rieth-Riley Construction Co., Inc. v. National Labor Relations Board*,
  114 F.4th 519 (6th Cir. 2024) ...............................................14

Page(s)

*Salmi v. Secretary of Health & Human Services*,
774 F.2d 685 (6th Cir. 1985) ............................................................33

*Securities & Exchange Commission v. Jarkesy*,
144 S. Ct. 2117 (2024)...................................................24, 38, 39, 41

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020)...................................................................*passim*

*Space Exploration Technolo-Gies Corp. v. National Labor Relations Board*, 2024 WL 3512082 (W.D. Tex. July 23, 2024).........................21, 25, 33

*Stern v. Marshall*,
564 U.S. 462 (2011).....................................................................*passim*

*Thryv, Inc.*,
372 NLRB No. 22 (Dec. 13, 2022)................................................*passim*

*Thryv, Inc., v. NLRB*,
102 F.4th 727 (5th Cir. 2024) ......................................................36, 38

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994).............................................................................40

*United States v. Burke*,
504 U.S. 229 (1992).............................................................................38

*United States v. Texas*,
599 U.S. 670 (2023).............................................................................18

*VHS Acquisition Subsidiary No. 7 v. National Labor Relations Board*,
--- F. Supp. 3d ----, 2024 WL 5056358 (D.D.C. Dec. 10, 2024)..................26, 28

*Wagafe v. Biden*,
2024 WL 2274349 (W.D. Wash. May 20, 2024) ...............................40

*Westrock Services, Inc.*,
366 NLRB No. 157 (Aug. 6, 2018) .....................................................22

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008)................................................................................12

*Yaldo v. Wayne State University*,
  2015 WL 6082098 (E.D. Mich. Oct. 15, 2015) ..................................50

**Statutes**

5 U.S.C. § 701 ..............................................................................2

5 U.S.C. § 1202 ...........................................................................25

5 U.S.C. § 7521 ...........................................................................25

28 U.S.C. § 1292 ........................................................................2, 4

28 U.S.C. § 1331 ...........................................................................2

28 U.S.C. § 2201 ...........................................................................2

28 U.S.C. § 2202 ...........................................................................2

29 U.S.C. § 153 ........................................................................15, 20

29 U.S.C. § 154 ...........................................................................17

29 U.S.C. § 156 ...........................................................................17

29 U.S.C. § 159 ...........................................................................17

29 U.S.C. § 160 .....................................................................*passim*

**Constitutional Provisions**

U.S. Const. amend. VII ...............................................................34, 42

U.S. Const. art. II, § 2 .................................................................22

U.S. Const. art. II, § 3, cl. 3 ........................................................14

**Regulations**

29 C.F.R. § 102.35 .......................................................................23

29 C.F.R. § 102.48 .......................................................................23

Page(s)

12 C.F.R. § 208.39 ...................................................................27

29 C.F.R. § 102.48 ...................................................................27

**Other Authorities**

Wright & Miller, 11A Federal Practice & Procedure Civil § 2948.1
   (3d ed.) ...........................................................................51, 52

C. Nelson, *Adjudication in the Political Branches*, 107 Colum. L.
   Rev. 559 (2007) ...............................................................35

## STATEMENT REQUESTING ORAL ARGUMENT

This appeal arises from the denial of a preliminary injunction that Plaintiff-Appellant YAPP USA Automotive Systems, Inc. sought to prevent unconstitutional proceedings initiated by the Defendant-Appellee National Labor Relations Board. More specifically, YAPP contends that the NLRB's structure violates the United States Constitution because the NLRB board members and administrative law judges are unlawfully insulated from removal, and because the NLRB proceedings deprive YAPP of its right to a jury trial on certain legal remedies sought by the NLRB. As the district court acknowledged, these issues are arising in cases throughout the country with various courts granting injunctions against NLRB proceedings. (R.34, Order, PageID.366.) Recent decisions by the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit conflict with the district court's interpretation of this Court's precedent. Because of the national implications of the issues raised here, YAPP believes that oral argument will assist the Court in resolving this appeal.

# JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff-Appellant YAPP USA Automotive Systems, Inc. sought declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, on its claims that the National Labor Relations Board's structure and procedures violate the United States Constitution. (*See* R.1, Compl., PageID.8-26.)

This Court has jurisdiction over YAPP's appeal under 28 U.S.C. § 1292(a)(1), which authorizes appeals by right from interlocutory orders "refusing . . . injunctions[.]" On September 9, 2024, the district court denied YAPP's motion for a preliminary injunction. (R.29, Op. & Order, PageID.305.) YAPP timely filed its notice of appeal that same day. (R.30, Notice of Appeal, PageID.339.)

## STATEMENT OF ISSUES FOR REVIEW

1.　Is Plaintiff entitled to a preliminary injunction enjoining Defendants from proceeding with the underlying administrative action against Plaintiff while this suit is pending?

Plaintiff submits that the answer is "Yes" because Plaintiff can show the required elements for preliminary injunctive relief as follows:

(1) Plaintiff is likely to succeed on the merits that (a) the NLRB's Board Members are unconstitutionally insulated from removal, (b) the NLRB's ALJs are unconstitutionally insulated from removal, (c) Plaintiff is being deprived of its right to a jury trial regarding legal remedies being sought by the NLRB, and/or (d) the structure of the NLRB violates the separation of powers and Plaintiff's due process rights;

(2) Plaintiff will suffer irreparable harm without an injunction because once the unconstitutional proceedings take place and have been concluded they cannot be undone;

(3) the balance of equities supports an injunction because Plaintiff stands to be stripped of its constitutional rights while Defendants stand to lose little to nothing by comparison; and

(4) it is in the public's interest to ensure that persons are subject to only constitutional proceedings.

**INTRODUCTION**

This appeal arises from the district court's denial of Plaintiff-Appellant YAPP USA Automotive Systems, LLC's motion for injunctive relief, in contravention of the Supreme Court's reasoning in *Axon Enterprises, Inc. v. FTC,* 598 U.S. 175, 179 (2023).

This action challenges the constitutionality of the structure of the National Labor Relations Board ("NLRB" or "Board") and correspondingly the constitutionality of the administrative proceeding against YAPP before the NLRB and its administrative law judges ("ALJs"). Similar challenges are pending in various other courts across the country, including the Fifth Circuit.

Appellant YAPP is the Respondent in an NLRB administrative proceeding currently pending before an NLRB ALJ. The administrative hearing before the ALJ took place over a span of four days, starting October 15, 2024. Before the hearing, YAPP sought a preliminary injunction from the district court, which denied the motion. YAPP believed the district court's ruling was an abuse of discretion, and YAPP promptly filed an emergency appeal to this Court pursuant to 28 U.S.C. § 1292(a)(1). YAPP filed an emergency motion with this Court for a preliminary injunction to adjourn the NLRB hearing pending resolution of this appeal. On October 13, 2024, a panel of this Court denied YAPP's emergency motion, ruling that YAPP could not establish the necessary harm to warrant the requested

injunction. In denying YAPP's emergency motion, that panel of this Court adopted reasoning contrary to the Supreme Court's decision in *Axon*.

If the NLRB proceedings are allowed to continue, YAPP will suffer the very harm that *Axon*'s holding is intended to prevent—"being subjected to 'unconstitutional agency authority'—'a proceeding by an unaccountable ALJ.'" *Axon*, 598 U.S. at 179 (cleaned up). As the Supreme Court explained, this is a "here-and-now injury" that "it is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Id*. Furthermore, the NLRB's seeking certain remedies administratively rather than before a jury violates the Seventh Amendment to the Constitution. Appellees have refused to stay the underlying NLRB proceedings while YAPP seeks to vindicate its constitutional rights in federal court. Although the hearing has already taken place, the administrative proceeding before the NLRB ALJ continues, and will continue for several months, as the ALJ considers the parties' recently filed post-hearing briefs and until the ALJ issues a ruling. Accordingly, YAPP respectfully requests that this Court reverse the district court's denial of its motion for a preliminary injunction against the NLRB proceedings for the duration of this litigation.

## STATEMENT OF THE CASE

YAPP is a world-class, Tier 1 automotive supplier specializing in design, engineering and manufacturing of automotive fuel system solutions. (R.4-1, Pratt

Decl. ¶ 4, PageID.83.) YAPP has a facility located in Romulus, Michigan. (*Id.* ¶ 5, PageID.83.)

Former YAPP employee Jesse Dowling worked as an Advanced Maintenance Technician at the Romulus plant. (*Id.* ¶ 6, PageID.83.) On May 5, 2023, following a company investigation into allegations of workplace violence and harassment against Mr. Dowling, YAPP terminated Mr. Dowling. (*Id.* ¶ 7, PageID.83.) On June 22, 2023, Local 174, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") filed an unfair labor practice charge (Case 07-CA-320369) regarding Mr. Dowling's termination. (R.4-2, Garrett Decl. ¶ 5, PageID.86.) The NLRB sought YAPP's evidence and position in response to the charge, to which YAPP responded. (*Id.*)

On July 31, 2023, the UAW filed a petition seeking to unionize the production and maintenance employees at YAPP's Romulus plant. (*Id.* ¶ 6, PageID.86.) In September 2023, an election was held, and on September 25, 2023, Elizabeth Kerwin, Regional Director for Region 7, issued a Certification of Results of Election, noting that the unionization effort had failed, confirming that no party had filed timely objections to the conduct of the election, and therefore certifying the results. (*Id.* ¶ 7 and Ex. A (Cert. of Results of Election) PageID.86, 89.)

On September 29, 2023, the UAW filed an amended unfair labor practice charge regarding the Dowling termination and certain terms and conditions of

employment for YAPP employees, but the UAW in its charge raised no allegations with respect to the conduct of the election. (*Id*. ¶ 8, PageID.86-87.) The NLRB sought YAPP's evidence and position in response, and YAPP responded. (*Id*.)

