No. 24-1754

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

—————————————

YAPP USA AUTOMOTIVE SYSTEMS, INC.,

*Plaintiff-Appellant,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, et al.,

*Defendants-Appellees.*

—————————————

*On appeal from the United States District Court
for the Eastern District of Michigan – Case No. 2:24-cv-12173*

—————————————

**BRIEF FOR THE STATE OF TENNESSEE AND 19 OTHER STATES
AS *AMICI CURIAE* IN SUPPORT OF APPELLANT**

—————————————

JONATHAN SKRMETTI
   *Attorney General of Tennessee*
OFFICE OF THE TENNESSEE
ATTORNEY GENERAL
 P.O. Box 20207
 Nashville, Tennessee 37202
 (615) 741-3491
Jenna.Adamson@ag.tn.gov

J. MATTHEW RICE
   *Solicitor General*
WHITNEY D. HERMANDORFER
   *Director of Strategic Litigation*
VIRGINIA N. ADAMSON
   *Strategic Litigation Counsel and
   Assistant Solicitor General*

*Counsel for* Amicus Curiae *State of Tennessee*
[additional counsel listed in signature block]

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTERESTS OF *AMICI CURIAE* ............................................................................ 1

INTRODUCTION ................................................................................................ 3

SUMMARY OF ARGUMENT .............................................................................. 5

ARGUMENT ....................................................................................................... 6

   I. *Collins* Does Not Deny YAPP a Likelihood of Success on the Merits. ........ 6

     A. *Collins* does not bar courts from issuing prospective relief from agency proceedings before an unconstitutional authority. .................................... 7

     B. *Calcutt* mistakenly extended *Collins* to a prospective relief case—an error the district court and motions panel compounded. ........................ 12

   II. YAPP Suffers Irreparable Harm from Ongoing Regulation by an Unconstitutionally Structured Agency. ........................................................ 19

CONCLUSION ..................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aunt Bertha v. NLRB*,
   No. 4:24-cv-00798-P, 2024 WL 4202383 (N.D. Tex. Sept. 16, 2024) .................8

*Axon Enter., Inc. v. FTC,*
   598 U.S. 175 (2023) ................................................................................. *passim*

*Axon Enter., Inc. v. FTC,*
   20-15662 (9th Cir. Oct. 2, 2020), ......................................................... 9

*Bhatti v. FHFA*,
   15 F.4th 848 (8th Cir. 2021) ...............................................................10

*Bond v. United States*,
   564 U.S. 211 (2011).......................................................................... 1, 21

*Bowsher v. Synar*,
   478 U.S. 714 (1986) .......................................................................... 16, 20

*Calcutt v. FDIC*,
   37 F.4th 293 (6th Cir. 2022) ......................................................... *passim*

*Calcutt v. FDIC*,
   598 U.S. 623 (2023).............................................................................19

*Cochran v. SEC*,
   20 F.4th 194 (5th Cir. 2021) ......................................................... *passim*

*Collins v. Yellen*,
   594 U.S. 220 (2021)......................................................................... *passim*

*Connection Distrib. Co. v. Reno*,
   154 F.3d 281 (6th Cir. 1998) ...............................................................21

*Elrod v. Burns*,
   427 U.S. 347 (1976)...............................................................................21

*Energy Transfer, LP v. NLRB,*
No. 3:24-cv-198, 2024 WL 3571494 (S.D. Tex. July 29, 2024) ............................8

*Free Enter. Fund v. PCAOB,*
561 U.S. 477 (2010) ...................................................................................................16

*Freed v. Thomas,*
976 F.3d 729 (6th Cir. 2020) ...................................................................................19

*Freytag v. Comm'r,*
501 U.S. 868 (1991) .....................................................................................................3

*Garcia v. San Antonio Metro. Transit Auth.,*
469 U.S. 528 (1985) .................................................................................................1, 2

*Gordon v. Holder,*
721 F.3d 638 (D.C. Cir. 2013) .................................................................................22

*Humphrey's Ex'r v. United States,*
295 U.S. 602 (1935) .....................................................................................................2

*John Doe Co. v. CFPB,*
849 F.3d 1129 (D.C. Cir. 2017) ...............................................................................22

*Leachco, Inc. v. CPSC,*
103 F.4th 748 (10th Cir. 2024) ....................................................................... *passim*

*Lucia v. SEC,*
585 U.S. 237 (2018) ..............................................................................................3, 12

*Ohio v. Becerra,*
87 F.4th 759 (6th Cir. 2023) .....................................................................................20

*Overstreet v. Lexington-Fayette Urb. Cnty. Gov't,*
305 F.3d 566 (6th Cir. 2002) ...................................................................................21

*Sanborn v. Parker,*
629 F.3d 554 (6th Cir. 2010) ...................................................................................18

*Seila Law LLC v. CFPB,*
591 U.S. 197 (2020) ......................................................................................3, 16, 20

*Seminole Tribe of Fla. v. Florida*,
    517 U.S. 44 (1996) .................................................................................18