On February 1, 2024, UAW filed another unfair labor practice charge (Case 07-CA-336485) regarding the election and other claims. (*Id*. ¶ 9, PageID.87.) The NLRB sought YAPP's evidence and position in response, and YAPP responded. (*Id*.)

On April 9, 2024, the NRLB Regional Director issued a complaint in response to the first charge, 07-CA-320369, and noticed an administrative hearing for July 16, 2024. (*Id*. ¶ 10 & Ex. B (Notice), PageID.87, 90.) YAPP answered the complaint. (*Id*.) By agreement, the July 16, 2024 hearing date was continued to September 10, 2024. (*Id*.)

On August 6, 2024, the Regional Director consolidated case arising from the Dowling termination (07-CA-320369) with the case arising from the election (07-CA-336485), issued an amended complaint and noticed that an administrative hearing on the amended complaint would occur on the September 10, 2024 date already scheduled for the Dowling termination. (*Id*. ¶ 11 & Ex. C (Compl. & Notice of Hr'g), PageID.87, 91.) The consolidated complaint sought—in relevant part—the following remedies: "Make whole Jesse Dowling . . . by payment of backpay," including "reasonable search-for-work and interim employment expense" as well as

any adverse tax consequences and "[M]ake whole those employees who suffered financial loss including direct or foreseeable pecuniary harms suffered, plus interest computed in accordance with Board policy due to the discipline imposed related to the rules."[1] (*Id.*)

Throughout the NLRB's investigation of the first and second charges, the parties were engaged in ongoing settlement discussions. (R.27-4, Garrett Decl. ¶4, PageID.301). Those settlement discussions reached an impasse only in early August 2024, just before the Regional Director's issuance of the consolidated complaint on August 6, 2024. (*Id.* ¶ 5, PageID.302.)

On August 12, 2024, YAPP moved to postpone the hearing given the numerous new allegations. (R.4-2, Garrett Decl. ¶ 12, PageID.87-88.) YAPP asked for a two-month extension—what it considered a reasonable period, given the added allegations and additional material relief sought. (*Id.*) The General Counsel and the Union objected to the motion, and by Order entered August 13, 2024, Deputy Chief Administrative Law Judge Arthur Amchan denied YAPP's motion to postpone the hearing. (*Id.*) YAPP filed its answer to the amended complaint on August 20, 2024. The hearing remained set for September 10, 2024. (*Id.* ¶ 14, PageID.88.)

---

[1] In the original complaint, the General Counsel sought "consequential damages suffered, including direct or foreseeable pecuniary harms suffered . . . ." (R.1, Compl. ¶31, PageID.7)

On August 19, 2024, YAPP filed suit in the Eastern District of Michigan to enjoin the NLRB proceedings. (R.1, Compl., PageID.1-28; R.4, Mot. for Prelimin. Injunc., PageID.37-112.) YAPP requested that the court enjoin the NLRB proceedings because the NLRB's structure is unconstitutional, and thus so are the administrative proceedings. (R.4, Mot. for Prelimin. Injunc., PageID.37-38.) On September 9, 2024, the district court issued its Opinion and Order Denying Plaintiff's Motion for Preliminary Injunction. (R.29, Op. & Order, PageID.305-38.) The district court held that YAPP was unlikely to succeed on the merits of its claim that it was about to be subjected to unconstitutional proceedings, and that YAPP had not established the requisite irreparable harm. (*Id.*)

YAPP immediately appealed the district court's decision to this Court. (R.30, Notice of Appeal, PageID.339.) YAPP also immediately moved for a stay and injunction pending appeal, which the district court granted later that same day. (R.34, Order Granting Pls.' Emergency Mot. to Stay Pending Appeal, PageID.366.) The next day, on September 10, 2024, Defendants sought reconsideration of the district court's stay, and the district court reversed itself on Friday, September 13, lifting the stay of the administrative proceedings. (R.37, Order Granting Defs.' Mot. for Recons., PageID.406.) After the reconsideration order, the NLRB rescheduled the hearing for Tuesday, October 15, 2024. On September 17, 2024, YAPP filed its emergency motion to enjoin the NLRB proceedings with the Court. (*See* Mot., Doc.

15-1.) On October 13, 2024, this Court issued its opinion and judgment denying YAPP's request for an emergency injunction. (*See* Order, Doc. 28-1.)

The hearing before the NLRB ALJ occurred from October 15 to October 18, 2024. The NLRB proceedings before the ALJ are not yet complete. The Parties submitted their post-hearing briefs on December 6, 2024. The ALJ is expected to issue her opinion in the following months.

## SUMMARY OF THE ARGUMENT

As currently constructed, the structure of the NLRB is unconstitutional, and YAPP should not be required to continue in subjection to an administrative proceeding before an unconstitutionally constructed federal agency and its administrative law judges. This unconstitutional structure derives from the removal restrictions protecting NLRB members and NLRB ALJs and further derives from NLRB's serving as rule-maker (legislative function), prosecutor (executive function), and adjudicator (judicial function), in violation of the separation of powers. In addition, the NLRB is violating the Seventh Amendment by seeking certain remedies administratively rather than before a jury. Similar challenges are pending in various other courts, including the Fifth Circuit. (*See* R.29, Order n.1, PageID.306-07.)

YAPP remains subject to NLRB proceedings before an NLRB ALJ. If the NLRB proceedings are allowed to continue, YAPP will suffer the very harm that its

challenge to the constitutionality of the NLRB's proceedings is intended to prevent—"being subjected to 'unconstitutional agency authority'—'a proceeding by an unaccountable ALJ.'" *Axon*, 598 U.S. at 179 (cleaned up). As the Supreme Court has explained, this is a "here-and-now injury" that "it is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Id*. YAPP is also being forced to defend itself with respect to certain legal damages being sought before the NLRB ALJ and the Board instead of before a jury, in violation of the Seventh Amendment. The district court erred in failing to stay the underlying NLRB proceedings while YAPP seeks to vindicate its constitutional rights in federal court. Although the hearing occurred on October 15-18, the proceeding will continue for the coming months while the ALJ considers the record and the parties' post-hearing briefs, and then issues a ruling. Accordingly, YAPP respectfully requests that this Court reverse the district court and remand for entry of an order preliminarily enjoining the NLRB from further administrative proceedings against YAPP while the district court considers the merits of YAPP's request for declaratory relief.

## STANDARD OF REVIEW

This Court reviews the ultimate decision to grant or deny an injunction for an abuse of discretion. *Planet Aid v. City of St. Johns*, 782 F.3d 318, 323 (6th Cir. 2015). But the Court reviews de novo the district court's legal conclusions, including the

movant's likelihood of success on the merits, while findings of fact are reviewed for clear error. *Id.*

## ARGUMENT

YAPP is entitled to a preliminary injunction because YAPP can show: (1) it is likely to succeed on the merits of its constitutional claims; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Even if the court is not certain that a plaintiff is likely to succeed on the merits, a preliminary injunction is still appropriate where the plaintiff shows "serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant" or if "the merits present a sufficiently serious question to justify further investigation." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229-30 (6th Cir. 1985) (internal quotation omitted).

YAPP submits that it can satisfy the four elements for a preliminary injunction, but the materiality of the constitutional questions here and the significance of the "here-and-now" injury to YAPP due to the unconstitutional proceedings fit precisely in the precedent of *In re DeLorean Motor Co. See id.* (quoting *Am. Fed. of Musicians v. Stein*, 213 F.2d 679, 683 (6th Cir. 1954) ("When the nature of the questions which arise upon a suit make them a proper subject for

deliberate examination, and if a stay of proceedings will not result in too great injury to the defendants, it is proper to preserve the existing state of things until the rights of the parties can be fairly and fully investigated and determined.")). Here, as the district court found in its order granting the stay, "conflicting opinions have been issued on the claims raised in the underlying motion and others remain pending," and this Court has not addressed these claims "in connection with the NLRB." (R.34, Order, PageID.366-67.) Even though the district court made this statement in the context of its decision regarding the stay pending appeal, the rationale still applies here. The materiality of the underlying constitutional questions at issue and the significance of the potential harm to YAPP, with little to no harm to Defendants, demand that the merits of these constitutional questions be fairly and fully investigated and determined.

## I.   YAPP is likely to succeed on the merits of the constitutional claims.

When a movant demonstrates a substantial likelihood of success on constitutional claims, the movant satisfies the first and second preliminary-injunction factors. "The court should first address whether the movant shows a substantial likelihood of success on the merits. This is because a successful showing that a constitutional right is being threatened or impaired mandates a finding of the second factor, irreparable injury." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir.

2001); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (internal citations omitted). Here, YAPP has demonstrated a substantial likelihood of success on the merits on three separate constitutional arguments.

### A. NLRB Board Members are unconstitutionally insulated from removal.

The protection from removal afforded to NLRB Board Members impairs the ability of the President to meet the President's obligations under the Constitution. Article II of the Constitution states that the President must "take care that the Laws be faithfully executed." U.S. Const. art. II, § 3, cl. 3. The President does not execute federal law "alone and unaided." *Myers v. United States*, 272 U.S. 52, 117 (1926). "He must execute them by the assistance of subordinates." *Id*. But because the executive responsibility remains vested in the President, the officers of every administrative agency—including "independent" ones—must be subject to presidential oversight. *See Free Enter. Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 513-14 (2010). To exercise this power and comply with this "Take Care Clause," the President must be able to remove subordinate officers who assist in effectuating the President's duties. *Rieth-Riley Construction Co., Inc. v. National Labor Relations Board*, 114 F.4th 519, 529 (6th Cir. 2024) (quoting *Free Enter. Fund*, 561 U.S. at 513-14). The Constitution thus requires that the President

have the "power to remove—and thus supervise—those who wield executive power on his behalf." *Seila Law LLC v. CFPB*, 591 U.S. 197, 204 (2020).