*Space Expl. Techs. Corp. v. NLRB*,
    No. W-24-cv-00203-ADA, 2024 WL 3512082 (W.D. Tex. July 23, 2024) .........8

*Synar v. United States*,
    626 F. Supp. 1374 (D.D.C. 1986) ..........................................................16

*Thomas More L. Ctr. v. Obama*,
    651 F.3d 529 (6th Cir. 2011) ................................................................1

*United States v. White*,
    920 F.3d 1109 (6th Cir. 2019) ..............................................................18

*VHS Acquisition Subsidiary No. 7 v. NLRB*,
    No. 1:24-cv-02577, 2024 WL 5056358 (D.D.C. Dec. 10, 2024) ............ 11, 17, 19

## Statutes

5 U.S.C. § 1202 ..................................................................................1

5 U.S.C. § 7521 ..................................................................................1

29 U.S.C. § 153 ..................................................................................1

29 U.S.C. § 160 ..................................................................................15

## Regulations

29 C.F.R. § 102.48(a) ...........................................................................15

## Other Authorities

11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed. June 2024) .....................................21

**INTERESTS OF *AMICI CURIAE***

The balance of powers between the States and the Federal Government "preserves the integrity, dignity, and residual sovereignty of the States," allowing States to "function as political entities in their own right." *Bond v. United States*, 564 U.S. 211, 221 (2011). And the "structure of the Federal Government itself," which "gave the States a role" in selecting both the Executive and Legislative branches, "was designed in large part to protect the States from overreaching by Congress." *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 550-51 (1985). The vertical and horizontal separation of powers is also "a critical guarantee of individual liberty." *Thomas More L. Ctr. v. Obama*, 651 F.3d 529, 564 (6th Cir. 2011) (Sutton, J., concurring in part), *abrogated by NFIB v. Sebelius*, 567 U.S. 519 (2012).

Independent agencies, like the National Labor Relations Board, present an especially grave danger to the States and their citizens. As an independent agency, the NLRB is run by officers insulated from presidential removal by one or more layers of restrictions. 29 U.S.C. § 153(a); 5 U.S.C. §§ 1202(d), 7521(a). This is by design. Independent agencies like the NLRB emerged out of a desire to "ditch the Founders' tripartite system and their checks and balances for a 'more efficient separation of politics and administration.'" *Cochran v. SEC*, 20 F.4th 194, 218 (5th Cir. 2021) (Oldham, J., concurring) (quoting Ronald J. Pestritto, *Woodrow Wilson and the Roots of Modern Liberalism* 227 (2005)); *see also id.* at 219-21. As the Supreme

Court remarked of the Federal Trade Commission, Congress "inten[ded] to create a body of experts … which shall be independent of executive authority[.]" *Humphrey's Ex'r v. United States*, 295 U.S. 602, 625 (1935). Left out in the cold? States— which largely lack power to supervise independent agencies through the bicameral lawmaking process. *Cf. Garcia*, 469 U.S. at 550-51. And the people, who lost a key "security … to the[ir] rights." *The Federalist No. 51*, at 351 (James Madison) (Wesleyan University ed. 1961).

Separation-of-powers challenges like this one promote *amici* States' interest in safeguarding their political power and their citizens' liberty. The States thus have an imperative interest in courts' policing unlawful agency structures that empower entities lacking the political accountability our Constitution requires. [1]

---

[1] No party's counsel authored the brief in whole or in part, and no party, party's counsel, or third party—other than amici—contributed money that was intended to fund the preparation or submission of the brief.

**INTRODUCTION**

States fail to defend structural limitations on federal power at their peril. The judiciary, too, has a "strong interest" in creating "incentive[s]" for litigants to challenge separation-of-powers violations that undermine our constitutional order. *Freytag v. Comm'r*, 501 U.S. 868, 879 (1991) (citation omitted); *Lucia v. SEC*, 585 U.S. 237, 251 n.5 (2018) (citation omitted). Yet recent decisions have effectively blocked such challenges when they involve unconstitutional restrictions on the removal of Executive Branch officers. The district court here made that error, mistakenly denying preliminary relief to YAPP despite the threat of imminent constitutional injury.

Blame principally rests with an overreading of *Collins v. Yellen*, 594 U.S. 220 (2021), as requiring that parties concretely show *previous* harm from an unlawful removal restriction—even when an agency's exercise of illegitimate authority is impending or ongoing. *See, e.g.*, *Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023). But as the Supreme Court clarified in *Axon Enterprise, Inc. v. Federal Trade Commission*, being subjected to a proceeding before an unconstitutionally structured agency is a "here-and-now injury" that inflicts redressable harm. *See* 598 U.S. 175, 191 (2023) (quoting *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020)). Waiting to grant relief until a party has suffered such structural harm would largely defeat the point of judicial review. After all, "[a] proceeding that has already happened cannot be undone." *Id.*

The district court sidestepped *Axon* and denied YAPP timely relief from an unconstitutional agency proceeding. The motions panel compounded the error by denying YAPP an injunction pending appeal. Both the district court and the motions panel considered themselves bound by *Calcutt*—a decision that was summarily reversed, is compromised by errors, and is of questionable precedential authority.