The President has the power to appoint NLRB Board members. *See* 29 U.S.C. § 153(a). The NLRB consists of five Board members. *Id*. With the advice and consent of the Senate, the President appoints Board members to staggered, five-year terms. Article II requires the President to maintain "unrestricted removal power" over all federal officials "who wield executive power," subject to two potential exceptions discussed below. *Seila Law*, 591 U.S. at 204. However, under the National Labor Relations Act ("NLRA"), the President can remove Board members only "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). These limitations restrict the President's "unrestricted removal power" guaranteed by Article II and thereby impair the President's constitutional obligations under the "Take Care Clause." *Seila Law*, 591 U.S. at 204.

Board members are removable "for neglect of duty or malfeasance in office," but not for other causes. *See* 29 U.S.C. § 153(a). The Supreme Court has found this restriction on the President's power to be unconstitutional. *See Collins v. Yellen*, 594 U.S. 220, 256 (2021) ("The President must be able to remove not just officers who disobey his commands but also those he finds 'negligent and inefficient[.]'" (quoting *Myers*, 272 U.S. at 135)). In *Seila Law*, the Supreme Court held that "the [Consumer

Financial Protection Bureau]'s leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers." 591 U.S. at 213.

As noted, removal restrictions for executive branch officials are generally unconstitutional. For principal officers, the Supreme Court has recognized only one narrow exception "for multimember expert agencies that do not wield substantial executive power." *Id.* at 218. This exception originated in *Humphrey's Executor v. United States*, which determined that the Commissioners of the Federal Trade Commission ("FTC") did not at the time exercise "executive power in the constitutional sense." 295 U.S. 602, 628 (1935).[2]

Here, the district court appears to have determined that the NLRB does not wield substantial executive power but rather exercises only some arguably executive functions, citing *Morrison v. Olson*, 487 U.S. 654 (1988), or that it did not exercise executive Power in the constitutional sense but only as part of its quasi-legislative or quasi-judicial powers. (R.29, Op. & Order, PageID.318 (citing *Seila Law*, 591 U.S. at 278 n.7 (Kagan, J., concurring in part and dissenting in part))). However,

---

[2] In *Seila Law*, the Supreme Court stated that its conclusion that "the FTC did not exercise executive power has not withstood the test of time. . . . '[I]t is hard to dispute that the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree.'" 591 U.S. at 216 n.2.

contrary to the district court's reasoning, NLRB Board Members do wield substantial executive power in multiple ways.

The Board has power to appoint the "executive secretary, and such attorneys, examiners, and regional directors, and other such employees as it may . . . find necessary for the proper performance of its duties." 29 U.S.C. § 154. The Board has the executive power to prevent any person from engaging in an unfair labor practice, decide unfair labor practice charges, issue subpoenas, engage in rulemaking, conduct union representation elections, determine appropriate units for the purpose of collective bargaining, adjudicate representation election disputes, and exercise prosecutorial power in federal district courts. *See* 29 U.S.C. §§ 156, 159, 160. By further example, Section 10(j) of the NLRA, 29 U.S.C. § 160(j), gives the Board authority to exercise quintessentially prosecutorial power in federal district courts: "The Board shall have the power, upon issuance of [an administrative] complaint as provided in [29 U.S.C. § 160(b)] charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j); *see, e.g.*, *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010) ("Petition power under § 10(j) is prosecutorial in nature[.]"). The NLRA vests in the Board the authority "to

prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce." 29 U.S.C. § 160(a). This includes the ability to "petition any court of appeals of the United States, or if all the courts of appeals to which application may be made are in vacation, any district court of the United States, within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order. . ." *Id*. In this regard, the NLRB wields substantial executive power as an enforcement body with the ability to promulgate binding rules, unilaterally issue final decisions awarding relief in administrative adjudications and seek monetary penalties against private parties in federal court. The NLRB wields substantial prosecutorial, rulemaking, policymaking, and adjudicative authority.

The Supreme Court has made clear that even when "the activities of administrative agencies take legislative and judicial forms, they are exercises of—indeed, under our constitutional structure they must be exercises of—the executive Power." *Seila Law*, 591 U.S. at 216 n.2 (internal quotations omitted). And prosecuting someone for alleged violations of federal law lies at the heart of the Constitution's concept of Executive Power. *See, e.g.*, *United States v. Texas*, 599 U.S. 670, 678-79 (2023); *Seila Law*, 591 U.S. at 218-19. The Supreme Court's statements here show that *Leachco, Inc. v. Consumer Product Safety Commission*,

103 F.4th 748 (10th Cir. 2024) was wrongly decided, and the district court's reliance upon that ruling is error. The district court's reasoning that the NLRB does not wield executive power simply cannot withstand scrutiny. Because Board Members exert executive authority, the President must be able to remove them without barriers.

The Supreme Court recognizes this removal power is impermissibly restrained by statutes that limit the President's ability to remove an executive official, either by restricting who can remove, or limiting the rationale for removal. *See Free Enter. Fund*, 561 U.S. at 495; *Seila Law*, 591 U.S. at 205; *Collins*, 594 U.S. 220 at 250-51. For example, in *Free Enterprise Fund*, the Court invalidated a for-cause removal restriction on the members of the Public Company Accounting Oversight Board. 561 U.S. at 495-96. The officers in question could be removed only for cause by officers of the Securities and Exchange Commission, who in turn could be removed only for cause by the President. The Court held that this removal restriction "subvert[ed] the President's ability to ensure that the laws are faithfully executed" and was thus "incompatible with the Constitution's separation of powers." *Id*. at 498. Indeed, the Supreme Court stated:

> No one doubts Congress's power to create a vast and varied federal bureaucracy. But where, in all this, is the role for oversight by an elected President? The Constitution requires that a President chosen by the entire Nation oversee the execution of the laws. And the 'fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution,'

for '[c]onvenience and efficiency are not the primary objectives—or the hallmarks—of democratic government.'" [*Id.* at 499 (citing *Bowsher v. Synar*, 478 U.S. 736 (1986)) (quoting *I.N.S. v. Chadha*, 462 U.S. 919, 944 (1983))].

The removal protections for NLRB Members are even stricter than those that insulated the FTC Commissioners in 1935 (and still do). The latter are removable "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Ex'r*, 295 U.S. at 620 (quoting 15 U.S.C. § 41). NLRB Members, in contrast, are removable only "for neglect of duty or malfeasance in office," but not for other causes like inefficiency, 29 U.S.C. § 153(a). Accordingly, the President's lack of unfettered power to remove NLRB Board members due to these statutory restrictions violates Article II of the Constitution.

Here, the district court also reasoned that YAPP did not have a substantial likelihood of success on the merits because the "NLRB appears to fall comfortably within the *Humphrey's Executor* exception." (R.29, Op. & Order, PageID.314.) Relying upon a petition for certiorari filing, the district court reasoned that the *Humphrey's Executor* exception still protects any traditional independent agency headed by a multimember board, with staggered terms. (*Id.* at PageID.317.) However, the district court's application of *Humphrey's Executor* to the NLRB is wrong. There, the Court recognized only one narrow exception for principal officers, namely "for multimember expert agencies that do not wield substantial executive

power." *Seila Law*, 591 U.S. at 218. But, as discussed above, that narrow exception does not apply here because NLRB Board Members *do* wield substantial executive power.

In addition, the factors for removal identified as appropriate limits on presidential power in *Humphreys Executor* included the right of the President to remove executive officers for inefficiency, which is *not* recognized as a basis for removing NLRB Board members in the NLRA. Thus, the *Humphreys Executor* exception does not rescue the constitutional infirmity of the NLRA here, as the NLRA's removal protections of NLRB Board members is more restrictive on presidential power than ruled permissible in *Humphrey's Executor*. This very application of *Humphrey's Executor* was appropriately rejected in *Space Exploration Technolo-Gies Corp.* v. *NLRB*:

> [A]llowing Congress to eliminate the President's ability to remove principal officers for inefficiency would be an unjustified expansion of Humphrey's Executor. See *Collins*, 141 S. Ct. at 1787. ("The President must be able to remove not just officers who disobey his commands but also those he finds 'negligent and inefficient[.]'") (quoting *Myers* v. *U.S.*, 272 U.S. 52, 135, 47 S. Ct. 21, 71 L. Ed. 160 (1926)). *Finding that NLRB Member's removal protection constitutional would require this court to expand* Humphrey's Executor *where the Supreme Court has repeatedly declined to do so.* [--- F. Supp. 3d ---, 2024 WL 3512082, at *4 (W.D. Tex. 2024) (citing *Free Enter. Fund*, 561 U.S. 477).]

*See also Seila Law LLC*, 591 U.S. 197; *Collins*, 594 U.S. 220) (emphasis added).[3]

The district court's reliance upon *Leachco, Inc.* v. *Consumer Product Safety Commission*, 103 F.4th 748 (10th Cir. 2024) was erroneous and the district court's reliance upon *Morrison*, which *Leachco* heavily relies upon, is also misplaced as *Morrison* dealt with inferior officers. *See Seila Law*, 591 U.S. at 219 ("The logic of *Morrison* also does not apply.").