But *Calcutt* should not become a get-out-of-Constitution-free card for independent agencies inflicting ongoing harm on parties they regulate. There are good reasons to hold that *Calcutt* no longer binds. And the decision's reasoning does not extend here regardless. *Calcutt* took *Collins*'s narrow holding for parties seeking purely retrospective relief against past agency action and extended it to challengers trying to stop ongoing unconstitutional action in its tracks. But applying *Collins*'s but-for causal requirement to the type of injury YAPP alleges here—subjection to an "illegitimate proceeding, led by an illegitimate decisionmaker," *Axon*, 598 U.S. at 191—would make *Axon* a dead letter by rendering a category of constitutional claims "impossible to remedy." *Id.* This Court should right the ship to ensure YAPP and others can obtain "meaningful" relief. *Id.*

*Calcutt*'s overreading of *Collins* is an obstacle to defending our tripartite, federal system. This Court should clarify that forward-looking constitutional challenges to agency proceedings remain a path for preserving the separation of powers—and that removal restrictions, as in *Axon*, inflict irreparable harm here.

4

## SUMMARY OF ARGUMENT

The district court's reading of *Collins* to deny YAAP's request for injunctive relief erred twice over. *Collins*'s holding involved only retrospective relief from prior agency actions. That case does not foreclose removal-based challenges to ongoing or future agency proceedings that violate the Constitution. And being subjected to such unconstitutional proceedings constitutes here-and-now injury, as *Axon* confirms.

I.     *Collins*'s holding about the showing needed to gain retrospective relief from past agency action does not control YAPP's entitlement to relief from ongoing or future agency harms.

A.     By the time *Collins* reached the Supreme Court, an amendment to the challenged agency action had eliminated the prospect of ongoing injury. And the action could not be entirely undone, the Court said, because an accountable political actor had ratified it. In that context, the Court stated that obtaining retrospective relief required a party to show that the cited constitutional defect caused it compensable harm. But that prejudice discussion did not grant unconstitutionally structured agencies a license to injure parties in perpetuity. And *Axon* confirms as much: It authorizes the very separation-of-power suits the district court's reading of *Collins* would foreclose.

B.     This Court's since-summarily-reversed decision in *Calcutt* should not

5

sustain affirmance. *Calcutt* uncritically extended *Collins*'s retrospective-relief holding to parties seeking prospective relief. Yet, as *Axon* indicates, refusing pre-enforcement relief without a showing that an anticipated injury has already caused harm would defeat meaningful relief. *Calcutt*'s reading of *Collins* also runs counter to other binding precedent approving prospective relief as a remedy for ongoing unconstitutional action. *Axon*'s intervention between *Calcutt* and this appeal further counsels against relying on *Calcutt*, especially since the Supreme Court's holding likely made the *Collins* discussion purely advisory.

II.     YAPP's ongoing regulation by an unconstitutionally structured agency inflicts paradigmatic irreparable harm. In a series of separation-of-powers cases involving removal restrictions, the Supreme Court has confirmed that parties subject to enforcement by unlawful regulators face here-and-now harm entitling them to here-and-now relief. The district court's misreading of *Collins* tainted its irreparable harm analysis. And it produced a result directly at odds with *Axon*'s allowance for injunctive actions to challenge prospective agency proceedings.

## ARGUMENT

### I.     *Collins* Does Not Deny YAPP a Likelihood of Success on the Merits.

The district court and motions panel's *Calcutt*-infected reading of *Collins* should spread no further. Both discounted the legitimacy of YAPP's claimed injury—the harm of being subjected to proceedings before an unconstitutional agency

authority. Yet the Supreme Court recently reaffirmed the validity of just such an injury in *Axon*. Continued reliance on *Calcutt* to allow the NLRB to escape review on the merits of this case would conflict with the Supreme Court's guidance, not to mention sound limitations on *Calcutt*'s precedential power.

### A. *Collins* does not bar courts from issuing prospective relief from agency proceedings before an unconstitutional authority.

*Collins*'s causation discussion addressed a single, narrow issue—the showing required to obtain retrospective relief for compensable harm flowing from final agency action. 594 U.S. at 257. Although the *Collins* plaintiffs originally sought prospective relief, by the time the Court issued its opinion, the challenged agency action was no longer in place. *Id.* at 235, 244, 257. Thus, the "only … remedial question" at issue "concern[ed] retrospective relief." *Id.* at 257; *accord id.* at 276 (Gorsuch, J., concurring in part). The Court also ruled out plaintiffs' entitlement to certain retrospective relief—voiding the underlying action "in its entirety." *Id.* at 257. Such relief would be inappropriate because the officer who "*adopted* the [challenged agency action] was removable at will" and the officers who *implemented* the action were validly appointed. *Id.* Thus, the plaintiffs had "no entitlement to retrospective relief" unless they could show the unconstitutional removal restriction had "inflict[ed] compensable harm." *Id.* at 259. The Court then discussed two non-exclusive examples of the kind of evidence that might satisfy that showing. *Id.*