## B.    NLRB ALJs are unconstitutionally insulated from removal.

YAPP has a substantial likelihood of success on the merits because the NLRB ALJs are unconstitutionally protected from removal by a two-layer "for cause" removal structure. Article II's Appointments Clause provides the President authority to appoint officers and inferior officers of the United States. *See* U.S. Const. art. II, § 2. ALJs function as inferior officers of an executive agency. *See id.*; *see also Lucia v. SEC*, 585 U.S. 237, 248-49 (2018); *Westrock Servs., Inc.*, 366 NLRB No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). Inferior officers "are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy v. Sec. & Exch. Comm'n,* 34 F.4th 446, 464 (5th Cir. 2022), *cert.*

---

[3] To the extent that this Court believes that the *Humphrey's Executor* exception continues to apply here, YAPP respectfully submits that *Humphrey's Executor* was wrongly decided and should be limited to its facts or, alternatively, overturned.

*granted*, 143 S. Ct. 2688 (2023), *cert. denied*, 143 S. Ct. 2690 (2023), *aff'd and remanded*, 144 S. Ct. 2117 (2024). "If principal officers cannot intervene in their inferior officers' actions except in rare cases, the President lacks the control necessary to ensure that the laws are faithfully executed." *Jarkesy*, 34 F.4th at 464.

The Supreme Court in *Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935) recognized an exception to the President's removal power as it relates to inferior officers: "one for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 591 U.S. at 218. That exception does not apply here, however, because ALJs possess significant and vast administrative authority. *Id*. NLRB ALJs exercise considerable power over administrative case records by controlling the presentation and admission of evidence. 29 C.F.R. § 102.35-45. Even more tellingly, in some cases, ALJ decisions become final and binding decisions of the NLRB. Pursuant to Section 10(c) of the NLRA, 29 U.S.C. § 160(c), and 29 C.F.R. § 102.48(a), if an ALJ files a decision and recommended order and there are no timely exceptions from the parties, then the findings, conclusions, and recommendations contained in the ALJ's decision become the Board "findings, conclusions, and order, and all objections and exceptions must be deemed waived for all purposes."

The Fifth Circuit recently ruled that ALJs of the Securities Exchange Commission ("SEC") were unconstitutionally insulated from removal by a two-layer

"for cause" removal system. Under the SEC structure, SEC ALJs could be removed: (1) by the SEC "for good cause established and determined by the Merit Systems Protection Board (MSPB) on the record after opportunity for hearing before the Board,"[4] and (2) the SEC Commissioners could only be removed by the President for good cause. *Jarkesy*, 34 F.4th at 463.[5]

The Fifth Circuit ruled that "SEC ALJs exercise considerable power over administrative case records by controlling the presentation and admission of evidence; they may punish contemptuous conduct; and often their decisions are final and binding." *Id*. Since the SEC ALJs were so insulated from removal, the Fifth Circuit determined that the President could not take care to faithfully execute the laws as required by the Take Care Clause. *Id*. at 464-65.

The SEC structure is nearly identical to the NLRB's structure for ALJs, including the ALJ assigned to preside over the ongoing NLRB proceedings against YAPP. The NLRB appoints ALJs, but the NLRA provides at least two layers of for-cause removal protections for them, which in turn unconstitutionally prevent the President from exercising Presidential authority under Article II. NLRB ALJs can

[4] If the MSPB finds good cause to remove an SEC ALJ, the Commission must then choose to act on that finding. *Jarkesy*, 34 F.4th at 463

[5] *Jarkesy* was appealed to the United States Supreme Court. The Court affirmed the lower court's ruling on other grounds and did not consider the Article II argument. *Sec. & Exch. Comm'n v. Jarkesy*, 144 S. Ct. 2117, 2127-28 (2024).

only be removed "for good cause established and determined" by the MSPB after hearing, and the MSPB Members who may remove ALJs are removable by the President only for "inefficiency, neglect of duty, or malfeasance in office." *See* 5 U.S.C. §§ 1202(d), 7521(a). In this manner, NLRB ALJs are insulated from removal by the President by at least two layers of for-cause removal protection. *Id*. As the Supreme Court has held, "the added layer of tenure protection makes a difference . . . [a] second level of tenure protection changes the nature of the President's review . . . [t]hat arrangement is contrary to Article II's vesting of the executive power in the President." *Free Enter. Fund*, 561 U.S. at 495-96.

Relevant and binding Supreme Court precedent shows that YAPP will likely succeed on its argument that the NLRB structure with respect to its ALJs is unconstitutional. Indeed, two courts recently addressed this exact issue relating to NLRB ALJs and both granted motions for preliminary injunctions after concluding that the plaintiffs in those cases had established a substantial likelihood of success on the merits. *See Space Expl.*, 2024 WL 3512082; *Energy Transfer, LP v. Nat'l Labor Rels. Bd.*, 2024 WL 3571494 (S.D. Tex. July 29, 2024). Additionally, in what appears to be a first district court ruling on the merits, the United States District Court for the District of Columbia undertook a detailed, historical analysis of the text, structure, and original meaning of the Constitution in considering the parties' cross-motions for summary judgment. After this analysis, the district court held that

NLRB ALJs are unconstitutionally insulated from removal. *See VHS Acquisition Subsidiary No. 7 v. Nat'l Lab. Rels. Bd.*, --- F. Supp. 3d ----, 2024 WL 5056358 (D.D.C. Dec. 10, 2024). The court found that ALJs are "officers of the United States" who wield significant discretionary executive authority, but the President's ability to remove these officers is hindered by a complex, multi-layered process involving the NLRB and the Merit Systems Protection Board (MSPB), both of which have their own removal protections. *Id*. at *5. This structure, according to the court, improperly created multi-layered removal protection for the NLRB ALJs, thus contravening the Constitution. *Id*. (citing *Free Enter. Fund*, 561 U.S. at 495 and *Jarkesy* 34 F.4th at 465 (5th Cir. 2022)). "*Free Enterprise Fund* was clear in its admonition: Officers of the United States cannot be insulated from the removal power by two or more levels of decisionmakers who themselves enjoy job protection. To find otherwise would poison the soil of Article II and choke off accountability to the President." *Id*. at *9 (cleaned up).

Here, the district court relied upon this Court's ruling in *Calcutt v. Federal Deposit Insurance Corporation*, 37 F.4th 293 (6th Cir. 2022) *rev'd in part on other grounds* 598 U.S. 623 (2023), relating to ALJs for the Federal Deposit Insurance Corporation ("FDIC"). There, this Court determined that because the FDIC ALJs only made recommendations that were subject to review by the FDIC Board, their removal protections were not unconstitutional. *Calcutt* does not apply to NLRB

ALJs, however, because the NLRB ALJs' powers are significantly greater.  FDIC ALJs who were at issue in *Calcutt* make only recommendations that are subject to review by the FDIC Board. After an FDIC ALJ makes a recommendation, the FDIC Board's final decision "will be based upon review of the entire record of the proceeding, except that the Board of Directors may limit the issues to be reviewed to those findings and conclusions to which opposing arguments or exceptions have been filed by the parties." 12 C.F.R. § 208.39(c)(1). Thus, the decisions of FDIC ALJs are subject to review in all cases.

In contrast, the NLRB's rules and regulations and the text of the NLRA provide that, absent timely exceptions, the findings, conclusions, and recommendations of the ALJ's decision automatically become the decision and order of the Board, as discussed above. 29 U.S.C. § 160(c); 29 C.F.R. § 102.48(a) ("If no exceptions are filed, the administrative law judge's decision and recommended order *automatically become the decision and order of the Board pursuant to section 10(c) of the Act*. All objections and exceptions, whether or not previously made during or after the hearing, are deemed waived for all purposes." (emphasis added)).  Indeed, the district court acknowledged that NLRB ALJs' decisions, absent exceptions, do become decisions of the Board, and yet inexplicably the district court found there were only "minor differences" between the NLRB and FDIC ALJs. (R.29, Op. & Order, PageID.330.) But the decisional authority of NLRB

ALJs and their authority to render decisions that become – "automatically" – decisions of the NLRB is more than a "minor difference" and renders *Calcutt* inapplicable here.[6]

### C.    YAPP has satisfied the causal harm requirement as to NLRB Board Member and ALJ removal.

Both the district court and this Court appear to rely upon *Calcutt v. Federal Deposit Insurance Corporation*, 37 F.4th 293 (6th Cir. 2022) *rev'd in part on other grounds* 598 U.S. 623 (2023), in finding that YAPP was not likely to succeed on the merits since YAPP could not show the requisite harm for pursuing unconstitutional removal restriction claims (for both NLRB Members and ALJs).[7] (Doc. 28-1, Order 6.)  Regardless of which prong houses this discussion—the substantial likelihood of success on the merits prong or irreparable harm prong, these rulings by the district court and the motions panel are contrary to the Supreme Court's reasoning in *Axon* and *Free Enterprise Fund*.  There, the Supreme Court's holdings show that there is no added harm requirement to obtain the requested injunctive relief because the

---

[6] In *VHS Acquisition Subsidiary No. 7*, the district court opined that *Calcutt* was a "tenuous reed to sustain the NLRB's position," as it was "unanimously reversed by the Supreme Court, although on other grounds." 2024 WL 5056358, at *9. YAPP respectfully submits that, at the very least, the Supreme Court's unanimous reversal properly calls into question *Calcutt*'s precedential value, especially in light of *Axon*.

[7] The following analysis also applies to the irreparable harm analysis in Section II below, and YAPP incorporates this analysis into that section by reference.

compelling nature of the here-and-now injury recognized in *Axon* satisfies the harm requirement.

Plaintiffs who are parties in ongoing administrative proceedings and have a meritorious objection to the agency officials' removal protections are, at the very minimum, "entitled to declaratory relief sufficient to ensure that the [administrative] requirements and . . . standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513. The Fifth Circuit, sitting en banc, has held that *Axon* informs that *Collins*, and any reading of *Collins* to require an added harm showing, does not apply to cases, like here, in which the plaintiff "seeks an administrative adjudication untainted by separation-of-powers violations" but "does not seek to 'void' the acts of any [agency] official." *Cochran v. SEC*, 20 F.4th 194, 210 n.16 (5th Cir. 2021) (en banc), aff'd sub nom. *Axon Enter. Inc. v. FTC*, 598 U.S. 175 (2023).