*Collins* left open several questions that have sown confusion among lower

7

courts. Most prominently, the Court gave no hint about whether plaintiffs would have been entitled to *prospective* relief without satisfying the "compensable harm" showing. Some courts have recognized the distinction drawn here—between prospective claims for relief from ongoing or future agency proceedings and claims to undo completed agency action. In *Cochran v. Securities and Exchange Commission*, for example, the en banc Fifth Circuit held that *Collins* did not affect plaintiff's entitlement to pre-enforcement review because plaintiff did "not seek to 'void' the acts of any SEC official" but sought "an administrative adjudication untainted by separation-of-powers violations." 20 F.4th 194, 210 n.16 (5th Cir. 2021) (en banc), *aff'd sub nom.*, 598 U.S. 175 (2023). And district courts in that Circuit have applied similar reasoning to hold that *Collins* does not apply to prospective relief claims or that "removal-restriction claims that seek relief *before* an insulated actor acts" satisfy *Collins*'s causal-harm requirement because the removal provisions cause the "injury [of] having to participate in a constitutionally defective administrative process." *Energy Transfer, LP v. NLRB*, No. 3:24-cv-198, 2024 WL 3571494, at *4 (S.D. Tex. July 29, 2024); *see also Aunt Bertha v. NLRB*, No. 4:24-cv-00798-P, 2024 WL 4202383, at *2-3 (N.D. Tex. Sept. 16, 2024) (similar); *Space Expl. Techs. Corp. v. NLRB*, No. W-24-cv-00203-ADA, 2024 WL 3512082, at *6 (W.D. Tex. July 23,

2024).[2] Conversely, other courts, like this one, have rejected attempts to distinguish prospective from retrospective relief. *See, e.g.*, *Calcutt*, 37 F.4th at 316; *Leachco, Inc. v. CPSC*, 103 F.4th 748, 757 (10th Cir. 2024), *petition for cert. filed*, No. 24-156 (Aug. 9, 2024).

Enter *Axon*. There, respondents in administrative enforcement actions before two federal agencies claimed that the double for-cause tenure protections for the agency ALJs violated Article II. 598 U.S. at 180. As a result, they argued, the agencies were "unconstitutional in much of their work." *Id.* Like YAPP here, the *Axon* respondents sued in federal district court to stop the allegedly unconstitutional actions against them, *id.*, but unlike in YAAP's case, respondents were granted stays of the proceedings, *see* Order, *Cochran v. SEC*, No. 19-10396 (5th Cir. Sept. 24, 2019), ECF No. 77; Order, *Axon Enter., Inc. v. FTC*, No. 20-15662 (9th Cir. Oct. 2, 2020), ECF No. 40. The agencies ultimately appealed to the Supreme Court, including from the Fifth Circuit's decision in *Cochran*.

*Axon* did not directly answer the prospective-retrospective question left open in *Collins*, but its reasoning clarified the answer. *Axon* considered whether forcing the parties to raise their structural claims before the agencies, rather than collaterally in federal court, would "foreclose all meaningful judicial review." 598 U.S. at 190

---

[2] The NLRB appealed the district courts' orders granting preliminary injunctions in these three cases, and the Fifth Circuit has consolidated the appeals under *Space Exploration Technologies Corporation v. NLRB*, No. 24-50627 (5th Cir.).

(citation omitted). The Court answered yes for two reasons. First, "being subjected" to "unconstitutional agency authority" was "a here-and-now injury." *Id.* at 191 (citation omitted). And second, such an injury would be "*impossible* to remedy once the proceeding [was] over[.]" *Id.* (emphasis added). The Court distinguished that harm from the kind of injury involved in *Collins*. The *Axon* harm was "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker," not the consequences flowing from an illegitimate decisionmaker's final order, as in *Collins*. *Id.* Unlike the *Collins* challengers, the *Axon* respondents would "have the same claim" whether they won or lost before the agency. *Id.*

Read together, *Collins* and *Axon* set distinct remedial rules depending on the nature of the injury alleged and relief pursued. If a party seeks relief from a past agency order, then it must show that the challenged removal restriction, not just the challenged action, "inflict[ed] compensable harm." *Collins*, 594 U.S. at 259; *see, e.g.*, *Bhatti v. FHFA*, 15 F.4th 848, 854 (8th Cir. 2021) (holding parties were entitled to "retrospective relief" if they had suffered "compensable harm" (quoting *Collins*, 594 U.S. at 259)). But if a party seeks prospective relief from agency action that continues to "inflict" redressable "harm," *Collins*, 594 U.S. at 259—like enjoining "an illegitimate proceeding," *Axon*, 598 U.S. at 191—then a party need only show that the proceeding is constitutionally defective to obtain relief.