That distinction makes sense. A structural problem pollutes the entirety of a proceeding, regardless of the particular actors' identities. And even if a President may not openly state their interest in removing a particular ALJ, the potential for removal influences how ALJs carry out their duties. After all, Congress sought to make NLRB ALJs politically independent for a reason: it wanted to insulate them from political pressures. *See, e.g., Lucia*, 585 U.S. at 260 (Breyer, J., concurring in the judgment in part and dissenting in part). A showing of particularized cause-and-

effect is not necessary to declare that such insulation from Presidential oversight is unconstitutional.

What's more, requiring a plaintiff to make such a showing in this posture— where they seek to avoid an unconstitutional proceeding and being subject to any rulings by an ALJ—makes no sense. No party could make this particularized showing where the ALJ who will hear its case and make rulings has not been named, or early in the case before an ALJ acts in a way the parties might speculate the President might find objectionable. If a party had to wait until after the assigned ALJ was named by the NLRB, it would need to rush into court on a highly expedited emergency basis because the naming of an NLRB ALJ often triggers hearings, and rulings, at any time. In this type of case, the constitutional flaw is that, as Justice Breyer's *Lucia* opinion sets forth, ALJs who are not accountable to the President act differently than those who know they are subject to the President's control. In contrast, *Collins* is concerned with scenarios in which a party waits to challenge removal protections after it sees the ALJ's particular rulings and then seeks to unwind them. When a party has not sought beforehand to protect itself from constitutional harm and then seeks to void unfavorable ALJ rulings, a showing of particularized cause-and-effect is required. Even if it is determined that there is a causal harm requirement under *Collins*, as the district court in *Energy Transfer* held, "[f]or removal-restriction claims that seek relief before an insulated actor acts, it is

not that *Collins's* causal-harm requirement is altogether inapplicable, but rather that it is readily satisfied." 2024 WL 3571494, at *4.

Furthermore, to read *Calcutt* in a manner that requires a party seeking a constitutionally untainted proceeding to satisfy some additional causal harm requirement based on *Collins* misunderstands the harm YAPP seeks to avoid. As discussed above, the harm presented by an unconstitutionally structured proceeding is different in kind from the harm inflicted by a particular final agency action. *Calcutt* addressed the latter scenario.

This Court and the district court also sought to distinguish *Axon* by stating that *Axon* addresses only subject-matter jurisdiction, not the requirements for an injunction. This attempt to narrow *Axon* runs contrary to the holding and findings therein. *Axon* does hold that for jurisdictional purposes, the exact injury here is a legally cognizable "injury" that is "impossible to remedy" after the administrative proceeding. 598 U.S. at 191 (citation omitted). That begs the question, however, of what more could be needed to show irreparable injury? YAPP introduced evidence that an administrative complaint had been filed against it, and that the NLRB had set the matter for a hearing. It did not allege a constitutional injury in the abstract—it demonstrated with concrete evidence that without court intervention it would be subject to the irreparable harm of having to undergo an illegitimate proceeding

before an illegitimate decisionmaker—a here-and-now injury that cannot be remedied after the proceeding, as *Axon* holds.

The Supreme Court has made clear that a challenge to an agency's "power to proceed at all" differs from a challenge to "action[s] [already] taken in the agency proceedings." *Axon*, 598 U.S. at 192. Being subjected "to an illegitimate proceeding, led by an illegitimate decisionmaker," "cannot be undone" after the fact. *Id*. at 191. And as discussed in detail above, *Collins's* analysis does not apply to litigants seeking an "administrative adjudication un-tainted by separation-of-powers violations"; it applies to litigants seeking to "'void' the acts of any [agency] official." *ABM Indus. Groups, LLC v. United States Dep't of Lab.*, --- F. Supp. 3d ----, 2024 WL 4642962, at *6 (S.D. Tex. Oct. 30, 2024) ("The Fifth Circuit and Supreme Court made clear in *Cochran* and *Axon* that being subject to a proceeding before an improperly insulated ALJ is cognizable legal injury.).

This Court relied upon the Eighth Circuit's decision in *Leachco*, 103 F.4th 748 (10th Cir. 2024), but *Leachco* was wrongly decided and is not applicable here. *Leachco* does not analyze or even acknowledge the harm alleged here—the harm inherent in being made to participate in an unconstitutional proceeding. Moreover, *Leachco* applied *Collins* even when the claimant does not seek to void agency action. 103 F.4th at 759. This Court and the district court erred by relying upon *Leachco* because unlike the issue there, the underlying issue here "is about subjection to an

illegitimate proceeding, led by an illegitimate decisionmaker." Even though the agency's order could be vacated after the proceeding, a "separation-of-powers claim" challenging unconstitutional removal protections "is not about that order" but about avoiding "an illegitimate proceeding." See *Space Exploration*, 2024 WL 3512082, at *4 (citing *Axon*, 598 U.S. at 191).

Lastly, this Court concluded that "[b]ecause *Axon* did not overrule *Collins*– or, by extension, *Calcutt*–we are bound by our prior ruling. *See Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (citation omitted) (noting that a prior decision by another panel of this court remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this [c]ourt sitting en banc overrules the prior decision)." (Doc. 28-1, Order 5.) Yet, this Court's ruling in *Salmi* actually provides the basis to issue injunctive relief here. The precedent of this Court, as stated in *Salmi* and reiterated in this Court's decision denying YAPP's emergency motion, holds that "[t]he prior decision [of another panel] remains controlling authority *unless* an inconsistent decision of the United States Supreme Court requires modification of the decision." *Id*. (emphasis added). As noted multiple times throughout, the Supreme Court's decision in *Axon* is inconsistent with this Court's decision in *Calcutt* and this Court's application of *Collins* through *Calcutt* is inconsistent with *Axon* as well. Therefore, this Court must now apply *Axon*, and

YAPP submits that a proper application of *Axon* should result in the granting of injunctive relief and a finding of a likelihood of success on the merits.

### D. The NLRB's administrative adjudication of private rights and legal relief violates the Seventh Amendment.

The NLRB is statutorily limited to providing only equitable and public relief to aggrieved parties, but the NLRB recently authorized its Regional Directors to seek legal and "private relief," which forms of relief constitutionally must be adjudicated by a jury. *See Thryv, Inc.*, 372 NLRB No. 22 at *13-14 (Dec. 13, 2022), *enf. denied in part and vacated in part*, *Thryv, Inc. v. NLRB*, 102 F.4th 727 (5th Cir. 2024).

The Seventh Amendment protects the right to trial by jury. Specifically, it provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. Suits "at common law" include all actions akin to those brought at common law as those actions were understood at the time of the Seventh Amendment's adoption. *Jarkesy*, 34 F.4th at 452 (citing *Tull v. United States*, 481 U.S. 412, 417 (1987)). "The term can include suits brought under a statute as long as the suit seeks common-law-like legal remedies." *Id*. These cases seeking legal relief "must be tried under the auspices of an Article III Court." *Granfinanciera, S.A. v. Nordberry*, 492 U.S. 33, 41 (1989). In

other words, YAPP is entitled to a jury trial if its adversary seeks legal relief against it. "Compensatory damages," or "monetary relief for all losses . . . sustained as a result of the alleged breach of . . . duties" are "the classic form of legal relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (emphasis omitted).

The NLRA only provides for public and equitable relief. The NLRA authorizes the Board to remedy unfair labor practices through an "order requiring [the] person to cease and desist from such unfair labor practice, and to take . . . affirmative action including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c) ("Section 10(c)"). For nearly 100 years, the Supreme Court has permitted only reinstatement and backpay as available remedies under Section 10(c), and for that same period, those remedies have been the remedies sought by the NLRB's Regional Directors in unfair labor practice proceedings involving alleged wrongful termination. The Supreme Court reasoned, "because claims seeking statutory remedies for violations of the Act were 'statutory proceedings' that were 'unknown to the common law,' they were not 'suits at common law' within the meaning of the Seventh Amendment." C. Nelson, *Adjudication in the Political Branches*, 107 Colum. L. Rev. 559, 569 (2007) (quoting *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937)). Therefore, the NLRB could continue acting as a factfinder as to claims for equitable monetary relief because the NLRA itself permitted this relief. However, the holding in *Jones & Laughlin Steel Corp.*, which

the district court incorrectly relied upon, did not consider (much less approve) consequential damages being sought here against YAPP. The Supreme Court explained, "Reinstatement of the employee and payment for time lost are requirements imposed for violation of the statute and are remedies appropriate to its enforcement." 301 U.S. at 48-49.

The Board and the remedies it now seeks to obtain recently changed. *See Thryv, Inc.*, 372 NLRB No. 22 at *13-14.[8] In the administrative proceeding brought against YAPP, the NLRB seeks consequential damages beyond what is authorized by statute and contrary to the constitutional protection of the jury-trial right. Section 10(c) authorizes only equitable relief, which for decades has been understood as reinstatement and backpay. The NLRB here now seeks legal relief in the form of

---

[8] The NLRB's September 18, 2024, decision in *Airgas USA, LLC*, 373 NLRB No. 102, reaffirmed that, under *Thryv, Inc.*, 372 NLRB No. 22 (2022), the NLRB will continue seeking and awarding monetary relief for all "direct or foreseeable pecuniary harms" from unfair labor practices, even though the Fifth Circuit vacated that portion of the remedial order. *See Thryv, Inc., v. NLRB*, 102 F.4th 727 (5th Cir. 2024). The NLRB reiterated that "in all cases in which the Board's standard remedy includes an order for make-whole relief," *i.e.*, any affirmative remedy to mitigate the effects of unfair labor practices, "the Board will continue to expressly order that 'the respondent compensate affected employees for all direct or foreseeable pecuniary harms suffered as a result of the respondent's unfair labor practice,'" and "[c]ompensation for these harms shall be calculated separately from taxable net backpay." *Airgas*, slip op. at 1 n.2 (quoting *Thryv*, slip op. at 13). In this manner, despite the Fifth Circuit's ruling otherwise, the NLRB will continue to pursue and order this legal relief, calling it equitable, when it awards reinstatement, backpay, or similar relief.

compensatory or consequential damages. The NLRB's action in seeking consequential or "compensatory" damages violates the Seventh Amendment.