This distinction makes sense. Underpinning *Collins*'s discussion was the

recognition that an unconstitutional provision—*e.g.*, a for-cause removal statute—is "never really part of the body of governing law" but is "automatically displace[d]" by "the Constitution." *Collins*, 594 U.S. at 259-60. That meant, Justice Thomas's concurrence suggested, that the "Government does not necessarily act unlawfully even if a removal restriction is unlawful" and thus such restrictions do not necessarily cause post-hoc remediable harm. *Id.* at 261 (Thomas, J., concurring). Instead, a party must show that the unlawful removal restriction in fact prejudiced its rights by affecting official decisionmakers' behavior. *Id.* at 259. Applied here, *Collins* would cover "scenarios in which a party waits to challenge removal protections" until "after it sees the ALJ's particular rulings and then seeks to unwind them." Appellant Br. 30.

But as YAPP and a recent decision of the D.C. District Court explain, the crux of *Collins*'s discussion does not "logically extend" to forward-looking declaratory or injunctive relief. *VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 1:24-cv-02577, 2024 WL 5056358, at *9 (D.D.C. Dec. 10, 2024). Unlike the voiding of a past agency action, the effectiveness of a declaration that a removal restriction is unconstitutional "does not turn on the effect of a purported statute that was 'never really part of the body of governing law' to begin with." *Id.* (quoting *Collins*, 594 U.S. at 259). Rather, it is "the vehicle by which a party asserts that the statute is 'displace[d]' by the Constitution." *Id.* (quoting *Collins*, 594 U.S. at 259). And like logic applies

to a preliminary injunction: Its efficacy in redressing injury turns not on the effect of a removal restriction on a particular political actor, *cf. Collins*, 594 U.S. at 259-60, but on an injunction's ability to prevent injury before it becomes irremediable. As YAPP explains here, "[a] structural problem pollutes the entirety of a proceeding, regardless of the particular actors' identities." Appellant Br. 29. And "ALJs who are not accountable to the President act differently than those who know they are subject to the President's control." *Id.* at 30; *see also Lucia*, 585 U.S. at 260-61 (Breyer, J., concurring in part).

The upshot here: YAPP has satisfied its *Collins* burden at the preliminary-injunction stage for one of two independently sufficient reasons. Either it has no *Collins* burden to satisfy because YAPP seeks purely prospective relief from the injury of being subjected to unconstitutional agency authority. Or it has satisfied its *Collins* burden because it has shown injury flowing from an unconstitutional removal restriction. Either way, *Collins* poses no obstacle to YAPP's showing a likelihood of success on the merits of its removal-restriction claims.

### B. *Calcutt* mistakenly extended *Collins* to a prospective relief case—an error the district court and motions panel compounded.

Against this backdrop, the district court and motions panel held that YAPP was required—and failed—to satisfy *Collins*'s "causal harm requirement," thus falling short on the merits and irreparable-harm factors. Mem. Op., R.29, PageID#322-26, 336-37; Op. 6. But their analyses rested on *Calcutt*'s overbroad reading of

*Collins* and thus carried forward multiple errors. *See* Mem. Op., R.29, PageID#322-26, 336-37; Op. 6. And *Calcutt* simply can't be reconciled with the Supreme Court's more recent guidance in *Axon*. That case counsels against applying *Calcutt* here, as do other procedural considerations.

1. *Calcutt* critically erred by dismissing the significant distinction between prospective and retrospective relief as something that "does not matter." 37 F.4th at 316. The *Calcutt* panel reasoned that "[t]he *Collins* inquiry focuses on whether a 'harm' occurred that would create an entitlement to a remedy, rather than the nature of the remedy," so the causation analysis "remain[ed] the same whether the petitioner seeks retrospective or prospective relief." *Id.* Thus, the panel held that a challenger must show that "the structure of the [agency] caused him harm," such as "by preventing superior officers from removing [inferior officers] … or possibly by altering the [agency's] behavior." *Id.* As the district court here put it, *Calcutt* means that any party challenging a removal restriction, regardless of the nature of the injury alleged or the relief sought, must show that the restriction "made a difference in its case." Mem. Op., R.29, PageID#336-37. The other cases on which the district court relied all cited *Calcutt* with little analysis of their own to justify rejecting the retrospective-prospective-relief distinction. *See, e.g.*, *Leachco*, 103 F.4th at 757; *see also* Mem. Op., R.29, PageID#323-24.

But the retrospective-prospective distinction *does* "matter" in cases like this

one. *Cf. Calcutt*, 37 F.4th at 316. As the Fifth Circuit held in *Cochran*, when plaintiffs do "not seek to 'void' the acts" of an agency and instead "seek[] an administrative adjudication untainted by separation-of-powers violations," the *Collins* framework does not apply. *See* 20 F.4th at 210 n.16. Rather, being forced to participate in an unconstitutional adjudication causes an "injury" that opens the door to prospective relief even without making the *Collins* showing. *See id.*; *see also* Appellant Br. 31-32. Put in *Calcutt*'s own terms, plaintiffs like YAPP allege a "harm" that "create[s] an entitlement to a remedy"—prospective injunctive or declaratory relief. *See Calcutt*, 37 F.4th at 316.