According to the Board, the consequential damages it permits may include "interest and late fees on credit cards;" "credit card debt;" "early withdrawals from [a] retirement account;" compensation for the loss of a "car or [] home," if the "discriminatee" "is unable to make loan or mortgage payments;" "increased transportation or childcare costs;" or "out-of-pocket medical expenses." *Id*. at *9. In an attempt to distance itself from the word "consequential" and avoid finding itself in a battle between public and private rights, the Board explained:

> [W]e stress today that the Board is not instituting a policy or practice of awarding consequential damages, a legal term of art more suited for the common law of torts and contracts. Instead, we ground our decision in the make-whole principles of Section 10(c) of the Act . . . and our affirmative duty to rectify the harms caused by a respondent's unfair labor practice by attempting to restore the employee to the situation they would have been in but for that unlawful conduct. [*Id.*]

Read differently, the Board is attempting to authorize seeking legal relief by calling it equitable relief. However, as the Supreme Court stated, "[l]iability of one individual to another under the law" is a matter "of private right." *Stern v. Marshall*, 564 U.S. 462, 489 (2011). Unlike the lower court here who ruled in error when it found that the Board was seeking equitable relief, the Fifth Circuit Court of Appeals saw through the Board's attempt, referring to remedies requiring "losses incurred as

a direct or foreseeable result of" the alleged unlawful action as "novel, consequential-damages-like labor law remed[ies]." *See Thryv Inc., v. NLRB*, 102 F.4th 727, 7376 (5th Cir. 2024).[9] However, in its decision, the Fifth Circuit did not discuss whether the NLRB could continue to seek these novel consequential damages. Therefore, the compensatory damages plague continues to unconstitutionally threaten YAPP.[10]

Last term, the Supreme Court signaled agreement with YAPP's position here. On June 27, 2024, the Supreme Court held in *SEC v. Jarkesy*, "it is well established that common law claims must be heard by a jury." *Sec. & Exch. Comm'n v. Jarkesy*, 144 S. Ct. 2117, 2127 (2024). Moreover, "[o]nce such a suit 'is brought within the

---

[9] Consistent with the Fifth Circuit's ruling, Member Kaplan's *Airgas* dissent highlights that, *Thryv* is indeed "novel." *Airgas*, slip op. at 19 n.17. As Member Kaplan observes, the NLRB had "never before ordered that remedy," and the NLRB's own "processing of [Thryv], which issued as a full-Board decision—the only vehicle for changing Board law other than rule-making…—and included more than five full pages explaining why the Board had the authority to order that specific remedy for the first time," underscores the novelty. *Airgas*, slip op. at 19 & n.17.

[10] Similarly, the Supreme Court has held that Title VII "focuses on legal injuries of an economic character" and the "remedy, correspondingly, consists of restoring victims, through backpay awards and injunctive relief, to the wage and employment positions they would have occupied absent the unlawful discrimination." *United States v. Burke*, 504 U.S. 229, 239 (1992) (internal citation omitted). In *Burke*, the Supreme Court further held, "nothing in this remedial scheme purports to recompense a Title VII plaintiff for any of the other traditional harms associated with personal injury, such as . . .other consequential damages (e.g., a ruined credit rating)."

bounds of federal jurisdiction,' an Article III court must decide it with a jury if the Seventh Amendment applies." *Id*. at 2131 (quoting *Stern*, 564 U.S. at 484).

In its original complaint against YAPP in the underlying administrative proceeding, the General Counsel explicitly sought to recover against YAPP any "consequential damages suffered, including direct and foreseeable pecuniary harm suffered" by former employee Dowling; the very same damages the Board attempted to argue it was not authorizing in *Thryv*. Tellingly, upon issuance of the consolidated amended complaint, the General Counsel seeks the same remedies but called by a different name: "Make whole Jesse Dowling . . . by payment of backpay," including "reasonable search-for-work and interim employment expense" as well as any adverse tax consequences; and "[M]ake whole those employees who suffered financial loss including direct or foreseeable pecuniary harms suffered, plus interest computed in accordance with Board policy due to the discipline imposed related to the rules." These damages are consequential damages, regardless of the Orwellian manner in which the General Counsel rephrases them. The Region continues to pursue consequential damages against employers, including YAPP, in violation of the Seventh Amendment.[11] YAPP will suffer irreparable harm if it continues to have

_____

[11] *Airgas* clarifies the effect on other cases of vacating a *Thryv* remedy. Under the Board's non-acquiescence policy, even when a Court of Appeals "specifically reject[s] the Board's rationale," the Board "regards an adverse court decision as only the law of that particular case." *Id.* (cleaned up). Regardless of this Court's decision,

to defend against impermissible consequential damages in violation of YAPP's constitutional right to trial by jury.

The district court "question[ed]" whether it had jurisdiction to address YAPP's Seventh Amendment Claim. Although the district court did not rule on that basis, YAPP will address this argument. Just as *Axon* establishes that district courts have jurisdiction to hear constitutional challenges to administrative agencies' structure, YAPP submits that it provides jurisdiction to hear YAPP's Seventh Amendment challenge. *Axon Enterp.*, 598 U.S. at 180. As in *Axon*, the three factors recognized in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) are met here.

First, preclusion of this Court's jurisdiction would foreclose all meaningful judicial review because YAPP is entitled to have its Seventh Amendment right to a trial by jury claim to be heard *before* being subjected to an illegitimate decision-maker. *See Wagafe v. Biden*, 2024 WL 2274349, at *5 (W.D. Wash. May 20, 2024) (availability of after-the-fact judicial review of agency decisions does not, without more, defeat first *Thunder Basin* factor). "The right to trial by jury is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right has always been and should be scrutinized with the

_____

the NLRB's position is that it will continue awarding *Thryv* "[c]ompensation" categorically in other cases. *Id*.

utmost care." *Jarkesy*, 144 S. Ct. at 2128 (quoting *Dimick v. Scheidt*, 293 U.S. 474, 486 (1935)). The question is not whether the damages will be ordered, the question is who should decide what damages the charging party should receive. *See Dimick*, 293 U.S. at 486.

The second *Thunder Basin* factor is present because YAPP's claim is wholly collateral to the NLRB's proceedings. YAPP is challenging the power of Defendants "to proceed at all" with the underlying administrative hearing not only because of the removability issue but also because YAPP has been offered no jury trial right or constitutionally required Article III decision-maker. *Axon*, 598 U.S. at 192.

Third and finally, ordering consequential remedies is outside the agency's expertise, particularly considering the Supreme Court already mandated that juries must decide questions of legal relief. *Id.* at 2132. Defendants know "nothing special about the [Seventh Amendment]." *Id.* at 194. Indeed, the Supreme Court noted in *Axon*, "agency adjudications are generally ill suited to address structural constitutional challenges." *Axon*, 598 U.S. at 195 (quoting *Carr v. Saul*, 593 U.S. 83, 92 (2021)).

To find that YAPP is being subject to an unconstitutional proceeding in violation of the Seventh Amendment, but yet determine that the Court has no jurisdiction to remedy such harm would not only run afoul of the reasoning in *Axon* it would also allow for continued abuse with no meaningful remedy. The NLRB

could seek such damages, contrary to Seventh Amendment guarantees, and if they prevailed, merely drop such claims after the proceedings to thwart meaningful relief but allow for continued threats of unconstitutional proceedings. The NLRB's continuing to seek such remedies, despite *Thryv*, informs this real possibility.

In addition to the errors noted above, the district court also improperly found that the relief sought by the NLRB is protected by the public-rights exception. Assigning judicial power to executive-branch adjudicators violates the separation of powers and undermines "the integrity of judicial decisionmaking." *Stern*, 564 U.S. at 484. As an exception, agencies can adjudicate so-called "public rights"—"matters which arise between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1373 (2018) (cleaned up). But private rights, like "wholly private tort, contract, and property cases," must be decided by "Article III judges in Article III courts." *Stern*, 564 U.S. at 484, 490 (cleaned up). In a similar vein, as noted above, the Seventh Amendment guarantees jury trials "[i]n Suits at common law." U.S. Const. amend. VII. Thus, cases that involve private rights "must be tried under the auspices of an Article III court" with the "right to a jury trial whenever the cause of action is legal in nature." *Granfinanciera*, 492 U.S. at 41.

The NLRB's interpretation would violate these constitutional guarantees by arrogating to the agency the power to impose compensatory damages—"the classic form of legal relief." *See Mertens*, 508 U.S. at 255 (emphasis omitted). Such damages intrude into tort and contract claims—classic private rights that courts must adjudicate. *See Stern*, 564 U.S. at 490. Tort law's basic function is to "compensate a plaintiff for the injury caused by the defendant's wrongful breach." *Curtis v. Loether*, 415 U.S. 189, 195 (1974). "[I]n suits for breach of contract" too, "compensatory damages" are the "traditionally available" remedy. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 220-21 (2022) (citation omitted).