Indeed, as the *Axon* Court explained, the separation-of-powers harm that accompanies subjection to unconstitutional agency proceedings could not be remedied except by pre-enforcement relief. For judicial relief that issued after a litigant was subjected to an unconstitutional proceeding would "come too late to be meaningful." 598 U.S. at 903-04. So it makes sense that the *Collins* causation analysis would not apply in cases like this one—or that the kind of injury YAPP has alleged would satisfy *Collins*. *Cf. Calcutt*, 37 F.4th at 316 (holding courts must focus on whether a particular "harm" entitles a party "to a remedy"). Reconciling *Collins* with *Axon* cannot mean that courts must recognize a party's entitlement to pre-enforcement judicial review of a removal-restriction challenge, only to jettison the party's entitlement to "meaningful" relief. *Cf. Axon*, 598 U.S. at 190-91.

14

Conversely, if the district court's reading of *Calcutt*'s reading of *Collins* is correct, a party who has yet to undergo an illegitimate agency proceeding might *never* satisfy *Collins*'s harm showing—thus losing any opportunity for "meaningful judicial review." *See Axon*, 598 U.S. at 190 (citation omitted). That's because showing the removal restriction "made a difference"—other than by subjecting a party to unconstitutional agency authority—would require predicting the future. *Cf.* Mem. Op., R.29, PageID#336-37. YAPP, for example, alleges that "undergo[ing] an unconstitutional proceeding" before "'illegitimate decisionmaker[s]'"—both the ALJ presiding over YAPP's proceeding and the Board Members who might review the ALJ's report—is the harm a preliminary injunction would prevent. Prelim. Inj. Mem., R.4, PageID#73 (quoting *Axon*, 598 U.S. at 191); *see also id.* at PageID#76-77; 29 U.S.C. § 160(c); 29 C.F.R. § 102.48(a). And although it has "demonstrated with concrete evidence that without court intervention it would be subject to [that] harm," YAPP cannot now say what other injuries might flow from that illegitimate exercise of authority. *See* Appellant Br. 31-32. As it explains (at 30), "[n]o party could make this particularized showing where the ALJ who will hear its case and make rulings has not been named, or early in the case before an ALJ acts in a way the parties might speculate the President [would] find objectionable." Applying *Collins* to such cases just "makes no sense." Appellant Br. 30.

Subjecting parties like YAPP to the kind of but-for causation analysis *Calcutt*

adopted would also conflict with other Supreme Court precedent granting equitable relief in cases like these. When parties have sought prospective relief from separation-of-powers violations, including in removal-restriction cases, the Supreme Court has never required them to "show that the challenged act would not have been taken if the responsible official had been subject to the President's control." *Seila Law*, 591 U.S. at 211; *see also Free Enter. Fund v. PCAOB*, 561 U.S. 477, 512 n.12 (2010). To the contrary, it has instructed that ongoing or imminent constitutional violations of this kind impose "a 'here-and-now injury' that can be remedied by a court." *Free Enter.*, 561 U.S. at 513 (quoting *Bowsher v. Synar*, 478 U.S. 714, 727 n.5 (1986)). Thus, in *Free Enterprise Fund* and other cases involving the President's removal power, the Supreme Court has recognized challengers' "entitle[ment] to declaratory relief to ensure" that only a "constitutional agency accountable to the Executive" could take the challenged actions. 561 U.S. at 513; *see Bowsher*, 478 U.S. at 721; *Synar v. United States*, 626 F. Supp. 1374, 1404 (D.D.C. 1986), *aff'd*, 478 U.S. 714. Such "equitable relief 'has long been recognized as the proper means for preventing entities from acting unconstitutionally.'" *Free Enter.*, 561 U.S. at 491 n.2 (citation omitted). *Calcutt* overlooked these cases and thus missed the importance of *Collins*'s limitation to parties seeking retrospective relief from past agency action.

At minimum, and as YAPP argues (at 49), these precedents show that YAPP

16

is "entitled to declaratory relief sufficient to ensure" that the proceedings and other agency actions to which it is subject "will be enforced only by a constitutional agency accountable to the Executive." *Free Enter.*, 561 U.S. at 513. This much is clear: The "Court need not find that the removal restriction[s] actually inflicted harm to grant declaratory relief." *VHS Acquisition*, 2024 WL 5056358, at *9.