By seeking to "restor[e]" employees "to the situation they would have inhabited but for [an employer's] unfair labor practice," *Thryv*, 2022 WL 17974951, at *15, the Board intrudes into private-rights adjudications. Indeed, since 1940 the Supreme Court has understood that Board proceedings are "not for the adjudication of private rights" based on the "narrowly restricted" nature of proceedings that have as their "immediate object" the prevention of unfair labor practices, not remedying individual employees' harms. *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 362-63 (1940). The Board's assertion of authority to "ensure[] affected employees are made whole for the consequences of [an employer's] unlawful conduct" strays beyond that mandate. *See Thryv*, 2022 WL 17974951, at *9.

In *Thryv*, the Board recognized that "consequential damages"—a type of compensatory damages—are "legal damages" "more suited for the common law of torts and contracts." *Id*. at *13-14. Yet the Board, as well as did the district court, inexplicably disclaimed "Seventh Amendment concerns" for other compensatory damages, citing *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937). *Thryv*, 2022 WL 17974951, at *16. But *Jones & Laughlin* rejected a Seventh Amendment challenge to a Board order imposing reinstatement with backpay, not damages. 301 U.S. at 48. As the Supreme Court explained, the monetary relief there (backpay) was "incident to equitable relief" (reinstatement). *Id*. And that makes sense because those two remedies traditionally go hand in hand. *Curtis*, 415 U.S. at 197. By contrast, here, the Board seeks to hold YAPP liable for all direct or foreseeable pecuniary harms, even harms not traditionally considered incident to equitable relief. As the *Thryv* dissenters observed, the Board has "obviously run[] headlong into the Seventh Amendment's guarantee of the right to have such claims tried before a jury." 2022 WL 17974951, at *27 (Kaplan & Ring, JJ., dissenting in part).

### E. NLRB Members' wielding of executive, judicial, and legislative functions violates the separation of powers and due process.

The NLRB is an executive agency tasked with making factual determinations in administrative proceedings. This executive power should not and does not extend

to adjudication. However, the Board has taken upon itself the right to adjudicate private rights, a power intended for the judiciary rather than the executive.

Under the Constitution, the judicial power belongs to Article III courts and cannot be shared with legislature or executive. *See Stern*, 564 U.S. at 482. Under "the basic concept of the separation of powers . . . that flows from the scheme of a tripartite government adopted in the Constitution, the judicial Power of the United States . . . can no more be shared with another branch than the Chief Executive...can share with the Judiciary the veto power." *Id.* at 483 (citing *United States v. Nixon*, 418 U.S. 683, 704 (1974) (internal citations omitted)). However, "[t]he National Labor Relations Board, uniquely among major federal administrative agencies, has chosen to promulgate virtually all the legal rules in its field through adjudication rather than rulemaking." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998).

There is no timelier example of the NLRB's breach of the Constitution's separation of powers than its actions at issue in *Thryv*. There, the Board—an executive agency—explicitly determined that it would adjudicate private rights—a judicial function. As explained above, Section 10(c) expressly authorizes the Board to issue an "order requiring [the] person to cease and desist from such unfair labor practice, and to take...affirmative action including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c). Based on the "including" language here,

the Board in *Thryv* determined that consequential remedies—remedies determined and calculated by the Board's compliance office— may be issued without a jury trial. 372 NLRB No. 22 at 9. The Board here took statutory interpretation too far and created an "unconstitutional delegation." *Nat'l Fed. of Indep. Bus. v. OSHA*, 595 U.S. 109, 126 (2022) (Gorsuch, J., concurring). In doing so, the Board also exhibited its quasi-legislative conduct when it articulated a new interpretation of Section 10(c).

As Justice Thomas explained in his concurrence in *Axon Enterprises, Inc.*, "[i]t may violate the separation of powers by placing adjudicatory authority over core private rights—a judicial rather than executive power—within the authority of Article II agencies." *Axon*, 598 U.S. at 202 (Thomas, J., concurring) (quoting *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 171 (2015) (Thomas, J., dissenting)).

Adding insult to injury, the Board in *Thryv* also expressly permitted "foreseeable" pecuniary harms and not just those readily calculable. In her complaint against YAPP, the General Counsel seeks "foreseeable" damages against YAPP. As Board Members Kaplan and Ring stated in their dissent in part:

> On its face, this standard would permit recovery for any losses indirectly caused by an unfair labor practice, regardless of how long the chain of causation may stretch from unfair labor practice to loss, whenever the loss is found to be foreseeable. In our view, this standard opens the door to awards of speculative damages that go beyond the Board's remedial authority. [*Thryv Inc.*, 372 NLRB No. 22 at 16 (Ring and Kaplan dissenting)].

Members Ring and Kaplan even acknowledged, "[w]e further observe that the Board faces potential Seventh Amendment issues if it strays into areas more akin to tort remedies. Those concerns also militate against the majority's 'direct or foreseeable' standard." *Id*. By creating this new remedy, the Board essentially created its own rule and its own method of determining that remedy; the Board is exercising all three powers at once.

As discussed above, the General Counsel's change in language characterizing the damages sought, but not changing the actual damages sought, shows this overreach. The damages sought here are consequential damages, no matter how the General Counsel attempts to rephrase them, and those damages remain outside the scope of the Board's authority.

Even if this Court were to agree that the word "including" in the statute permits make whole remedies beyond back pay and reinstatement, the "foreseeable" damages fall outside of that permitted interpretation. Foreseeable damages are a core element of tort law. *See Palsgraf v. Long Island Railroad*, 248 N.Y. 339, 162 N.E. 99 (1928). The Board's dictation of foreseeable damages as equitable relief under Section 10(c) is not only incorrect, but a direct abuse of its executive power. The statute authorizes make whole remedies to restore the aggrieved party to the status quo. The statute does not authorize the NLRB to put the aggrieved party in a better position than he would had he not suffered an adverse employment action; a position

created by "foreseeable" pecuniary damages. The Board has gone beyond its executive function and outright created its own rule to adjudicate in its own forum.

The Board's actions here violate the separation of powers, violates YAPP's rights of due process to a fair hearing, and will cause irreparable harm.

## II. YAPP will suffer irreparable harm without a preliminary injunction.

YAPP will suffer immediate and irreparable harm absent injunctive relief. The Supreme Court recently confirmed that irreparable harm is inflicted on a party that is subject to a proceeding before a decisionmaker who is unconstitutionally insulated from presidential oversight in *Axon*.

In *Axon*, the plaintiffs sought to enjoin the FTC and Securities and Exchange Commission ("SEC") enforcement proceedings by challenging the constitutionality of tenure protection for the FTC's and SEC's ALJs. *Axon Enterp.*, 598 U.S. at 179. In doing so, the Court recognized that the "harm" of "'being subjected' to 'unconstitutional agency authority'—'a proceeding by an unaccountable ALJ'" is a "here-and-now injury." *Id*. at 191. This type of claim is a "here and now injury" because "it is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Id*. Were the "illegitimate proceeding before an illegitimate decisionmaker" to go forward, "structural constitutional claims would come too late to be meaningful." *Id*. Should the NLRB proceeding go forward,

YAPP will lose its right not to undergo an unconstitutional proceeding, an "injury . . . impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enterp.*, 598 U.S. at 175.

When alleging a "constitutional injury from the threat of being subject[ed] to a regulatory scheme and governmental action lacking Article II oversight," the Court should also look to *Free Enterprise Fund* to evaluate YAPP's claims. 561 U.S. at 513. There, the Supreme Court explained, "We normally do not require plaintiffs to bet the farm . . . by taking the violative action before testing the validity of the law, and we do not consider this a meaningful avenue of relief." *Id.* at 489-91 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) and *Thunder Basin*, 510 U.S. at 212) (cleaned up)). In other words, YAPP does not have to undergo the unconstitutional proceeding and receive an unfavorable decision before it contests the agency's ability to issue that decision in a constitutional manner. Under *Free Enterprise Fund*, YAPP is "entitled to declaratory relief sufficient to ensure that the [administrative] requirements . . . to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Id*. at 513.

Before the Supreme Court's decision in *Axon*, several courts, including this Court, struggled with the requirement that a party challenging an unconstitutional removal process must show that its injury results from the unconstitutional removal

process. This Court's pre-*Axon* ruling in *Calcutt* is informative of the challenge courts faced in considering such constitutional challenges after an administrative decision had been rendered. This Court in *Calcutt* held that an adverse administrative ruling by itself does not constitute the requisite harm from the appointment process.

The district court ruled that YAPP failed to show how the agency action about which it complains specifically impacted YAPP. YAPP submits that it has made such showing in accordance with the here-and-now injury identified in *Axon,* and importantly, under *Axon*, that injury and impact is continuing. Yet, according to the NLRB's arguments and the district court's rationale, the showing of an unconstitutional here-and-now injury is sufficient to show that the district court has jurisdiction but is not sufficient to show irreparable harm, relying on their reading of *Calcutt*. Any such reading of *Calcutt*, however, runs contrary to *Axon* and to other applicable precedent. *See also, infra*, pp. 29-34. A "successful showing that a constitutional right is being threatened or impaired mandates a finding of the second factor, irreparable injury." *Yaldo v. Wayne State Univ.*, 2015 WL 6082098, at *3 (E.D. Mich. Oct. 15, 2015) (citing *Bonnell*, 241 F.3d at 808; *Elrod*, 427 U.S. at 373) (internal citations omitted)); *see also ACLU v. McCreary Cnty.*, 354 F.3d 438, 445 (6th Cir. 2003) ("[I]f it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."). A plaintiff can show an

irreparable injury sufficient to satisfy the preliminary-injunction standard if "an alleged deprivation of a constitutional right is involved." *Doe v. Ohio State Univ.*, 136 F. Supp. 3d 854, 871 (S.D. Ohio 2016) (quoting Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.), and collecting cases).