2. Even assuming the retrospective-prospective distinction didn't "matter" in *Calcutt*, the panel's reasoning there suggested its analysis might play out differently in cases like this one. *Cf.* Op. 5. *Calcutt* involved a petition for review of a final agency order that "remain[ed] in effect and operat[ed] prospectively." 37 F.4th at 316. The petitioner tried to distinguish *Collins* because, unlike there, he maintained a live claim for prospective relief from the challenged order's continuing effect. *Id.* But the *Calcutt* panel held that the harm still flowed from an order issuing from "an adjudication that ha[d] already ended," thus triggering a need to show that the agency's for-cause removal protections had affected that order. *Id.* By contrast here—and as in *Axon*—the alleged injury arises not from an already issued order but from YAPP's subjection to illegitimate proceedings that have not "already ended." *Cf. id.*; *see* Prelim. Inj. Mem., R.4, PageID#73; *see also Cochran*, 20 F.4th at 210 n.16. In short, the "inflicted harm" is different, so the entitlement-to-relief analysis must be, too. *Cf. Calcutt*, 37 F.4th at 316.

3. There are also good reasons why *Calcutt*'s reading of *Collins* does not

continue to bind—at least not here. *Cf.* Op. 5. Most notably, a panel may revisit a prior panel's opinion when a relevant Supreme Court authority intervenes between the two. *Id.* An intervening authority may "undercut" a prior panel's reasoning even if it is not "exactly on point, so long as the legal reasoning is directly applicable to the issue at hand." *United States v. White*, 920 F.3d 1109, 1113 (6th Cir. 2019). And that is certainly true of *Axon*, whose reasoning clarified that a challenge to an agency's "power to proceed at all" (the claim at issue here and in *Axon*) fundamentally differs from a challenge to specific "actions taken in the agency proceedings" (the claim at issue in *Collins* and arguably in *Calcutt*). 598 U.S. at 192. As *Axon* explained, the separation-of-powers harm that accompanies subjection to unconstitutional proceedings cannot be fully remedied except by pre-enforcement relief. *Id.* at 191. The result of applying *Calcutt* to an *Axon*-type injury—refusing the "remedy" suitable for the alleged harm—fatally undermines *Calcutt*'s conclusion that the analysis "remains the same" in "unconstitutional removal protection" cases regardless of the type of relief sought. *Cf. Calcutt*, 37 F.4th at 316.

On top of that, the Supreme Court's summary reversal of *Calcutt* likely rendered the panel's *Collins* discussion purely advisory. This Court treats as binding a prior opinion's "result" and "those portions of the opinion necessary to that result." *Sanborn v. Parker*, 629 F.3d 554, 570 (6th Cir. 2010) (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996)). It follows that issues that were not

"necessary" to the ultimate result on appeal are not binding. Although the Supreme Court did not grant cert on the *Collins* issue in *Calcutt*, it held that the panel improperly failed to remand to the agency after finding the agency had applied the wrong legal standard. *Calcutt v. FDIC*, 598 U.S. 623, 624-25, 630 (2023). In other words, the panel's discussion of the petitioner's separation-of-powers claims, including the *Collins* issue, was not necessary to the "result"—remand to the agency. Nor did that discussion support an alternative holding. *Cf. Freed v. Thomas*, 976 F.3d 729, 738-39 (6th Cir. 2020). In short, *Calcutt* is a "tenuous reed to sustain the NLRB's position." *VHS Acquisition*, 2024 WL 5056358, at *9. This Court should treat the *Calcutt* panel's *Collins* analysis as non-binding dicta here. *Cf. Freed*, 976 F.3d at 738-39.

## II. YAPP Suffers Irreparable Harm from Ongoing Regulation by an Unconstitutionally Structured Agency.

Relying on its *Calcutt*-based causation analysis, the district court also held that YAPP failed to show irreparable harm. Mem. Op., R.29, PageID#336-37. The motions panel likewise conflated satisfying *Calcutt*'s causal standard with establishing entitlement to preliminary relief. Op. 6. But YAPP has demonstrated irreparable harm, and it need not show past harm to fend off future harm.

YAPP alleged a "here-and-now injury"—that of being "subjected" to "unconstitutional agency authority." *Axon*, 598 U.S. at 191 (citation omitted); *see also* Appellant Br. 48-49. In rejecting that injury as an irreparable harm, both the district court and motions panel relied on the Tenth Circuit's opinion in *Leachco*. *See* Mem.

19

Op., R.29, PageID#336-37; Op. 6. But *Leachco* is unpersuasive because its reasoning rests on a distinction without significance.

*Leachco* held that *Axon*'s discussion of "here-and-now injury" was restricted to *Axon*'s "limited jurisdictional holding" and could not alone entitle a party to any relief under *Collins*. 103 F.4th at 759. But *Leachco*'s distinction does not hold up. As *Leachco* acknowledged, *id.*, *Axon*'s "here-and-now injury" language came from *Seila Law*, which held that an unconstitutional removal restriction gives affected parties standing to challenge it, 591 U.S. at 212. *Seila Law*, in turn, noted that such an injury is redressable, stating that *Bowsher* "'reject[ed]' the 'argument that consideration of the effect of a removal provision is not "ripe" until that provision is actually used,' because when such a provision violates the separation of powers it inflicts a 'here-and-now' injury on affected third parties that can be remedied by a court." *Id.* (quoting *Bowsher*, 478 U.S. at 727 n.5).