The Supreme Court in *Axon* made clear that a challenge to an agency's "power to proceed at all" differs from a challenge to "action[s] [already] taken in the agency proceedings." *Axon*, 598 U.S. at 192. As the Supreme Court ruled, a party's being subjected "to an illegitimate proceeding, led by an illegitimate decisionmaker," is a constitutional injury that "cannot be undone" after the fact. *Id*. at 191; *see also Cochran*, 20 F.4th at 212-13, *aff'd and remanded sub nom.*, *Axon*, 598 U.S. 175 (if removal claim is "meritorious," plaintiff should not be "forc[ed] to litigate before an ALJ who is unconstitutionally insulated from presidential control"); *Alpine Sec. Corp. v. FINRA*, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (Walker, J., concurring) (finding an injunction of an administrative adjudication pending appeal appropriate based on *Axon* because the plaintiff was likely to prevail on claim that officers were unlawfully "shielded from removal"). Critically, the Supreme Court in *Axon* held that a court of appeals could of course vacate an order, "[b]ut Axon's separation-of-powers claim is not about that order; indeed, Axon would have the same claim had it *won* before the agency." *Id*. at 191 (emphasis in original). Accordingly, each removal-protection problem poses its own irreparable harm.

Deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373; Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed. 2023) (where "deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary"). The loss of constitutional freedoms "for even minimal periods of time, unquestionably constitutes irreparable injury" justifying the grant of a preliminary injunction. *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (citing *Elrod*, 427 U.S. at 373). Where a constitutional right is "either threatened or in fact being impaired at the time relief was sought," preliminary injunctive relief is appropriate. *Elrod*, 427 U.S. at 374. Indeed, the NLRB effectively admitted that preliminary injunctive relief is appropriate where a constitutional right is threatened or being impaired given that authority the NLRB relied on in the Fifth Circuit recognized that injunctive relief is appropriate when "'required to preserve the status quo' while litigation is pending" and when the movant is suffering "harms beyond ones that can be cured after final judgment." *See* NLRB Br., *Energy Transfer, LP, et al., v. Nat'l Labor Rels. Bd.*, Case No. 24-40533, at Dkt. No. 62 (5th Cir. Nov. 5, 2024) (*citing Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205 (3d Cir. 2024) (citation omitted)). *Axon* establishes that the type of here-and-now injury being suffered cannot be cured after final judgment.

The ongoing unconstitutional hearing is harm enough to show irreparable injury. YAPP is not required to await some final judgment from the unconstitutional hearing. *See Axon*, 598 U.S. at 175 (holding that undergoing an unconstitutional proceeding is an "injury . . . impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful"); *see Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[P]rior to final judgment there is no established declaratory remedy comparable to a preliminary injunction; unless preliminary relief is available upon a proper showing, plaintiffs in some situations may suffer unnecessary and substantial irreparable harm."). In fact, the only avenue YAPP has to avoid an unconstitutional proceeding is to obtain a temporary restraining order and/or a preliminary injunction. YAPP will suffer irreparable harm if it is required to proceed to an administrative hearing or to continue in a proceeding before an unconstitutionally insulated ALJ, and later, unconstitutionally insulated Board Members. *See Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (The "denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights.").

In addition to the foregoing, the deprivation of the right to a jury trial,[12] which was not before this Court with respect to the emergency appeal, provides further basis for an injunction. In conclusion, this deprivation along with having to undergo a proceeding with an unconstitutionally insulated ALJ and Board violate YAPP's constitutional rights, causing it irreparable harm.

## III. The balance of equities tips in YAPP's favor and an injunction is in the public interest.

Measuring the harm against Defendants, the balance of equities tips strongly in YAPP's favor. Where "the Government is the opposing party," the "harm to the opposing party and the public interest" factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). YAPP is likely to succeed on the merits of it claims. Without an injunction, YAPP is subjected to a hearing with ALJs and Board Members who are insulated from Presidential removal, and a hearing in front of an agency violating the separation of powers. Neither of these constitutional violations can be remedied by monetary damages. *See Overstreet*, 305 F.3d at 578 ("A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by

---

[12] As the district court noted, but chose not impose, an injunction preventing the Board from seeking consequential damages and the remedies cited above would also cure the forthcoming harm against YAPP (as well as prevent the Board from continuing to violate the Constitution and the constitutional rights of other employers as well).

monetary damages."); *see also Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987) (finding irreparable harm based on a violation of constitutional rights.).  Because the General Counsel also seeks consequential damages "direct or foreseeable," YAPP may be deprived of its opportunity to present a case regarding appropriate damages to a jury of its peers.

Given its likelihood of success on the merits, an injunction would not harm Defendants because the government suffers no cognizable harm from stopping "the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also, e.g.*, *BST Holdings,* 17 F.4th at 618 ("Any interest [the NLRB] may claim in enforcing an unlawful (and likely unconstitutional) proceeding is illegitimate." (internal quotations omitted)).  "The Sixth Circuit has found that "it is always in the public interest to prevent violation of a party's constitutional rights."  *Mattia v. City of Ctr. Line, Mich.*, 2017 WL 6422069, at *10 (E.D. Mich. Dec. 18, 2017) (citing *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville and Davidson Cnty*., 274 F.3d 377, 400 (6th Cir. 2001)). It is not in the public interest to have an increasingly expansive Executive Branch that nonetheless "slip[s] from the Executive's control, and thus from that of the people," *Free Enterprise Fund*, 561 U.S. at 499, or that infringes the constitutional imperative that "the judiciary remain[] truly distinct from . . . the executive," *Stern*,

564 U.S. at 483 (alteration in original) (quoting THE FEDERALIST No. 78, at 466 (Alexander Hamilton) (C. Rossiter ed. 1961)).

Even if the Court orders the entry of a preliminary injunction here but ultimately the NLRB's proceedings are deemed constitutional, Defendants could move forward with, or continue, the unfair labor practice proceedings at that time. Time is hardly of the essence. Region 7 waited nearly 10 months to issue the initial complaint with respect to the first underlying unfair labor practice charge, and then over six months to issue a complaint with respect to the second underlying unfair labor practice charge, resulting in nearly 16 months from start of their investigation to issuance of the consolidated complaint.

Additionally, should this matter ultimately be resolved against YAPP, any alleged harm to Dowling from this delay can be compensated by monetary damages. Furthermore, the NLRB maintains considerable powers to correct wrongdoings under the NLRA. Any alleged harms from a delay in the underlying proceedings, albeit likely speculative at best, can eventually be righted by the order of an ALJ or the NLRB. YAPP's injury cannot. As the *Axon* Court acknowledges, should the proceeding take place, there is no remedy for YAPP.

The requested injunction would merely require the NLRB to stay the unfair labor practice proceedings while this Court makes its determination. While YAPP

may suffer economic losses and constitutional deprivation, Defendants do not stand to lose anything nearly so compelling.

## CONCLUSION AND REQUESTED RELIEF

The district court abused its discretion by denying YAPP's motion for a preliminary injunction. The courts stand as the final bulwark between the general public and unconstitutional governmental conduct. The decision below abdicates that responsibility, forcing YAPP to suffer through unconstitutional proceedings. The Supreme Court's recent decisions dictate the contrary results. Accordingly, the Court should reverse the district court's decision and remand for the immediate entry of a preliminary injunction against the NLRB proceedings.

Dated: December 20, 2024

*s/ Matthew T. Nelson*
Matthew T. Nelson
Amanda M. Fielder
Warner Norcross + Judd LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
Telephone: (616) 752-2000
Email: mnelson@wnj.com

Timothy K. Garrett
Robert W. Horton
Hunter K. Yoches
Bass Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6200
Email: tgarrett@bassberry.com

Attorneys for Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation pursuant to Fed. R. App. P. 32(a)(7)(B). The foregoing brief contains 12,967 words of Times New Roman 14-point proportional type. The word processing software used to prepare this brief was Microsoft Word 2016.

Dated: December 20, 2024

*s/ Matthew T. Nelson*
Matthew T. Nelson
Amanda M. Fielder
Warner Norcross + Judd LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
Telephone: (616) 752-2000
E-mail: mnelson@wnj.com

Timothy K. Garrett
Robert W. Horton
Hunter K. Yoches
Bass Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6200
Email: tgarrett@bassberry.com

Attorneys for *Plaintiff-Appellant*

**CERTIFICATE OF SERVICE**

This certifies that Appellant's Brief was served December 20, 2024, by electronic mail using the Sixth Circuit's Electronic Case Filing system on all parties of record.

*s/ Matthew T. Nelson*
Matthew T. Nelson
Amanda M. Fielder
R. Michael Azzi
Warner Norcross + Judd LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
Telephone: (616) 752-2000
E-mail: mnelson@wnj.com

Attorneys for *Plaintiff-Appellant*

# DESIGNATION OF RECORD

| Doc. Entry No. | Date Entered | Page ID Range | Description of Doc. |
|---|---|---|---|
| R.1 | 08/19/24 | 1-28 | Complaint |
| R.4 | 08/19/24 | 37-112 | Motion for Preliminary Injunction |
| R.4-1 | 08/19/24 | 83 | Exhibit to Motion for Preliminary Injunction - Pratt Declaration |
| R.4-2 | 08/19/24 | 86-91 | Exhibit to Motion for Preliminary Injunction - Garrett Declaration |
| R.27-4 | 08/30/24 | 301-302 | Exhibit to Reply to Response to Motion for Preliminary Injunction - Garrett Declaration |
| R.29 | 09/09/24 | 305-38 | Opinion and Order Denying Plaintiff's Motion for Preliminary Injunction |
| R.30 | 09/09/24 | 339 | Notice of Appeal |
| R.34 | 09/09/24 | 366-367 | Order Granting Plaintiff's Emergency Motion to Stay Pending Appeal |
| R.37 | 09/13/24 | 406 | Order Granting Defendants' Motion for Reconsideration and Denying YAPP's Motion to Stay Pending appeal |