An injury for standing purposes, to be sure, isn't always irreparable. But that doesn't mean it isn't an *injury* for purposes of obtaining injunctive relief. To the contrary, after showing a "cognizable injury for standing" purposes, a party need only show "that harm is irreparable" at the preliminary injunction stage. *Ohio v. Becerra*, 87 F.4th 759, 781 n.13 (6th Cir. 2023). *Collins*'s clarification that *Seila Law*'s standing discussion does not require "void[ing] *ab initio*" actions taken by an insulated actor is not to the contrary. *Collins*, 594 U.S. at 258 n.24. *But see Leachco*,

20

103 F.4th at 759. The fact that YAPP might not be entitled to void a final decision of the NLRB ALJ or Board does not mean it is not entitled to a preliminary injunction of the proceedings.

And YAPP's "here-and-now" injury is also "irreparable" because it is "not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). Rather, as *Axon* made clear, YAPP's injury is *only* completely redressable by an injunction of the proceedings. *Axon*, 598 U.S. at 192. Indeed, the purpose of a preliminary injunction is to prevent future harm, not to redress past harm. *See* 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed. June 2024). Once again, *Collins*'s "retrospective relief" reasoning is not on point.

Neither the district court nor the motions panel nor *Leachco* supplies any principled basis for distinguishing between prospective violations of individual constitutional rights, which "unquestionably" establish irreparable harm, and structural violations. *See Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)); *see also Overstreet*, 305 F.3d at 578. And courts should not treat structural provisions like second-class constitutional protections. After all, "[t]he structural principles secured by the separation of powers protect the individual as well." *Bond*, 564 U.S. at 222.

Applying that principle, then-Judge Kavanaugh cited just such individual-rights cases to find irreparable injury in a removal-restriction case. He reasoned that

irreparable harm "occurs almost by definition when a person or entity demonstrates a likelihood that it is being regulated on an ongoing basis by an unconstitutionally structured agency that has issued binding rules governing the plaintiff's conduct and that has authority to bring enforcement actions against the plaintiff." *John Doe Co. v. CFPB*, 849 F.3d 1129, 1136 (D.C. Cir. 2017) (Kavanaugh, J., dissenting) ("[A] prospective violation of a constitutional right constitutes irreparable injury[.]" (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013))). And defining the precise injury similarly to *Axon*—as "regulation by the [agency] in its current unconstitutional … structure"—he found that a "preliminary injunction would alleviate that ongoing harm." *Id.* at 1137. The same is true here.

## CONCLUSION

The Court should reverse the district court's denial of preliminary relief.

Dated: December 27, 2024

Respectfully submitted,

JONATHAN SKRMETTI
  Attorney General and Reporter

*s/ Virginia N. Adamson*
J. MATTHEW RICE
  Solicitor General
WHITNEY D. HERMANDORFER
  Director of Strategic Litigation
VIRGINIA N. ADAMSON
  Counsel for Strategic Litigation &
  Assistant Solicitor General
OFFICE OF THE TENNESSEE
ATTORNEY GENERAL

22

P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-3491
Jenna.Adamson@ag.tn.gov

*Additional Counsel for* Amici Curiae *Listed on Next Pages*

# ADDITIONAL COUNSEL

STEVE MARSHALL
Attorney General
State of Alabama

TIM GRIFFIN
Attorney General
State of Arkansas

ASHLEY MOODY
Attorney General
State of Florida

CHRIS CARR
Attorney General
State of Georgia

RAÚL R. LABRADOR
Attorney General
State of Idaho

THEODORE E. ROKITA
Attorney General
State of Indiana

BRENNA BIRD
Attorney General
State of Iowa

RUSSELL COLEMAN
Attorney General
Commonwealth of Kentucky

LIZ MURRILL
Attorney General
State of Louisiana

LYNN FITCH
Attorney General
State of Mississippi

AUSTIN KNUDSEN
Attorney General
State of Montana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

DREW H. WRIGLEY
Attorney General
State of North Dakota

DAVE YOST
Attorney General
State of Ohio

ALAN WILSON
Attorney General
State of South Carolina

MARTY JACKLEY
Attorney General
State of South Dakota

KEN PAXTON
Attorney General
State of Texas

PATRICK MORRISEY
Attorney General
State of West Virginia

SEAN REYES
Attorney General
State of Utah

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, that this brief complies with the type-volume requirements and, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), contains 5,109 words. *See* Fed. R. App. P. 29(a)(5).

I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Respectfully submitted, this 27th day of December 2024.


*s/ Virginia N. Adamson*
Virginia N. Adamson

## CERTIFICATE OF SERVICE

On December 27, 2024, I filed an electronic copy of this brief with the Clerk of the Sixth Circuit using the CM/ECF system. That system sends a Notice of Docket Activity to all registered attorneys in this case. Under Sixth Circuit Rule 25(f)(1)(A), "[t]his constitutes service on them and no other service is necessary."

*s/ Virginia N. Adamson*
Virginia N. Adamson
