# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

YAPP USA AUTOMOTIVE SYSTEMS, INC.,

Plaintiff-Appellant,

v.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), LOCAL
174,

Intervenor,

JENNIFER A. ABRUZZO, in her official capacity as the General Counsel of
the National Labor Relations Board; NATIONAL LABOR RELATIONS
BOARD, a federal administrative agency; LAUREN M. MCFERRAN, in her
official capacity as the Chairman of the National Labor Relations Board;
MARVIN E. KAPLAN, in his official capacity as Board Members of the
National Labor Relations Board; GWYNNE A. WILCOX, in her official
capacity as Board Members of the National Labor Relations Board; DAVID
M. PROUTY, in his official capacity as Board Members of the National
Labor Relations Board; ARTHUR AMCHAN, in his official capacity as an
Administrative Law Judge of the National Labor Relations Board,

Defendants-Appellees,

On Appeal from the United States District Court for the
Eastern District of Michigan, No. 2:24-cv-12173

**BRIEF OF THE NATIONAL LABOR RELATIONS BOARD**

*(Counsel List Appears on Inside Cover)*

WILLIAM B. COWEN
*Acting General Counsel*

STEPHANIE CAHN
*Acting Deputy General Counsel*

NANCY E. KESSLER PLATT
*Assoc. General Counsel*

DAWN L. GOLDSTEIN
*Deputy Assoc. General Counsel*

KEVIN P. FLANAGAN
*Deputy Asst. General Counsel*

MICHAEL S. DALE
*Supervisory Attorney*

STEVEN A. BIESZCZAT
*Attorney*

CRAIG EWASIUK
*Attorney*

NATIONAL LABOR RELATIONS
BOARD
1015 Half Street S.E., 4th Floor
Washington, DC 20570
Tel: (202) 273-0008

## STATEMENT REGARDING ORAL ARGUMENT

This case involves the application of settled legal principles, and therefore does not require oral argument. However, because Plaintiff-Appellant has requested oral argument, Defendants-Appellees request the opportunity to argue. Defendants-Appellees believe that 15 minutes per side will be sufficient for the parties to present their views.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT...............................................i

COUNTERSTATEMENT OF JURISDICTION....................................................1

COUNTERSTATEMENT OF THE ISSUES.......................................................2

COUNTERSTATEMENT OF THE CASE...........................................................2

I.      Legal Background .................................................................................2

II.     Procedural History..............................................................................5

    A.   Administrative proceedings ...........................................................5

    B.   District court proceedings ..............................................................7

    C.   The Sixth Circuit denies YAPP's motion for an injunction
        pending appeal.................................................................................11

SUMMARY OF THE ARGUMENT................................................................11

STANDARD OF REVIEW .............................................................................14

ARGUMENT ...............................................................................................15

I.     As a threshold matter, the Norris-LaGuardia Act jurisdictionally bars
     the injunctive relief YAPP seeks....................................................15

II.    The district court correctly denied YAPP's request for a preliminary
     injunction........................................................................................17

    A.   YAPP is unlikely to succeed on its claims...................................17

    1.   YAPP cannot succeed on its removal claims because it fails to show
      causal harm and because severance is the proper remedy for those
      claims.............................................................................................17

a.   YAPP's failure to allege causal harm is fatal to all of its removal claims. ....................................................................................................18

b.   Preliminary injunctive relief is unavailable where severance can resolve the threat of appearing before an unconstitutionally insulated adjudicator. .............................................................................................25

c.   The district court's denial of YAPP's request for preliminary injunction should be affirmed regardless of the constitutionality of the challenged removal restrictions. ..................................................................................27

2.   YAPP's Seventh Amendment claim is beyond the district court's subject-matter jurisdiction and contrary to controlling law. ......................29

3.   YAPP is unlikely to establish district-court jurisdiction over or prevail upon its combined-functions claim. ............................................................39

B.   YAPP has not met its burden to show irreparable harm. ...........................41

1.   YAPP has not shown any irreparable harm resulting from removal restrictions for NLRB Board members or ALJs. .......................................41

2.   YAPP's Seventh Amendment and combination-of-functions claims are too speculative to be a basis for irreparable harm.....................................46

C.   Should this Court reach the public interest and the balance of the equities, those factors further counsel against awarding an injunction. ....49

CONCLUSION .................................................................................................53

# TABLE OF AUTHORITIES

**Cases**

*Ahearn v. Jackson Hosp. Corp.*,
  351 F.3d 226 (6th Cir. 2003) ..............................................................51

*Alpine Secs. Corp. v. FINRA*,
  121 F.4th 1314  (D.C. Cir. 2024).........................................................44

*Amazon.com Servs. LLC v. NLRB*,
  2025 WL 466262 (C.D. Cal. Feb. 5, 2025) ..........................................16

*Ares Collective Grp. LLC v. NLRB*,
  2024 WL 4581436 (D. Ariz. Oct. 25, 2024)..........................................21

*Atlas Roofing Co., Inc. v. Occupational Safety Health and Review Comm'n*,
  430 U.S. 442 (1977)....................................................................... 32, 33

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
  598 U.S. 175 (2023)..................................................................... passim

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
  591 U.S. 610 (2020)..............................................................................26

*Benisek v. Lamone*,
  585 U.S. 155 (2018)....................................................................... 15, 49

*Bhatti v. Fed. Housing Fin. Agency*,
  97 F.4th 556 (8th Cir. 2024) .................................................................20

*Blankenship v. FINRA*,
  2024 WL 4043442 (E.D. Pa. Sept. 4, 2024).........................................32

*Bonnell v. Lorenzo*,
  241 F.3d 800 (6th Cir. 2001) ................................................................45

*Booker v. LaPaglia*,
  617 F. App'x 520 (6th Cir. 2015)..........................................................22

*Boys Markets, Inc. v. Retail Clerks Union*,
  398 U.S. 235 (1970)..............................................................................15

iv

*Calcutt v. FDIC*,
    37 F.4th 293 (6th Cir. 2022) ........................................................ passim

*CashCall, Inc.*,
    35 F.4th 734 (9th Cir. 2022) ....................................................... 21

*Cath. Healthcare Int'l, Inc. v. Genoa Charter Twp.*,
    82 F.4th 442 (6th Cir. 2023) ....................................................... 14

*City of Arlington v. FCC*,
    569 U.S. 290 (2013) ................................................................... 40

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
    51 F.4th 616 (5th Cir. 2022) ........................................ 12, 19, 21, 28

*Cochran v. SEC*,
    20 F.4th 194 (5th Cir. 2021) ....................................................... 23

*Collins v. Dep't of the Treasury*,
    83 F.4th 970 (5th Cir. 2023) ................................................ 19, 20

*Collins v. Yellen*,
    594 U.S. 220 (2021) .................................................................. passim

*Cortes v. NLRB*,
    2024 WL 1555877 (D.D.C. Apr. 10, 2024) ................................... 21

*Curtis v. Loether*,
    415 U.S. 189 (1974) ................................................................... 33

*Del. State Sportsmen's Ass'n. v. Del. Dep't of Safety & Homeland Sec.*,
    108 F.4th 194 (3d Cir. 2024) ................................................ 44, 45, 49

*D.T. v. Sumner Cnty.*,
    Schs., 942 F.3d 324 (6th Cir. 2019) ................................. 41, 43, 46, 47

*Elgin v. Dep't of Treasury*,
    567 U.S. 1 (2012) ..................................................................... 32

*Elrod v. Burns*,
    427 U.S. 347 (1976) ................................................................... 45

*Energy Transfer, LP v. NLRB*,
   742 F. Supp. 3d 755 (S.D. Tex. 2024) ................................................25

*Fibreboard Paper Prods. Corp. v. NLRB*,
   379 U.S. 203 (1964) ..........................................................................4

*Foster v. Wilson*,
   504 F.3d 1046 (9th Cir. 2007) ..........................................................34

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
   561 U.S. 477 (2010) ................................................................ 8, 26, 43

*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989) .................................................................... 30, 32

*Gray v. Jennings*,
   2025 WL 76443 (U.S. Jan. 13, 2025) ..................................................44

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
   541 U.S. 567 (2004) ..........................................................................15

*Hale v. Morgan Stanley Smith Barney LLC*,
   982 F.3d 996 (6th Cir. 2020) ..............................................................1

*Higuchi Int'l Corp. v. Autoliv ASP, Inc.*,
   103 F.4th 400 (6th Cir. 2024) .............................................................44

*HonorHealth v. NLRB*,
   2024 WL 4769772 (D. Ariz. Nov. 13, 2024) ........................................21

*Humphrey's Executor v. United States*,
   295 U.S. 602 (1935) ............................................................................8

*In re DeLorean Motor Co.*,
   755 F.2d 1223 (6th Cir. 1985) ...........................................................45

*In re Federated Dep't Stores, Inc.*,
   328 F.3d 829 (6th Cir. 2003) .............................................................15

*In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig.*,
   340 F.3d 749 (8th Cir. 2003) ....................................................... 49, 50

*Integrity Advance, LLC v. CFPB*,
48 F.4th 1161 (10th Cir. 2022) ...................................................................21

*Int'l Union of Operating Eng'rs, Stationary Eng'rs, Loc. 39 v. NLRB*,
127 F.4th 58 (9th Cir. 2025) ............................................. 31, 34, 35, 38

*John Doe Co. v. CFPB*,
849 F.3d 1129 (D.C. Cir. 2017)................................................................45

*K & R Contractors, LLC v. Keene*,
86 F.4th 135 (4th Cir. 2023) ....................................................................20

*Kerwin v. Trinity Health Grand Haven Hosp.*,
No. 1:24-cv-445, 2024 WL 4594709.....................................................21

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994).....................................................................................1

*L. Offs. of Crystal Moroney, P.C.*,
63 F.4th 174 (2d Cir. 2023) .....................................................................20

*Leachco, Inc. v. CPSC*,
103 F.4th 748 (10th Cir. 2024) ................................................. passim

*Lewis v. Casey*,
518 U.S. 343 (1996)...................................................................................26

*Loc. Lodge No. 1424 v. NLRB*,
362 U.S. 411 (1960)...................................................................................51

*Lou's Transp., Inc.*,
366 NLRB No. 140, 2018 WL 3570875 (2018), *enforced*, 945 F.3d 1012
(6th Cir. 2019)............................................................................................37

*Lytle v. Household Mfg., Inc.*,
494 U.S. 545 (1990)...................................................................................31

*Maryland v. King*,
567 U.S. 1301 (2012)................................................................................50

*Mertens v. Hewitt Associates*,
508 U.S. 248 (1993)...................................................................................35

*Mitchell v. Maurer*,
 293 U.S. 237 (1934).........................................................................15

*Mitchellace, Inc. v. NLRB*,
 90 F.3d 1150 (6th Cir. 1996) ..............................................................5

*Moats v. Nat'l Credit Union Admin. Board*,
 2024 WL 1724271 (S.D. Tex. Apr. 9, 2024)......................................15

*Morrison v. Olson*,
 487 U.S. 654 (1988)...........................................................................8

*Myers v. Bethlehem Shipbuilding Corp.*,
 303 U.S. 41 (1938).................................................................... 30, 31

*Napleton 1050, Inc.*,
 367 NLRB No. 6, 2018 WL 4694098 (2018), *enforced*, 976 F.3d 30
 (D.C. Cir. 2020) ...............................................................................37

*Nathanson v. NLRB*,
 344 U.S. 25 (1953).............................................................................50

*Nat'l Collegiate Master Student Loan Tr.*,
 96 F.4th 599 (3d Cir. 2024) ..............................................................20

*Nat'l Fed. of Indep. Bus. v. OSHA*,
 595 U.S. 109 (2022)..........................................................................41

*Nat'l Licorice Co. v. NLRB*,
 309 U.S. 350 (1940).................................................................... 34, 50

*Nexstar Media, Inc. Grp. v. NLRB*,
 2024 WL 4127090 (N.D. Ohio Aug. 26, 2024)........................... 16, 32

*Nken v. Holder*,
 556 U.S. 418 (2009)..........................................................................15

*NLRB v. Bell Aerospace Co.*,
 416 U.S. 267 (1974).......................................................................9, 40

*NLRB v. Colten*,
 105 F.2d 1792 (6th Cir. 1939) ..................................................... 34, 35

*NLRB v. J.H. Rutter-Rex Mfg. Co.*,
  396 U.S. 258 (1969)..................................................................................52

*NLRB v. Jones & Laughlin Steel Corp.*,
  301 U.S. 1 (1937)........................................................... 33, 34, 35, 47

*NLRB v. Louton, Inc.*,
  822 F.2d 412 (3d Cir. 1987) ...................................................................37

*NLRB v. Starbucks Corp.*,
  125 F.4th 78 (3d Cir. 2024) ...................................................................31

*Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*,
  305 F.3d 566 (6th Cir. 2002) .......................................................... 14, 44

*Phelps Dodge Corp. v. NLRB*,
  313 U.S. 177 (1941)..............................................................................4, 32

*Ponte v. FDIC*,
  2024 WL 4730602 (D.D.C. Oct. 11, 2024) .................................... 31, 47

*Priorities USA v. Nessel*,
  860 F. App'x 419 (6th Cir. 2021)..........................................................50

*Pub. Serv. Co. of N.H. v. Town of W. Newbury*,
  835 F.2d 380 (1st Cir. 1987).................................................................45

*Quick v. NLRB*,
  245 F.3d 231 (3d Cir. 2001) .......................................................... 36, 37

*Rodriguez v. Soc. Sec. Admin.*,
  118 F.4th 1302 (11th Cir. 2024) ...........................................................20

*Salmi v. Secretary of Health & Human Services*,
  774 F.2d 685 (6th Cir. 1985) .................................................................22

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974)................................................................................26

*SEC v. Jarkesy*,
  603 U.S. 109 (2024)................................................................... passim

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) ............................................................26

*Siegel v. LePore*,
    234 F.3d 1163 (11th Cir. 2000) .........................................45

*Space Expl. Techs. Corp. v. Bell*,
    701 F. Supp. 3d 626 (S.D. Tex. 2023) ...............................26

*Space Expl. Techs. Corp. v. NLRB*,
    741 F. Supp. 3d 630 (W.D. Tex. 2024) ..............................25

*Spring Creek Rehab. & Nursing Ctr. LLC v. NLRB*,
    2024 WL 4690938 (D.N.J. Nov. 6, 2024) .........................21

*State of Tenn. v. Dep't of Educ.*,
    104 F.4th 577 (6th Cir. 2024) ...........................................48

*Tenn. Valley Auth. v. Tenn. Elec. Power Co.*,
    90 F.2d 885 (6th Cir. 1937) .......................................... 49, 50

*Thryv, Inc.*,
    372 NLRB No. 22 (2022), *enf. denied on other grounds*,
    102 F.4th 727 (5th Cir. 2024) .................................... passim

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994) ...........................................................29

*Tull v. United States*,
    481 U.S. 412 (1987) ................................................ 30, 35, 36

*United States v. Burke*,
    504 U.S. 229 (1992) ....................................................... 37, 38

*United States v. Conces*,
    507 F.3d 1028 (6th Cir. 2007) ...........................................22

*Va. Elec. & Power Co. v. NLRB*,
    319 U.S. 533 (1943) ...........................................................34

*Valentine v. Collier*,
    956 F.3d 797 (5th Cir. 2020) .............................................50

x

*VHS Acquisition Subsidiary No. 7 v. NLRB*,
  2024 WL 5056358 (D.D.C. Dec. 10, 2024) ................................................ 24, 25

*VHS Acquisition Subsidiary No. 7 v. NLRB*,
  2024 WL 4817175 (D.D.C. Nov. 17, 2024) ........................................ 16, 25, 32

*Wagafe v. Biden*,
  2024 WL 2274349 (W.D. Wash. May 20, 2024) ................................................30

*WestRock Servs., Inc.*,
  366 NLRB No. 157, slip op. (2018) ......................................................3

*Wheeler v. Wexford Health Sources, Inc.*,
  689 F.3d 680 (7th Cir. 2012) ..........................................................45

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)......................................................................14

*YAPP USA Automotive Sys., Inc. v. NLRB*,
  2024 WL 4489598 (6th Cir. Oct. 13, 2024) ............................................ passim

**Statutes**

5 U.S.C. § 1202(d) ......................................................................3

5 U.S.C. § 3105 ........................................................................3

5 U.S.C. § 7521(a) ......................................................................3

28 U.S.C. § 1292(a)(1).................................................................1

28 U.S.C. § 1331 .......................................................................1

29 U.S.C. § 101 *et. seq.*, ......................................................... 11, 15

29 U.S.C. § 101 ........................................................................2

29 U.S.C. § 104 ........................................................................2

29 U.S.C. § 107 .................................................................. 2, 15, 17

29 U.S.C. § 110 .......................................................................1

29 U.S.C. § 113 .................................................................. 16, 17

29 U.S.C. § 151, *et seq.*,..................................................................2

29 U.S.C. § 153(a) .......................................................................4

29 U.S.C. § 153(b) .....................................................................43

29 U.S.C. § 154(a) .......................................................................3

29 U.S.C. § 157...........................................................................2

29 U.S.C. § 158(a)(3)..................................................................51

29 U.S.C. § 160 .........................................................................3

29 U.S.C. § 160(b) ......................................................................3

29 U.S.C. § 160(c) ................................................................ 3, 4, 51

29 U.S.C. § 160(e) ......................................................................5

29 U.S.C. § 160(f) .......................................................................5

29 U.S.C. § 160(m) ....................................................................51

## Regulations

29 C.F.R. § 102.46(a)...................................................................3

## Other Authorities

H.R. Rep. No. 80-245 (1947)........................................................51

## COUNTERSTATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1)

because the district court's September 9, 2024 Order is an interlocutory order

refusing an injunction, and under 29 U.S.C. § 110 because the requested injunction

involves or grows out of a labor dispute.

A party seeking relief from a federal court bears the burden of establishing

that the case or controversy fits within the court's "limited jurisdiction," since

federal courts possess "only power authorized by the Constitution and statute to

adjudicate cases." *Hale v. Morgan Stanley Smith Barney LLC*, 982 F.3d 996, 997

(6th Cir. 2020) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375,

377 (1994)). The NLRB acknowledges that the district court has jurisdiction over

YAPP's removal-restriction claims under 28 U.S.C. § 1331. *Axon Enter., Inc. v.

FTC*, 598 U.S. 175, 185 (2023). But for the reasons discussed below, the district

court lacked jurisdiction over YAPP's Seventh Amendment and combined-

functions claims, and that court correctly denied YAPP's motion for a preliminary

injunction on that basis, among others. *See* Opinion and Order Denying Motion for

Preliminary Injunction ("Ord."), R.29, PageID.326-30.

Regardless of whether the district court had subject-matter jurisdiction over

any of YAPP's claims, injunctive relief on those claims is jurisdictionally barred

by statute because this case involves or grows out of labor disputes under the
Norris-LaGuardia Act. 29 U.S.C. §§ 101, 104, 107.

## COUNTERSTATEMENT OF THE ISSUES

1.      Does the Norris-LaGuardia Act jurisdictionally bar the preliminary
injunctive relief YAPP seeks?

2.      Did the district court err in denying YAPP a preliminary injunction
where YAPP has failed to show that: (a) it satisfies this Circuit's causal-harm
standard for removability claims; (b) an injunction, not severance, is the proper
remedy for its removability claims; (c) there is subject-matter jurisdiction over its
Seventh Amendment claim or that such claim is likely to succeed on the merits; (d)
its combined-functions claim is likely to succeed on the merits; (e) an injunction
would prevent irreparable harm; and (f) the balance of the equities and public
interest tilt in its favor?

## COUNTERSTATEMENT OF THE CASE

## I.      Legal Background

The National Labor Relations Board ("NLRB") is the exclusive federal
agency designated to protect employee rights under the National Labor Relations
Act ("NLRA"), 29 U.S.C. § 151, *et seq.*, to form and join unions, and engage in
concerted activity for mutual aid and protection, or to refrain from such activities.
29 U.S.C. § 157. One of the key functions of the Agency is its role in processing

2

allegations that an employer or union has committed an unfair labor practice ("ULP"). *Id.* § 160. Such allegations arise from charges filed by members of the public; formal proceedings do not commence unless and until the NLRB's General Counsel, or her delegate, finds merit to the charge and issues a complaint, *id.* § 160(b), usually accompanied by a notice of hearing before an administrative law judge (ALJ).

The NLRB's ALJs are appointed in accordance with the Civil Service Reform Act (5 U.S.C. § 3105) and the NLRA (29 U.S.C. § 154(a)). *See WestRock Servs., Inc.*, 366 NLRB No. 157, slip op. at 2-3 (2018). Once an ALJ issues "a proposed report, together with a recommended order," 29 U.S.C. § 160(c), parties may file "exceptions" on any contested issue, asking the Agency's Board to rule upon the matter. 29 C.F.R. § 102.46(a).

Removal of ALJs is defined by statute. With a handful of listed exceptions, 5 U.S.C. § 7521(a) states that "[a]n action may be taken against an [ALJ] . . . by the agency in which the [ALJ] is employed only for good cause established and determined by the [MSPB] on the record after opportunity for hearing before the [MSPB]." Under this formulation, removing an ALJ would require two steps: (1) the NLRB's Board must bring an action to remove an ALJ; and (2) the MSPB must determine that good cause for removal has been established. A statute also restricts the removal of MSPB members. 5 U.S.C. § 1202(d) ("Any member may be

removed by the President only for inefficiency, neglect of duty, or malfeasance in office.").

The NLRB's Board is comprised of five members who are appointed by the President with the advice and consent of the Senate and serve staggered terms of up to five years. 29 U.S.C. § 153(a). Section 3(a) of the NLRA states that Board members may be removed only "for neglect of duty or malfeasance in office." *Id.* The Board issues final decisions in ULP cases under Section 10(c) (29 U.S.C. § 160(c)), conducts and certifies the outcome of representation elections under Section 9 (*id.* § 159), and promulgates rules and regulations under Section 6 (*id.* § 156).

Under Section 10(c) of the NLRA, the Board is given "broad discretionary" authority to remedy ULPs by ordering "such affirmative action . . . as will effectuate the policies of this Act." *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 215-16 (1964) (citing 29 U.S.C. § 160(c)). The Board has traditionally sought to "restor[e] the situation, as nearly as possible, to that which would have obtained but for the [ULP]." *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194 (1941). Thus, the Board has often—with court approval—required parties who commit ULPs to not only pay back wages, but also to compensate employees for other foreseeable pecuniary losses attributable to a party's unlawful conduct. *Thryv,*

*Inc.,* 372 NLRB No. 22 (2022), slip op. at *11-13 (collecting cases), *enf. denied on other grounds*, 102 F.4th 727 (5th Cir. 2024).

Orders of the Board, however, are not self-enforcing. Section 10(e) of the NLRA provides that the Board must seek enforcement of its orders from an appropriate court of appeals for such orders to become enforceable as judicial injunctions. *Id.* § 160(e). Conversely, any "aggrieved person" may seek to set aside a final Board order in a court of appeals under Section 10(f) of the NLRA. *Id.* § 160(f). Only upon enforcement by a court of appeals does a Board order become fully effective against a respondent. *Mitchellace, Inc. v. NLRB*, 90 F.3d 1150, 1159 (6th Cir. 1996) ("An NLRB remedial order is not self-executing, and the respondent can violate it with impunity until a court of appeals issues an order enforcing it.") (cleaned up).

## II. Procedural History

### A. *Administrative proceedings*

Local 174 of the United Automobile Aerospace and Agricultural Implement Workers of America ("Union"), filed two ULP charges with the NLRB (Case Nos. 07-CA-320369 and 07-CA-336485), alleging that YAPP committed violations of the NLRA while its workers sought to form a union. Compl., R.1, PageID.4-6. Following an investigation, on April 9, 2024, the Regional Director for Region 7 issued a Complaint and Notice of Hearing in Case 07-CA-320369, and set a date

for hearing before an NLRB ALJ. Declaration of Timothy K. Garrett ("Garrett Decl."), Ex. 2, R.4-2, PageID.91-97. On April 22, 2024, YAPP filed an answer, which it amended on July 25, 2024. Compl., R.1, PageID.6. Subsequently, on August 6, 2024, the Regional Director issued an Order Consolidating Cases, Consolidated Complaint and Notice of Hearing, consolidating Case 07-CA-320369 and 07-CA-336485, and alleging that YAPP violated the NLRA by, *inter alia*, discharging an employee for engaging in NLRA-protected activities, interfering with employees' NLRA rights through threats and other coercive conduct, and refusing to recognize and bargain with the Union. Garrett Decl., Ex. 2, R.4-2, PageID.101-10. Consistent with the Board's goal of restoring the status quo for individuals affected by ULPs, the Regional Director included in the complaint a request to "make whole" employees who suffered "direct or foreseeable pecuniary harms" as a result of YAPP's unlawful conduct. *Id.*, PageID.108. YAPP answered the Consolidated Complaint on August 20, 2024. Br. 8.[1] Pursuant to the Regional Director's Consolidated Complaint, a hearing before an NLRB ALJ was scheduled for September 10, 2024. Garrett Decl., Ex. 2, R.4-2, PageID.110.[2]

---

[1] References to YAPP's principal brief in this matter, ECF 36, are to "Br. X," referring to the document's internal pagination.

[2] Since then, the ULP hearing has concluded, and the parties have filed their post-hearing briefs. *See* Notice of Subsequent Events, ECF 43-1, at ¶ 1 (Feb. 25, 2025). Accordingly, the case is pending the assigned ALJ's disposition.

### B. District court proceedings

On August 19, 2024, YAPP filed a complaint in the district court for the
Eastern District of Michigan, alleging that the NLRB's five Board members and its
ALJs are unconstitutionally insulated from removal, the NLRB's adjudicative
process—particularly the availability of remedies under *Thryv*—violates the
Seventh Amendment, and the NLRB's purported combination of functions violates
separation of powers and the due process clause. Compl., R.1. YAPP sought a
declaration that removal restrictions for Board members and ALJs are
unconstitutional and that YAPP has been deprived of its Seventh Amendment jury-
trial right. *Id.*, PageID.26-27. It further sought an order preliminarily enjoining the
NLRB from proceeding on its administrative complaint and permanently enjoining
the NLRB from "implementing or carrying out" the statutory removal restrictions
for Board members and ALJs. *Id.*, PageID.27. On August 19, 2024, YAPP moved
for a temporary restraining order and expedited preliminary injunction. Mot. for
Temporary Restraining Order and Expedited Preliminary Injunction, R.4.

On September 9, 2024, the district court denied YAPP's motion, finding a
number of fatal deficiencies. First, the district court found that YAPP had not
demonstrated a likelihood of success on the merits of its constitutional claims.
Ord., R.29, PageID.312-36. With respect to YAPP's challenge to removal
restrictions for NLRB Board members, the district court held that such removal

restrictions were constitutional under the Supreme Court's decision in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). Ord., R.29, PageID.314.

The district court further held that YAPP had not shown a likelihood of success for its challenge to removal restrictions for NLRB ALJs. *Id.*, PageID.319-22. The district court observed that "[g]enerally speaking, it is constitutional for Congress to protect inferior officers with 'good cause' removal restrictions," *id.*, PageID.319 (citing *Morrison v. Olson*, 487 U.S. 654, 692-93 (1988); *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 495 (2010)), and in part relied on the Sixth Circuit's earlier decision in *Calcutt v. FDIC*, which expressed "'doubt[s]' that those subject to agency enforcement proceedings 'could establish a constitutional violation from the ALJ removal restrictions' enacted by Congress." *Id.*, PageID.320 (citing *Calcutt*, 37 F.4th 293, 319 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023)).

Beyond its holdings on the merits of YAPP's removal-restrictions challenges, the district court held that YAPP had "failed to show that it suffered the requisite causal harm necessary to bring its removal claims," *id.*, PageID.322, or in other words, had not "show[n] that the removal restriction[s] *specifically* impacted the agency actions of which they complain[]," *id.*, PageID.324. The district court rejected YAPP's position that the causal-harm standard only applies to requests for retrospective relief, *id.*, PageID.323-24, as well as YAPP's argument that the

Supreme Court's decision in *Axon Enterprise, Inc. v. FTC* mandated a finding of irreparable harm. *Id.*, PageID.324 (citing *Axon*, 598 U.S. at 175).

Additionally, the district court also held that YAPP had shown no likelihood of success on the merits for its Seventh Amendment claim. *Id.*, PageID.326. As a preliminary matter, the district court found that it did not have jurisdiction over this claim, as YAPP had "likely fail[ed] all three *Axon* subject-matter jurisdiction factors." *Id.*, PageID.328. Furthermore, the court held that even if it had jurisdiction, YAPP was not likely to succeed on the merits of its Seventh Amendment claim because the public-rights exception likely shielded NLRB proceedings from the Seventh Amendment. *Id.*, PageID.332. The court also held that YAPP's claim "fails for another reason—the NLRB's *Thryv* remedies are equitable in nature." *Id.*

On YAPP's last constitutional claim challenging a purported unconstitutional combination of agency functions, the court found no likelihood of success because "[l]ongstanding Supreme Court precedent . . . makes clear that the Board is not precluded from engaging in policy-making through adjudicative proceedings." *Id.*, PageID.335 (citing *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974)). The court also stated that its Seventh Amendment analysis provided further bases for denying YAPP's separation-of-powers constitutional claim, to the extent that claim

was "indistinguishable from [YAPP's] Seventh Amendment claim." *Id.*, PageID.336.

In addition to finding that YAPP had not established a likelihood of success on the merits of any of its claims, the district court held that YAPP had not succeeded in showing irreparable harm. *Id.* With respect to YAPP's removal claims, the court reiterated that YAPP had "failed to show under prevailing law that its mere subjection to administrative proceedings before an agency whose officials possess unconstitutional removal restrictions, alone, constitutes irreparable harm." *Id.* (quoting *Leachco, Inc. v. CPSC*, 103 F.4th 748, 753 (10th Cir. 2024), *cert. denied*, No. 24-156, 2025 WL 76435 (U.S. Jan. 13, 2025)).

And with respect to YAPP's Seventh Amendment claim, the district court reasoned that YAPP failed to show irreparable harm because it could ultimately obtain relief by appealing any agency order awarding remedies YAPP believed impermissible, given that Board orders are not self-enforcing. *Id.*, PageID.337. Finally, the district court noted that YAPP's requested remedy, an injunction enjoining the entire administrative proceeding, was too broad because "[a]t most, the appropriate relief would be a preliminary injunction prohibiting the NLRB from seeking [the remedies at issue] in YAPP's administrative proceeding, not halting the entire administrative process." *Id.*, PageID.337-38.

### C.    The Sixth Circuit denies YAPP's motion for an injunction pending appeal.

After the district court denied YAPP's requested preliminary injunction, on September 17, 2024, YAPP moved this Court for an injunction pending appeal, ECF 15-1.[3] A unanimous motions panel of this Court denied the injunction pending appeal, holding that YAPP's failure to show causal harm was fatal to YAPP's ability to show a likelihood of success on the merits under Sixth Circuit precedent. *YAPP USA Automotive Sys., Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598, at *2-3 (6th Cir. Oct. 13, 2024) (citing *Calcutt*, 37 F.4th at 313-17). And subsequently, the Supreme Court denied YAPP's application for a writ of injunction. 2024 WL 4508993, at *1 (U.S. Oct. 15, 2024) (Kavanaugh, J., in chambers).

## SUMMARY OF THE ARGUMENT

Because this case involves or grows out of a labor dispute, as defined by the Norris-LaGuardia Act, 29 U.S.C. § 101 *et. seq.*, and because Norris-LaGuardia's jurisdiction-limiting provisions apply even to cases that do not directly involve employers and employees, federal courts lack jurisdiction to issue an injunction based on YAPP's claims.

But if injunctive relief is available, the judgment should be affirmed because YAPP is unable to meet the requirements for receiving a preliminary injunction.

---

[3] YAPP based its motion for an injunction pending appeal solely on its removal claims. ECF 15-1, at 5-15.

First, it is unlikely that any of YAPP's claims would succeed on their merits. With respect to YAPP's claims that the NLRB's Board members and ALJs are unconstitutionally protected from removal, YAPP has utterly failed to show that any of those "removal restrictions specifically impacted the agency actions of which [it] complains" in a way that adversely affected it. *Calcutt*, 37 F.4th at 315. That failure, as the district court and this Court have concluded, is sufficient on its own to deny the relief sought. *See YAPP*, 2024 WL 4489598, at *2-3 (denying YAPP's motion for injunction pending appeal in this matter); Ord., R.29, PageID.322-26, 336-37. The President's recent removal of former Member Wilcox, *see* Notice, ECF 43-1, at ¶ 3, further supports the lack of causal harm because the President did not treat the NLRA's statutory removal restrictions as limiting his ability to remove that official with or without cause. *See Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) ("*CFSA*") (the "three requisites for proving harm" include "a perceived inability to remove the actor"), *reversed and remanded on other grounds*, 601 U.S. 416 (2024). And in any event, YAPP would not be entitled to an extraordinary injunction of NLRB proceedings when the most it can obtain at final judgment is severance.

YAPP's Seventh Amendment claim and its related combined-functions claim are also unlikely to succeed on the merits. Both fall outside the district court's jurisdiction under *Axon*, 598 U.S. 175. Moreover, since the NLRB enforces public

rights, the Seventh Amendment simply does not apply, and even if it did, the challenged ULP proceedings do not involve legal claims or remedies. To the extent that YAPP's combined-functions claim meaningfully differs from its Seventh Amendment challenge, the claim is unsupported and foreclosed by binding case law.

Second, YAPP has not carried its burden to establish that it will suffer irreparable harm from the absence of a preliminary injunction. As to YAPP's removal-restrictions challenges, YAPP has failed to show the requisite causal link between the challenged provisions and the alleged harm of being subject to NLRB proceedings. And as to its Seventh Amendment and combined-function claims, YAPP is unable to show irreparable harm because that harm is not imminent, certain, or indeed even irreparable. The Board has not awarded any remedy in the ULP case, let alone the specific type of make-whole remedy that forms the basis for these claims. Even if the Board were to order the complained-of make-whole remedy, YAPP could seek judicial review by a court of appeals before ever having to comply. In any event, at most, the appropriate relief would be a preliminary injunction prohibiting the NLRB from seeking any remedy that requires a jury trial—not a broad injunction preventing the Board from ordering even unchallenged, indisputably equitable remedies.

Third, the balance of the equities and the public interest factors, which merge when the government is a party, weigh decisively against the grant of an injunction here. The NLRA creates no private right of action. Proceeding before the NLRB is the only option available to YAPP's employees for vindication of their NLRA rights. Depriving employees of the only avenue to safeguard the exercise of their NLRA rights cannot serve the public interest, especially when YAPP may obtain an adequate remedy in a court of appeals if the Board ultimately issues an adverse decision. Accordingly, granting an injunction would undermine, not serve, the public interest.

## STANDARD OF REVIEW

This Court reviews a district court's denial of a preliminary injunction for abuse of discretion and reviews its legal conclusions *de novo*. *Cath. Healthcare Int'l, Inc. v. Genoa Charter Twp.*, 82 F.4th 442, 447 (6th Cir. 2023). Moreover, this Court views a preliminary injunction as an "extraordinary remedy" that should be granted only if "the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

To obtain a preliminary injunction a plaintiff must make "a clear showing" that it is "entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008), by establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest," *id.* at 20. The third and fourth factors—harm to others and the public interest— "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Benisek v. Lamone*, 585 U.S. 155, 158-59 (2018) (per curiam) (explaining that balance of equities and public interest factors may overcome other two factors even in cases involving constitutional claims).

## ARGUMENT

### I.  As a threshold matter, the Norris-LaGuardia Act jurisdictionally bars the injunctive relief YAPP seeks.

It is well-settled that "every federal appellate court has a special obligation to 'satisfy not only its own jurisdiction, but also that of the lower courts in a cause under review.'" *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 593 (2004) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)); *see In re Federated Dep't Stores, Inc.*, 328 F.3d 829, 833 (6th Cir. 2003). Here, the Norris-LaGuardia Act, 29 U.S.C. § 101 *et. seq.*, jurisdictionally bars the injunctive relief YAPP sought from the district court.

Absent a statutory exception, Congress has jurisdictionally barred all "court[s] of the United States" from issuing injunctions "in any case involving or growing out of a labor dispute." 29 U.S.C. § 107; *see Boys Markets, Inc. v. Retail*

*Clerks Union*, 398 U.S. 235, 253 (1970).[4] The underlying ULP case involves, *inter alia*, allegations of unlawful discharge of an employee for engaging in NLRA-protected activity; interference with the exercise of NLRA-protected rights through threats and coercive conduct; and a refusal to recognize or bargain with the Union. Garrett Decl., Ex. 2, R.4-2, PageID.101-10. This lawsuit therefore unquestionably "grows out of" a labor dispute, circumstances which include "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." 29 U.S.C. § 113.

As at least two district courts have recently concluded, Norris-LaGuardia precludes any grant of an injunction in these very circumstances. *See Amazon.com Servs. LLC v. NLRB*, No. 2:24-cv-09564-SPG-MAA, 2025 WL 466262, at *2-5 (C.D. Cal. Feb. 5, 2025), *appeal docketed*, No. 25-886 (9th Cir. Feb. 11, 2025); *VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 1:24-cv-02577, 2024 WL 4817175, at *7 (D.D.C. Nov. 17, 2024), *appeal docketed*, No. 25-5006 (Jan. 22, 2025). A third district court, hearing a challenge similar to YAPP's, was "unpersuaded" by the argument that Norris-LaGuardia did not bar injunctive relief

---

[4] *Axon* does not affect the Norris-LaGuardia's *explicit* jurisdictional bar, because that case's reasoning is limited to *implicit* bars. *Axon*, 598 U.S. at 185; *Moats v. Nat'l Credit Union Admin. Board*, 2024 WL 1724271, at *2-4 (S.D. Tex. Apr. 9, 2024), *appeal docketed*, No. 24-40259 (5th Cir. Apr. 22, 2024).

on the basis that the dispute was between an employer and the NLRB. *Nexstar Media, Inc. Grp. v. NLRB*, No. 4:24-cv-1415, 2024 WL 4127090, at *5 (N.D. Ohio Aug. 26, 2024) (dismissing case for lack of jurisdiction on other grounds). It noted that "[d]espite Plaintiff's arguments to the contrary," what mattered is that the court's intervention would "divert the NLRB's ability to administratively resolve the dispute initiated by [a labor union]." *Id.* This makes sense, because the Norris-LaGuardia Act's jurisdictional limitations apply "regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113. And even where a statutory exception to the Norris-LaGuardia Act applies, any such injunction also requires specific factual findings that YAPP has not attempted to prove with evidence. *See id.* § 107. Accordingly, YAPP has not met its burden of establishing any exception to these jurisdictional limitations on the district court's power to issue injunctive relief.

## II. The district court correctly denied YAPP's request for a preliminary injunction.

### A. YAPP is unlikely to succeed on its claims.

#### 1. YAPP cannot succeed on its removal claims because it fails to show causal harm and because severance is the proper remedy for those claims.

YAPP claims, Br. 14-28, that removal restrictions for the NLRB's five-seat Board and ALJs are unconstitutional. However, to succeed on either of those claims, YAPP must show that but for those removal restrictions, the President

would have tried to remove those officials and that such removal would have some causal nexus to some specific agency action. YAPP has made no effort to allege, much less produce evidence, that the removal restrictions it challenges caused it harm.

        a.      YAPP's failure to allege causal harm is fatal to all of its removal claims.

The same core problem that doomed YAPP's emergency motion for an injunction and stay pending appeal, ECF 15—which this Court flatly denied, *YAPP* 2024 WL 4489598—is also fatal to the merits of its appeal: YAPP has failed to show that the removal restrictions it challenges actually "cause[d] harm." *Collins v. Yellen*, 594 U.S. 220, 260 (2021); *accord Calcutt*, 37 F.4th at 316. The outcome here should be no different from the outcome the motions panel reached, as both questions are assessed within the same "preliminary injunction analysis framework." *YAPP*, 2024 WL 4489598, at *3.

The analysis starts with *Collins*. In that case, the Supreme Court refused to void actions taken by the Federal Housing Finance Agency based on unconstitutional removal restrictions for the agency's Director. 594 U.S. at 257-58. The Court explained that litigants needed to show causal harm (sometimes referred to as "compensable harm"), *e.g.*, if "the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Id.* at 259-60.

18

The Sixth Circuit subsequently confirmed that *Collins* "provides a clear instruction: To invalidate an agency action due to a removal violation, that constitutional infirmity must 'cause harm' to the challenging party." *Calcutt*, 37 F.4th at 316 (collecting cases in agreement from "sister circuits"). Such a showing cannot be satisfied by "vague, generalized allegations"; rather, "a more concrete showing [i]s needed." *Id.* at 317; *see also CFSA*, 51 F.4th at 632 (stating that the "three requisites for proving harm" are "a substantiated desire by the President to remove the … actor; (2) a perceived inability to remove the actor … ; and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor"); *see also Collins v. Dep't of the Treasury*, 83 F.4th 970, 982-84 (5th Cir. 2023) (failure to allege causal harm requires dismissal for failure to state a claim).

Here, the district court below correctly observed that even if the removal restrictions at issue were in fact "deemed unconstitutional, YAPP has failed to show that it suffered the requisite causal harm necessary to bring its removal claims." Ord., R.29, PageID.322. Nor has YAPP shown that such provisions will inflict harm in the future—such as by "possibly altering the Board's [or ALJ's] behavior," *Calcutt*, 37 F.4th at 317, or by preventing the President from removing the now-assigned ALJ or the yet-to-act Board members, *id.*; *see also Collins*, 594 U.S. at 259-60; *CFSA*, 51 F.4th at 632; *infra* at 27-28. YAPP instead presumes that

the mere existence of allegedly unlawful removal restrictions is harm in and of itself. *See* Br. 31-32 (claiming that causal harm is shown by the fact that "without court intervention [YAPP] would be subject to the irreparable harm of having to undergo an illegitimate proceeding before an illegitimate decisionmaker").

But in discussing YAPP's claims, this Court correctly pointed out that, under *Collins*, the complaining party "need[s] to show that the unconstitutional removal restrictions—and *not simply the agency's actions*—would 'cause harm.'" *YAPP*, 2024 WL 4489598, at *2 (quoting *Collins*, 594 U.S. at 260) (emphasis added). Moreover, the showing of causal harm must demonstrate how "the removal restriction[s] specifically impacted the agency actions" or proceedings upon which the complaint is based. *Id.* (quoting *Calcutt*, 37 F.4th at 315). In so holding, this Court's position is in harmony with every circuit that has weighed in on this issue. *See Rodriguez v. Soc. Sec. Admin.*, 118 F.4th 1302, 1314-15 (11th Cir. 2024); *Leachco*, 103 F.4th at 756-57;[5] *Bhatti v. Fed. Housing Fin. Agency*, 97 F.4th 556, 560-61 (8th Cir. 2024); *CFPB v. Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th

---

[5] YAPP incorrectly asserts that the Tenth Circuit's *Leachco* case was not only wrongly decided but also failed to "analyze or even acknowledge the harm alleged here." Br. 32. On the contrary, *Leachco* discussed the *Collins* causal-harm framework in detail, and in the same context of a removal-restriction claim seeking to halt an ongoing administrative proceeding. *See Leachco*, 103 F.4th at 755-58. The Tenth Circuit correctly interpreted *Collins* to require parties "to show that the removal provision actually inflicted harm on them," *id.* at 756, and held this requirement applies regardless of whether prospective or retrospective relief is sought, *id.* at 757.

599, 614-15 (3d Cir. 2024), *cert. denied*, No. 24-185, 2024 WL 5112295, at *1 (U.S. Dec. 16, 2024); *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023); *Collins v. Dep't of the Treasury*, 83 F.4th at 982-84; *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023), *cert. denied,* 144 S. Ct. 2579 (2024); *CFSA*, 51 F.4th at 632-33; *Integrity Advance, LLC v. CFPB*, 48 F.4th 1161, 1170 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 2610 (2023), *and CFPB v. CashCall, Inc.*, 35 F.4th 734, 742-43 (9th Cir. 2022).

Given this high burden, it is unsurprising that many courts—including the district court in this case—have repeatedly denied injunctions sought on removability grounds. *See* Ord., R.29, PageID.322-26; *see also Leachco,* 103 F.4th at 760-65; *HonorHealth v. NLRB*, No. CV-24-03009-PHX-DJH, 2024 WL 4769772, at *3-4 (D. Ariz. Nov. 13, 2024) (denying motion for temporary restraining order), *dismissed*, No. CV-24-03009-PHX-DJH (D. Ariz. Jan. 23, 2025); *Spring Creek Rehab. & Nursing Ctr. LLC v. NLRB*, No. 24-09016, 2024 WL 4690938, at *3 (D.N.J. Nov. 6, 2024) (denying motion for injunction pending appeal); *Ares Collective Grp. LLC v. NLRB*, No. CV-24-00517-TUC-SHR, 2024 WL 4581436, at *2 (D. Ariz. Oct. 25, 2024) (denying motion for temporary restraining order), *dismissed*, No. CV-24-00517-TUC-SHR (D. Ariz. Jan. 29, 2025); *Cortes v. NLRB*, No. 1:23-cv-02954, 2024 WL 1555877, at *7 (D.D.C. Apr. 10, 2024) (dismissing the plaintiffs' complaint for injunctive and declaratory

relief), *appeal docketed*, No. 24-5152 (D.C. Cir. June 10, 2024); *cf. Kerwin v. Trinity Health Grand Haven Hosp.*, No. 1:24-cv-445, 2024 WL 4594709, at*4-5 (W.D. Mich. Oct. 25, 2024) (denying motion for judgment on the pleadings filed by removal-restrictions challenger), *appeal docketed*, No. 24-1975 (6th Cir. Nov. 5, 2024). The same result should follow here.

YAPP relies heavily on its view that *Axon* tacitly overruled *Calcutt* (and perhaps parts of *Collins* as well), arguing that this Court is no longer bound by *Calcutt* and must reverse it. Br. 28, 33-34.[6] But the motions panel in this case correctly disagreed with YAPP's position on this matter, noting that *Axon* was limited to resolving whether federal district courts have jurisdiction to hear collateral constitutional challenges to agency authority outside the statutory channels of judicial review, and that it did not establish that "being subjected to

---

[6] For this reason, YAPP, Br. 33-34, takes issue with—of all things—this Court's reliance on *Salmi v. Secretary of Health & Human Services*, 774 F.2d 685 (6th Cir. 1985), in its denial of YAPP's motion for injunction pending appeal. *YAPP*, 2024 WL 4489598, at *3. *Salmi* states the uncontroversial principle that a prior panel's decision "remains controlling authority unless an inconsistent decision of the United States Supreme Court *requires modification* of the decision or this Court sitting *en banc* overrules the prior decision." 774 F.2d at 689 (emphasis added). More precisely, judges on this Court "are bound by [their] prior published opinions unless the Supreme Court *has intervened*." *Booker v. LaPaglia*, 617 F. App'x 520, 524 (6th Cir. 2015) (emphasis added). And this Court has clarified that a panel "is bound to follow the prior published decisions of this court, *without regard for whether they might be mistaken in their reading of the Supreme Court's decisions*." *United States v. Conces*, 507 F.3d 1028, 1039 n.10 (6th Cir. 2007) (emphasis added).

unconstitutional agency authority" allowed parties to bypass the causal-harm requirement. *YAPP*, 2024 WL 4489598, at *3 (quoting *Axon*, 598 U.S. at 180); *accord Leachco*, 103 F.4th at 758-59.

In any case, YAPP's misunderstanding of *Collins*, and its application in *Calcutt*, leads YAPP to argue that it would be unfair for a party to be expected to meet "*some additional* causal harm requirement" when the relief sought is merely to avoid a purportedly unconstitutional administrative proceeding. Br. 31; *see also id.* at 29 (citing *Cochran v. SEC*, 20 F.4th 194, 210 n.16 (5th Cir. 2021) (en banc), *aff'd sub nom. Axon Enter. Inc. v. FTC*, 598 U.S. 175 (2023)). On the contrary, causal harm must be demonstrated regardless of the type of relief sought, prospective or retrospective. *See Calcutt*, 37 F.4th at 316 (*Collins* causal-harm "inquiry focuses on whether a 'harm' occurred that would create an entitlement to a remedy, rather than the nature of the remedy, and our determination as to whether an unconstitutional removal restriction 'inflicted harm' remains the same whether the petitioner seeks retrospective or prospective relief[.]").[7]

---

[7] YAPP argues that it is impossible to show a particular injury prospectively when a ULP respondent does not know, immediately upon the issuance of an NLRB complaint, which ALJ will ultimately hear the case, or if the ALJ will do something that "the President might find objectionable." Br. 30. While it may be difficult at that stage of litigation to show harm, this is an intended feature of the *Collins* harm standard, which recognizes that an infirm removal provision "does not strip [an official] of the power to undertake the other responsibilities of his office," *i.e.*, it does not render that official an "illegitimate decisionmaker" unless

YAPP further argues, Br. 28, that the Supreme Court's reversal of *Calcutt* on other grounds "calls into question [its] precedential value, especially in light of *Axon*." To be clear, the petition for a writ of certiorari in *Calcutt* posed two questions: (1) whether this Court was required to remand the case back to the agency after determining that the agency had applied the wrong legal standards; and (2) "[w]hether *Collins v. Yellen* . . . requires separation-of-powers challengers to offer concrete proof of prejudice as a prerequisite to courts resolving separation-of-powers challenges to removal restrictions on the merits." Petition for Writ of Certiorari, at *i, *Calcutt*, 598 U.S. 623 (2023) (No. 22-714), 2023 WL 1475313. The Supreme Court explicitly granted Calcutt's petition only on "the first question," *Calcutt*, 598 U.S. at 624, and made no mention of the second constitutional question whatsoever. Moreover, the Supreme Court's *Calcutt* decision was issued a little over a month *after* the Supreme Court issued its *Axon* decision. These facts, if anything, show that this Court's *Calcutt* decision is sound under Supreme Court jurisprudence and remains so after *Axon*.

Finally, YAPP points out, Br. 25-26, that two district courts within the Fifth Circuit and a district court in the District of Columbia recently issued decisions on removal restrictions that seemed to dispense with the *Collins* causal-harm requirement. But the D.C. district court decision involved solely declaratory relief,

the plaintiff makes a cognizable showing of harm. *Collins*, 594 U.S. at 258 n.23.

which is not at issue in this appeal. *See VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 1:24-CV-02577 (TNM), 2024 WL 5056358 (D.D.C. Dec. 10, 2024), *appeal docketed*, No. 25-5006 (D.C. Cir. Jan. 22, 2025).[8] And, in the words of the district court below, the other non-binding decisions—which are now consolidated on appeal to the Fifth Circuit—"fail[ed] to persuasively explain why the *Collins* harm standard did not apply to the removal claims there." Ord., R.29, PageID.325; *see Energy Transfer, LP v. NLRB*, 742 F. Supp. 3d 755 (S.D. Tex. 2024), *appeal docketed*, No. 24-40533 (5th Cir. argued Feb. 5, 2025); *Space Expl. Techs. Corp. v. NLRB*, 741 F. Supp. 3d 630 (W.D. Tex. 2024), *appeal docketed*, No. 24-50627 (5th Cir. argued Feb. 5, 2025).

> b.  Preliminary injunctive relief is unavailable where severance can resolve the threat of appearing before an unconstitutionally insulated adjudicator.

Beyond YAPP's failure to allege causal harm, its removal-restrictions claims provide no basis for preliminary injunctive relief because severance of any unconstitutional removal restrictions would provide a full remedy. There is "a

---

[8] Notably, the *VHS* court had previously *denied* the plaintiff's motion to enjoin the NLRB's proceedings in that case. Specifically, the court found that it "lacks the authority to issue injunctive relief due to the jurisdiction-stripping provisions of the Norris-LaGuardia Act." *VHS*, 2024 WL 4817175, at *2. The district court also found that, just like YAPP here, the plaintiff in *VHS* erroneously relied on *Axon* to avoid making a showing of irreparable harm for the purposes of an injunction, but the "precedents are clear that structural harms—unaccompanied by more tangible injuries—do not satisfy the irreparable injury test" for the purposes of a preliminary injunction. *VHS*, 2024 WL 4817175, at *6.

strong presumption of severability," under which courts "invalidate[] and sever[] unconstitutional provisions from the remainder of the law rather than raz[e] whole statutes or Acts of Congress." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 625, 627 (2020). Generally, statutes are severable if "the remainder of the law is capable of functioning independently and thus would be fully operative as a law." *Id.* at 630. And "it is fairly unusual for the remainder of a law not to be operative." *Id.* at 628. Should this Court find the removal restrictions at issue to be unconstitutional, it could sever the offending portions of the relevant statutes.[9] This would be consistent with how the Supreme Court has dealt with unlawful removal restrictions. *See Collins*, 594 U.S. at 257-60; *Seila Law LLC v. CFPB*, 591 U.S. 197, 232-38 (2020); *Free Enter. Fund*, 561 U.S. at 508-10.

Because severance would be the appropriate final remedy, YAPP is not entitled to an injunction (preliminary or otherwise) of the administrative proceedings. *See Space Expl. Techs. Corp. v. Bell*, 701 F. Supp. 3d 626, 635 (S.D. Tex. 2023) (holding that the plaintiff "ha[d] not shown it is entitled to an injunction instead of severance on its removal claim"); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *Schlesinger v.*

---

[9] It is not necessary for this Court to decide now precisely how severance would operate at final judgment in order to deny the present motion.

*Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974) (when "the relief sought produces a confrontation with one of the coordinate branches of the Government," the "framing of relief" may be "no broader than required" to address any "concrete injury"). If the only ultimate remedy YAPP can obtain is severance, then issuing an injunction now affords YAPP a greater remedy than it would obtain at final judgment, incentivizing not only copycat lawsuits but also the avoidance of a final judgment that would cause the preliminary injunction to expire.

        c.        The district court's denial of YAPP's request for preliminary injunction should be affirmed regardless of the constitutionality of the challenged removal restrictions.

As the motions panel and the district court found, YAPP's failure to show causal harm is a sufficient basis on which to deny the request for a preliminary injunction. *See YAPP*, 2024 WL 4489598, at *2-3 (concluding that "these separation of powers questions are both complicated and consequential, but we need not address them at the preliminary injunction stage" because "[e]ven if the removal protections for NLRB Board members and ALJs are unconstitutional, YAPP is not automatically entitled to an injunction"); Ord., R.29, at PageID.322-26, 336-37. Accordingly, the merits of the claims need not be addressed to deny the relief sought.

While this appeal was pending, and just within the past month, President Trump removed Gwynne A. Wilcox as a member of the Board, and she has brought

suit challenging the legality of that action. *See* Notice, ECF 43-1, at ¶¶ 3, 5; *Wilcox v. Trump*, No. 1:25-cv-0334 (D.D.C. filed Feb. 5, 2025). The Acting Solicitor General has since taken the position that the statutory restrictions on the removal of NLRB members and the multiple layers of removal restrictions for ALJs violate the Constitution. *See* Notice, ECF 43-1, at ¶ 6, Ex. B, C. In accordance with the Acting Solicitor General's position, the NLRB will not continue to defend the merits of these removal restrictions.

Nevertheless, the President's removal of former Member Wilcox diminishes, if not wholly eliminates, YAPP's ability to show causal harm arising from Board-member removal restrictions. This is because a removal-restrictions challenger must show (among other things) that the official with removal authority had "a perceived inability to remove the actor due to the infirm provision." *CFSA*, 51 F.4th at 632; *see also Collins*, 594 U.S. at 260 (noting two scenarios under which causal harm might be shown, involving either the President's perceived inability to remove a removal-protected official or a district court decision preventing the President from removing the removal-protected official). An effectuated removal, as happened here, is inconsistent with "a perceived inability to remove."

## 2. ***YAPP's Seventh Amendment claim is beyond the district court's subject-matter jurisdiction and contrary to controlling law.***

YAPP's Seventh Amendment claim rests on the possibility that a future Board order may require it to reimburse the Charging Party for certain foreseeable losses, as part of a make-whole remedy under the principles set forth in *Thryv, Inc.*, 372 NLRB No. 22 (2022). As a preliminary matter, YAPP cannot show that the district court had subject-matter jurisdiction over this claim because it meets none of the three factors the Supreme Court considered in *Axon* for non-statutory review. 598 U.S. 175; Ord., R.29, PageID.326-30.[10] Applying factors earlier developed in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), *Axon* asks: (1) does "precluding district court jurisdiction . . . foreclose all meaningful judicial review"; (2) is the challenge "wholly collateral" to the agency's normal proceedings; and (3) does the claim fall within the "agency's expertise?" 598 U.S. at 185-86 (cleaned up). None of the three *Axon* factors supports YAPP's Seventh Amendment claim.

---

[10] YAPP downplays the importance of the district court's conclusion that it did not have jurisdiction over YAPP's Seventh Amendment and separation-of-powers claims. *See* Br. 40. But the district court's use of probabilistic language in discussing jurisdiction simply reflects the standards of the preliminary-injunction framework and should not dissuade this Court from affirming the district court's persuasive conclusion that it lacked jurisdiction over these claims. *See* Ord., R.29, PageID.326 ("Indeed, the Court appears to lack jurisdiction to even address [YAPP's Seventh Amendment] claim."); *id.*, PageID.328 ("This claim likely fails all three *Axon* subject-matter jurisdiction factors."); *id.*, PageID.330 ("For these reasons, therefore, the Court questions whether it has jurisdiction to address YAPP's Seventh Amendment argument.").

First, with respect to the "meaningful review" factor, its purpose is to ensure that district courts have subject-matter jurisdiction over "structural constitutional claims" when relief "would come too late to be meaningful" if those claims had to proceed through the normal statutory review channels, *id.* at 191. Here, YAPP's Seventh Amendment claim challenges a particular subset of remedies that *may* result at the end of a specific administrative proceeding. As such, the claim is not a "structural" challenge attacking the very nature of the agency. *See id.* at 191-92; Ord., R.29, PageID.328. To get around this problem, YAPP attempts to disguise its Seventh Amendment challenge as a structural claim, stating that YAPP has a constitutional right to have its Seventh Amendment claim heard by the district court "*before* being subject to an illegitimate decision-maker." Br. 40.[11] But YAPP obscures the fact that an appellate court, in the normal statutory channels of judicial review, can address constitutional challenges to any Board remedy. *See Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 49 (1938) ("[A]ll questions of constitutional right or statutory authority are open to examination by the

_____

[11] YAPP cites *Wagafe v. Biden*, No. 17-CV-00094-LK, 2024 WL 2274349, at *5 (W.D. Wash. May 20, 2024), to support this proposition, even though that case did not involve the Seventh Amendment right to a jury trial and is not binding on this Court. In any case, *Wagafe* dealt with a claim against the United States Citizenship and Immigration Services (USCIS) in which the indefinite suspension of a class of naturalization applications left some applicants "with no judicial recourse" whatsoever, not just with judicial review that was meaningless because it came too late. *Id.*

[reviewing] court."); *see also Ponte v. FDIC*, No. 24-cv-2379, 2024 WL 4730602, at *8 (D.D.C. Oct. 11, 2024) ("It is well-established that the harm resulting from the denial of a jury trial can be remedied on appeal, even after the case has already been tried—the reviewing court simply orders a new trial.") (citing *Tull v. United States*, 481 U.S. 412, 427 (1987), *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 37, 64-65 (1989), and *Solis v. Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 552-53 (1990)).[12]

Moreover, neither of the remaining *Axon* factors suggests that the district court had subject-matter jurisdiction over YAPP's claim. With respect to whether YAPP's claim is "wholly collateral," the determination of what remedy should flow from violations of the NLRA is what the NLRB does on a day-to-day basis; it presents a question of "how [the NLRB's] power [is] wielded," not the agency's "power generally." *Axon*, 598 U.S. at 193; Ord., R.29, PageID.329. And finally, *Axon*'s "expertise" factor suggests that district-court subject-matter jurisdiction over this claim is improper because the Board's power to fashion remedies has

---

[12] Parties have challenged *Thryv* remedies through the normal statutory review channels, including in this Circuit. *See, e.g.*, *NLRB v. Starbucks Corp.*, No. 23-01767 (6th Cir. argued Oct. 31, 2024) (raising statutory and constitutional challenges to *Thryv* remedies); *Int'l Union of Operating Eng'rs, Stationary Eng'rs, Loc. 39 v. NLRB*, 127 F.4th 58, 80-87 (9th Cir. 2025) (enforcing award of *Thryv* remedies); *NLRB v. Starbucks Corp.*, 125 F.4th 78, 95-97 (3d Cir. 2024) (vacating award of *Thryv* remedies on finding that those remedies went beyond the Agency's statutory authority and declining to reach a Seventh Amendment argument).

long been recognized by the Supreme Court as a core area of Board expertise. Ord., R.29, PageID.330; *see, e.g.*, *Phelps Dodge Corp.*, 313 U.S. at 194.

Furthermore, allowing this remedial issue to percolate through the administrative process is particularly appropriate where, as here, the ALJ hearing the case, or the Board on review, might determine that complaint allegations have no merit, or that the requested remedies aren't warranted—thereby obviating any need to address the constitutional issue. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 22-23 (2012) (finding lack of subject-matter jurisdiction where "preliminary questions unique to the employment context may obviate the need to address the constitutional challenge."). The district court thus properly found that YAPP's Seventh Amendment claim satisfies none of the *Axon* factors.[13]

But even assuming subject-matter jurisdiction could be established, the district court also correctly held that YAPP's Seventh Amendment claim is unlikely to succeed on the merits. Ord., R.29, PageID.330-35. In order to implicate the Seventh Amendment, the challenged adjudication must involve a statutory claim that is "legal in nature." *SEC v. Jarkesy*, 603 U.S. 109, 122 (2024) (quoting *Granfinanciera*, 492 U.S. at 53). That answer turns on an examination of the cause

---

[13] Other district courts facing similar claims have found no jurisdiction over plaintiffs' Seventh Amendment challenges. *See, e.g.*, *VHS*, 2024 WL 4817175, at *3-4; *Nexstar Media*, 2024 WL 4127090, at *3-5; *Blankenship v. FINRA*, No. 24-cv-3003, 2024 WL 4043442, at *2-3 (E.D. Pa. Sept. 4, 2024), *appeal docketed*, No. 24-2860 (3d Cir. Oct. 4, 2024).

of action and the remedy that cause of action provides. *Id.* And even where the action involves a legal claim, a court must determine whether the Supreme Court's public-rights cases permit Congress to assign it to agency adjudication without a jury trial. *See Atlas Roofing Co., Inc. v. Occupational Safety Health and Review Comm'n*, 430 U.S. 442 (1977).

The public-rights exception alone is sufficient to defeat YAPP's Seventh Amendment claim. Ord., R.29, PageID.331-32. In *Jarkesy*, the Supreme Court specifically held that Congress could properly insulate even legal remedies from the Seventh Amendment right to a jury trial where the underlying proceeding involves "public rights." 603 U.S. at 126-27. *Jarkesy* found this exception inapplicable in that particular case because the "fraudulent conduct" statutory provisions being enforced there "derive[d] from, and are interpreted in light of, their common law counterparts." *Id.* at 139. But *Jarkesy* left undisturbed the Supreme Court's longstanding, directly on-point precedent holding that the NLRB's unfair-labor-practice proceedings, which involve rights "unknown to the common law," *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937), fall within the public-rights exception. 603 U.S. at 138 (citing *Jones & Laughlin* and its discussion in *Atlas Roofing Co.*, 430 U.S. at 453); *see also id.* at 122 (citing *Curtis v. Loether*, 415 U.S. 189, 193-94 (1974), which distinguished the unique public-rights scheme at issue in *Jones & Laughlin* from other newly created

rights). So, contrary to YAPP's suggestions, Br. 35-36, it is beyond dispute that NLRA rights are public, not private. *See Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 362 (1940) ("The proceeding authorized to be taken by the Board under the National Labor Relations Act is not for the adjudication of private rights . . . . The Board acts in a public capacity to give effect to the declared public policy of the Act[.]"); *Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 543 (1943) (claims arising under the NLRA "vindicate public, not private rights"); *Int'l Union of Operating Eng'rs*, 127 F.4th at 82 ("We conclude that the Board's invocation of *Thryv*'s make-whole relief vindicates a public right.").

But even if the public-rights exception did not apply, YAPP still cannot establish a valid Seventh Amendment claim, because the underlying ULP adjudication is not "legal in nature" as neither "the cause of action [nor] the remedy it provides" support that conclusion. *Jarkesy*, 603 U.S. at 123. A cause of action can be legal in nature if there is a "close relationship" between a statutory claim and a "common law 'ancestor.'" *Id.* at 126 (quoting *Foster v. Wilson*, 504 F.3d 1046, 1050 (9th Cir. 2007)). On appeal, YAPP correctly states that only claims derived from the common law are afforded Seventh Amendment restrictions, *see* Br. 34-35, 38, 42, 44, and even acknowledges that the NLRA claims do not "arise" under common law, *id.*, at 35. *See Jones & Laughlin*, 301 U.S. at 48; *see also NLRB v. Colten*, 105 F.2d 179, 182 (6th Cir. 1939). However, YAPP appears to

argue that the availability of *Thryv* remedies transforms the nature of the NLRA claims, effectively blurring the two prongs of the *Jarkesy* analysis. Br. 36-41; *see Jones & Laughlin*, 301 U.S. at 48; *see also Colten*, 105 F.2d at 182.

Ultimately, neither prong of *Jarkesy* leads to the conclusion that the ULP claims at issue here are legal in nature. First, as explained above, at 33-34, claims under the NLRA have no common law ancestor and have been explicitly recognized by the Supreme Court as "unknown to the common law." *Jones & Laughlin*, 301 U.S. at 48.

Second, *Thyrv* remedies—that is, the make-whole relief[14] authorized by the Board for "direct or foreseeable pecuniary harm" arising from a ULP, 372 NLRB No. 22, slip op. at 1—are not legal remedies. The rationale of *Thryv* rests on the Board's judgment that "[w]e cannot fairly say that employees have been made whole until they are fully compensated for these kinds of pecuniary harms[.]" *Id.* at 9-10. *Thryv* remedies are focused entirely on equitable considerations of restoring the status quo that an unfair labor practice disrupts and ensuring that the victims of

---

[14] YAPP overreads *Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993), to imply that make-whole relief was unavailable in courts of equity. Br. 35. To the contrary, there the Court recognized that "[a]t common law, however, there were many situations . . . in which an equity court could establish purely legal rights and grant legal remedies which would otherwise be beyond its authority." *Id.* at 256 (cleaned up); *see also Jarkesy*, 603 U.S. at 123 (monetary remedies can be equitable if designed "solely to 'restore the status quo'") (quoting *Tull*, 481 U.S. at 422).

unfair labor practices are made whole. *See Int'l Union of Operating Eng'rs*, 127 F.4th at 82 n.11 ("[I]ts make-whole relief is designed 'solely to restore the status quo' so it is equitable in nature." (quoting *Jarkesy*, 603 U.S. at 123) (cleaned up)).

By contrast, in *Jarkesy*, the Court determined that the SEC's civil monetary penalties, which had the potential to far exceed any loss to victims and could have been pocketed directly by the government (as opposed to being returned to victims), clearly were designed to deter conduct, not to make individuals whole. *Jarkesy*, 603 U.S. at 122-26. Thus, the Court concluded that "[s]uch a penalty by definition does not 'restore the status quo' and can make no pretense of being equitable." *Id.* at 124 (quoting *Tull*, 481 U.S. at 422).

YAPP's arguments to the contrary are unavailing. YAPP attempts to cast *Thryv* remedies as entirely novel, asserting that "[f]or nearly 100 years," before *Thryv*, "the Supreme Court has permitted only reinstatement and backpay as available remedies under Section 10(c)." Br. 35. But this is wrong. The *Thryv* dissenting and majority opinions agreed that "the Board for many years has ordered that employees be made whole for a variety of monetary losses suffered as a result of an unfair labor practice." 372 NLRB No. 22, slip op. at 25 (Members Kaplan and Ring, dissenting in relevant part). Before *Thryv*, the Board ordered make-whole relief for things like legal expenses, *Quick v. NLRB*, 245 F.3d 231, 255 (3d Cir. 2001), damaged property, *Napleton 1050, Inc.*, 367 NLRB No. 6, 2018 WL

4694098, at *5 (2018), *enforced*, 976 F.3d 30 (D.C. Cir. 2020), medical expenses, *NLRB v. Louton, Inc.*, 822 F.2d 412, 413-14 (3d Cir. 1987), and lost investment growth, *Lou's Transp., Inc.*, 366 NLRB No. 140, 2018 WL 3570875, at *1 (2018), *enforced*, 945 F.3d 1012 (6th Cir. 2019). *Thryv* is not, therefore, an unprecedented anomaly as YAPP claims, but rather the latest example of the Board exercising its statutory authority to award equitable relief that "restore[s] the status quo." *Jarkesy*, 603 U.S. at 123 (cleaned up).

YAPP also attempts to equate *Thryv* remedies with damages, and accuses the NLRB of attempting to disguise its intent to award compensatory and consequential damages.[15] Br. 39. YAPP cites *United States v. Burke*, 504 U.S. 229, 239 (1992), to support its claim that insofar as the Board seeks "compensatory" damages against YAPP, it is entitled to a jury trial under the Seventh Amendment. Br. 38 n.10. But that case actually illustrates the difference between *Thryv* remedies and damages. In *Burke*, the Supreme Court noted that "[a]lthough [tort] damages often are described in compensatory terms . . . in many cases they are *larger than the amount necessary to reimburse actual monetary loss sustained or even anticipated by the plaintiff*, and thus redress intangible elements of injury that

---

[15] The Board in *Thryv* expressly stated that terms of art like "consequential damages," as used in other areas of the law, are inapt descriptions of make-whole relief designed to undo the effects of an unfair labor practice and advance the policies of the NLRA. *Thryv*, 372 NLRB No. 22, slip op. at 8.

are 'deemed important, even though not pecuniary in their immediate consequences.'" 504 U.S. at 235 (cleaned up) (emphasis added). The Court noted examples of these intangible elements, including emotional distress, pain and suffering, impairment of reputation, loss of standing in the community, and personal humiliation. *Id.* at 235-36. *Thryv* does not authorize these types of intangible remedies, and as such the General Counsel corrected language in the consolidated administrative complaint to properly characterize the remedies sought as part of making employee "whole" in various ways. *See* Garrett Decl., R.4-2, at PageID.104-08. *Contra* Br. 39. This alteration captures the fact that unlike compensatory damages sounding in tort, the relief sought in the ULP case does not go beyond reimbursement for sums actually lost and certainly does not purport to award reimbursement for nonpecuniary or intangible harms. In fact, in *International Union of Operating Engineers*, the Ninth Circuit observed that "[a]lthough not controlling in the NLRA context, *Burke* demonstrates how the Board's make-whole relief under *Thryv is* appropriate" as currently formulated. 127 F.4th at 84 (emphasis added).

For these reasons, while "the remedy [was] all but dispositive" in favor of the challenger in *Jarkesy*, 603 U.S. at 123, it cuts against YAPP here. Accordingly, YAPP could not succeed on the merits of its Seventh Amendment claim, even if the district court had jurisdiction over it.

### 3. ***YAPP is unlikely to establish district-court jurisdiction over or prevail upon its combined-functions claim.***

The district court observed that YAPP's combined-functions argument is "difficult to discern," and that it "appears to merely restate its Seventh Amendment claim." R.29, PageID.335. It is still the case that YAPP's combination of functions argument, Br. 44-48, largely reiterates its Seventh Amendment claim and therefore also fails to clear *Axon*'s jurisdictional hurdles. *See* above at 29-32. To be sure, *Axon* permitted a district court to exercise jurisdiction over the claim that the FTC's "combination of prosecutorial and adjudicative functions . . . renders *all* of its enforcement actions unconstitutional." 598 U.S. at 183 (emphasis added). But such a "fundamental, even existential" challenge, *id.* at 180, bears little resemblance to YAPP's claim, which takes issue with the availability of *Thryv* remedies in the subset of ULP cases involving make-whole relief. *See* Br. 44-48; Compl., R.1, PageID.23-26.

Apart from reiterating its core Seventh-Amendment claim, YAPP appears to make the following additional arguments:

- Because the NLRB is an executive agency, it should not conduct administrative hearings at all, as the "executive power should not and does not extend to adjudication." Br. 44-45. From YAPP's perspective, the NLRB's adjudications are an unconstitutional exercise of judicial power.

- By issuing its *Thryv* decision, the NLRB arrogated to itself the power to "adjudicate private rights." *Id.* at 45. The NLRB has thereby usurped yet another judicial power that should exclusively belong to Article III courts, and the act of claiming that power was itself also an unconstitutional exercise of legislative power. *Id.* at 45-48.

Regarding the first argument, it is well-settled law that the NLRB's decision to rely primarily on adjudication is lawful. *See Bell Aerospace*, 416 U.S. at 294 ("[T]he Board is not precluded from announcing new principles in an adjudicative proceeding and . . . the choice between rulemaking and adjudication lies in the first instance within the Board's discretion."). Moreover, the case that YAPP cites, Br. 45, to bolster its position, *Allentown Mack Sales & Service, Inc. v. NLRB*, refers to the NLRB as an "adjudicating agency," and to adjudication as one of the standard forms of "reasoned decisionmaking" permitted to federal agencies under the Administrative Procedure Act, and did not question the constitutionality of this choice. 522 U.S. 359, 373-74 (1998). In any event, the Supreme Court has rejected the notion that various agency powers can be properly understood as anything other than executive powers. *See City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013) ("[Agency] activities take 'legislative' and 'judicial' forms, but they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power.'").

Regarding the second argument, YAPP cites practically no case law to support its claim that the NLRB has committed a separation-of-powers or due process violation by issuing its *Thryv* decision. Br. 44-48. YAPP supports this claim mostly with two vague allusions to concurring opinions by Justice Gorsuch and Justice Thomas. *See* Br. 46 (citing *Nat'l Fed. of Indep. Bus. v. OSHA*, 595 U.S. 109, 126 (2022) (Gorsuch, J., concurring) and *Axon*, 598 U.S. at 202 (Thomas, J., concurring) ("It may violate the separation of powers by placing adjudicatory authority over core private rights—a judicial rather than executive power—within the authority of Article II agencies."). With respect to YAPP's reliance on Justice Gorsuch's concurrence in *National Federation of Independent Business*, YAPP offers no explanation for how the Board's issuance of *Thryv* constitutes an "unconstitutional delegation*." Id.* (quoting *Nat'l Fed. of Indep. Bus.*, 595 U.S. at 126). And Justice Thomas's concurrence in *Axon* is of no moment because, as explained above at 33-34, NLRA rights are not "private rights."

YAPP's murky claim that the Board's issuance of *Thryv* violates separation of powers and due process principles is thus unlikely to succeed on the merits.

### B.     *YAPP has not met its burden to show irreparable harm.*

1.     YAPP has not shown any irreparable harm resulting from removal restrictions for NLRB Board members or ALJs.

To warrant a preliminary injunction, YAPP must carry its burden of showing that it will suffer "immediate, irreparable harm." *D.T. v. Sumner Cnty. Schs.*, 942

F.3d 324, 326-27 (6th Cir. 2019). YAPP cannot meet that standard because, as this Court found when denying YAPP's request for an injunction pending appeal, YAPP has not established, pursuant to *Calcutt*, 37 F.4th at 313-19, the necessary causal link between the removal restrictions it challenges and any actual harm from the underlying administrative proceeding. *YAPP*, 2024 WL 4489598, at *3 ("YAPP has not explained how the removal protections for the NLRB Board members or the NLRB ALJs would *specifically* impact the upcoming proceeding" or "demonstrated that, but for the allegedly unconstitutional removal provisions, the NLRB Board members or the NLRB ALJ would have been removed, the [NLRB] proceedings against it would not be occurring, or the proceedings would be different in any way.") (cleaned up). As this Court stated, "[w]ithin our preliminary injunction framework, YAPP's failure to satisfy the causal harm requirement could mean that it is not likely to succeed on the merits or that [it] has not shown that it will suffer irreparable harm," but in any case, "the outcome is the same: YAPP is not entitled to a preliminary injunction because it has not shown that the removal protections for the NLRB officials will 'cause harm.'" *Id.* This Court has thus already determined that YAPP's failure to proffer evidence of causal harm is fatal to its removal claims, and the district court did not abuse its discretion in so finding below.[16] *See* Ord., R.29, PageID.322-26, 336-37.

---

[16] The President's recent removal of Member Wilcox, *see* Notice, ECF 43-1, at ¶ 3,

Lacking the requisite evidence of causal harm needed to establish likelihood of success and irreparable harm, YAPP once again contends, Br. 48-50, that *Axon*, 598 U.S. 175, makes such proof unnecessary and that YAPP suffers irreparable harm merely by having to defend itself in a ULP proceeding. But a motions panel of this Court correctly rejected that contention, instructing that "*Axon* did not address issues of relief or injury" but rather "assessed whether federal courts have *jurisdiction* to hear the claims on their merits." *YAPP*, 2024 WL 4489598, at *3; *see also Axon*, 598 U.S. at 180 ("Our task today is not to resolve th[e] challenges [to the agencies' structures]; rather, it is to decide where they may be heard.").[17] The district court appropriately came to this same conclusion below. *See* Ord., R.29, PageID.324-25. And, contrary to YAPP's contention that *Calcutt*'s interpretation of the *Collins* harm requirement is inconsistent with *Axon*, Br. 49-50,

---

[17] further supports the district court's finding of no irreparable harm from the challenged Board member removal restrictions. As a result of the removal, the Board now has only two members, one short of the quorum necessary to issue final decisions. *See* 29 U.S.C. § 153(b); NLRB, *The Board*, https://www.nlrb.gov/about-nlrb/who-we-are/the-board (last visited Feb. 21, 2025) (showing two sitting members); ECF 43-1 at ¶ 4. Because the Board cannot issue a final decision in YAPP's case until a quorum is restored, YAPP's alleged harm of having to appear before an unconstitutionally structured Board is no longer imminent. *See Sumner Cnty. Sch.,* 942 F.3d at 327 (harm "must be both certain and immediate," not "speculative or theoretical").

[17] YAPP's citation, Br. 49, to language from *Free Enterprise Fund*, 561 U.S. at 490-91, is equally inapposite as that analysis, too, addressed jurisdiction—not irreparable harm or entitlement to relief. *See* 561 U.S. at 489-91.

the motions panel has already explained why this is not so. *See YAPP*, 2024 WL 4489598, at *3 ("Because *Axon* did not overrule *Collins*—or, by extension, *Calcutt*—we are bound by our prior ruling."). Indeed, reading *Axon* the way YAPP does would transform that case's narrow holding "into a broad ruling that creates an entitlement on the merits to a preliminary injunction in every case where such constitutional challenges are raised." *Leachco*, 103 F.4th at 759; *see also Alpine Secs. Corp. v. FINRA*, 121 F.4th 1314, 1335-37 (D.C. Cir. 2024). It would also contravene the well-accepted principles that a preliminary injunction is an "extraordinary remedy" that "is the exception, rather than the rule." *Higuchi Int'l Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400, 404 (6th Cir. 2024); *see also Del. State Sportsmen's Ass'n. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024), *cert. denied sub nom. Gray v. Jennings*, No. 24-309, 2025 WL 76443 (U.S. Jan. 13, 2025) (warning that finding a preliminary injunction based on one factor alone would improperly "collapse[] the four factors into one.").

Although YAPP asserts that in-circuit caselaw demands a finding of irreparable harm whenever a constitutional claim is raised, Br. 50-52, the Sixth Circuit has held that constitutional claims support a finding of irreparable harm *only* if they have merit, *see Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (finding that plaintiff's "argument that he is entitled to a presumption of irreparable harm based on the alleged constitutional violation

is without merit" because "[t]he Court has already discussed the fact that it is unlikely that [Plaintiff] will be able to demonstrate that he has a cognizable constitutional claim."); *Bonnell v. Lorenzo*, 241 F.3d 800, 825-26 (6th Cir. 2001).[18] Here, because YAPP's claims lack merit for failure to show causal harm (*see* above at 17-25), YAPP is not entitled to such a presumption.

YAPP also cites *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229-30 (6th Cir. 1985), for the proposition that it is entitled to a preliminary injunction because it believes this case raises "serious questions going to the merits and irreparable harm

---

[18] The NLRB further contends that not every alleged constitutional injury is irreparable or warrants injunctive relief. *See, e.g.*, *Del. State Sportsmen's Ass'n*, 108 F.4th at 198-201; *Leachco*, 103 F.4th at 753; *John Doe Co. v. CFPB*, 849 F.3d 1129, 1135 (D.C. Cir. 2017) (rejecting proposition that "any alleged separation-of-powers injury is by its very nature irreparable"); *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 682 (7th Cir. 2012) ("[E]quitable relief depends on irreparable harm, even when constitutional rights are at stake."); *Siegel v. LePore*, 234 F.3d 1163, 1177-78 (11th Cir. 2000) (en banc) (per curiam); *Pub. Serv. Co. of N.H. v. Town of W. Newbury*, 835 F.2d 380, 382 (1st Cir. 1987) (rejecting argument that alleged violation of constitutional rights automatically establishes threat of irreparable injury). *Contra* Br. 52 (relying on *Elrod v. Burns*, 427 U.S. 347 (1976), which says nothing about constitutional claims not involving First Amendment rights).

The NLRB also disputes YAPP's false assertion, Br. 52, that, in unrelated Fifth Circuit litigation, "the NLRB effectively admitted that preliminary injunctive relief is appropriate where a constitutional right is threatened or being impaired." Rather, the NLRB in that case took the same position it takes here, namely that "not every constitutional injury is per se irreparable" and that "[c]onstitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction." *See* Brief for NLRB at 50, *Space Expl. Techs. Corp. v. NLRB*, No. 24-50627 (5th Cir. Nov. 5, 2024) (citing *Del. State Sportsmen's Ass'n*, 108 F.4th at 203), ECF 65-1.

which decidedly outweighs any potential harm to the defendant." *See* Br. 12-13.

But, as discussed at 17-25 and 41-42, YAPP has failed to show causal harm arising

from the challenged removal restrictions. Thus, YAPP has not raised "serious

questions" as to the likelihood of success on the merits and irreparable harm.

Rather, YAPP has not shown causal or irreparable harm *at all*—let alone harm that

decidedly outweighs the harm to employees and the public by depriving them of

their NLRA rights. Accordingly, the district court did not abuse its discretion in

finding that YAPP failed to establish the requisite irreparable harm caused by the

challenged removal restrictions. Ord., R.29, PageID.336-37.

### 2. YAPP's Seventh Amendment and combination-of-functions claims are too speculative to be a basis for irreparable harm.

The district court did not abuse its discretion in finding that YAPP failed to

show irreparable harm on its Seventh Amendment claim. Ord., R.29, PageID.337-

38. "To merit a preliminary injunction," an injury "must be both certain and

immediate," not "speculative or theoretical." *Sumner Cnty. Sch.,* 942 F.3d at 327.

But YAPP's alleged harm on its Seventh Amendment claim is neither certain nor

immediate and is instead entirely speculative and theoretical. This is because it is

premised solely on the *possibility* that a future Board order *might* require YAPP to

provide its ULP victims with the type of make-whole relief described in *Thryv,* 372

NLRB No. 22 (2022). *See* Br. 34-44. Here, no ALJ has recommended, nor has the

Board ordered, *any* remedy, let alone the *Thryv*-type make-whole remedy of which

46

YAPP complains. *See, e.g.*, *Sumner Cnty. Sch.,* 942 F.3d at 327 ("If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit.").

The district court correctly reasoned that "it is possible that the ALJ, or NLRB on review, never reach the issue of *Thryv* remedies or find them inappropriate here." Ord., R.29, PageID.337. Because "[a]ny damage award ultimately imposed at the administrative level is not effective until enforced by a federal court of appeals . . . YAPP would have the opportunity to challenge any such hypothetical remedial award in the Circuit Court." *Id.*; *see* above at 31 n.12. And, upon judicial review of that hypothetical Board order, the Court could decline to enforce the portion of the order imposing the complained-of relief, thereby providing YAPP a full remedy on its Seventh Amendment claim. *See Jones & Laughlin*, 301 U.S. at 47 ("[A]ll questions of constitutional right or statutory authority are open to examination by the court."); *Ponte*, 2024 WL 4730602, at *8.

But even if this Court were to conclude that the mere prospect of a *Thryv*-type remedy produces irreparable harm, this would not justify a broad injunction prohibiting the ULP proceedings against YAPP from going forward. Instead, as the district court properly concluded, "[a]t most, the appropriate relief would be a preliminary injunction prohibiting the NLRB from seeking *Thryv*-type remedies in

YAPP's administrative proceeding, not halting the entire administrative process."[19] Ord., R.29, PageID.337-38; *see also State of Tenn. v. Dep't of Educ.*, 104 F.4th 577, 614 (6th Cir. 2024) ("[F]ederal courts should not issue relief that extends further than necessary to remedy plaintiffs' injuries.") (cleaned up).

Finally, YAPP's combined-functions claim, Br. 44-47, which the district court found largely "merely restate[d] its Seventh Amendment claim," fails to establish irreparable harm for the same reasons set forth above, Ord., R.29, PageID.335. The claim is substantially grounded in speculation that a potential future Board order might require YAPP to pay its allegedly harmed employees *Thryv*-type make-whole relief—an order which would be reviewable by a court of appeals before YAPP would ever have to comply. To the extent YAPP raises other constitutional arguments in its combination-of-functions section, *see* discussion at 39-41 above, it fails to provide evidence of or make arguments for irreparable harm. *See* Br. 48-54. In any event, for the reasons discussed above at 44-45, YAPP is not entitled to a presumption of irreparable harm on these constitutional claims because they are unlikely to succeed. Given the foregoing, the district court did not abuse its discretion in finding that YAPP failed to carry its burden to establish irreparable harm from the ongoing administrative proceedings.

---

[19] YAPP effectively concedes this point when it states, Br. 54 n.12, that "an injunction preventing the Board from seeking consequential damages and the remedies cited above would also cure the forthcoming harm against YAPP."

***C.*** *Should this Court reach the public interest and the balance of the equities, those factors further counsel against awarding an injunction.*

In denying YAPP's request for preliminary injunction, the district court did not address the merged public interest and the balance of the equities factor. Ord., R.29, PageID.305-38. Instead, it found that the failure to establish a likelihood of success on the merits or show irreparable harm was sufficient. *Id.* at PageID.312-38. Nevertheless, this final factor weighs heavily against issuing the extraordinary relief requested here. The balance-of-harms and public-interest inquiry is not a mere formality; if a plaintiff's showing on that factor is weak, injunctive relief should be denied. *Benisek*, 585 U.S. at 158-61. As the Third Circuit recently held, the four-factor test for injunctive relief is not a "mechanical algorithm." *Del. State Sportsmen's Ass'n*, 108 F.4th at 203. While a court "must weigh all the factors before granting relief," a movant's inability to satisfy "any one factor may [be] reason enough to . . . deny[] an injunction." *Id*; *see also id.* at 202-03 (even assuming irreparable harm is established, balance of equities and public interest are "independent grounds" to deny relief without reaching the merits).

"[G]reat weight" should be given to "the fact that Congress already declared the public's interest and created a regulatory and enforcement framework." *In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 760 (8th Cir. 2003); *see also Tenn. Valley Auth. v. Tenn. Elec. Power*

49

*Co.*, 90 F.2d 885, 895 (6th Cir. 1937) (Allen, J., concurring) ("The public has an interest in the enforcement of all duly enacted law."). Indeed, interfering with the enforcement of "statutes enacted by representatives of [the] people" is a "form of irreparable injury" to the public interest the NLRB represents. *Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)); *see also Priorities USA v. Nessel*, 860 F. App'x 419, 423 (6th Cir. 2021) ("[W]e still recognize an injury in the infringement of the state's sovereign interest in passing and enforcing its laws.").

Frustration of Congress's intent to protect the Act's "public rights," *Nat'l Licorice Co.*, 309 U.S. at 366, would be especially damaging here, given that the Act's procedures are the sole mechanism for enforcing the NLRA, *Nathanson v. NLRB*, 344 U.S. 25, 27 (1953). In other words, there is no private right of action for employees under the NLRA; only the NLRB can provide a remedy for the victims of YAPP's alleged ULPs. Depriving these employees of the only avenue to vindicate their longstanding NLRA rights cannot serve the public interest, especially when YAPP may obtain an adequate remedy in a court of appeals if the Board ultimately issues an adverse decision. *See above* at 30-31, 47-48.

Indefinitely cutting off access to the NLRB's processes harms the employee victims of YAPP's alleged ULPs in meaningful ways. Even a temporary delay in NLRB proceedings raises the likelihood that, in the interim, "records have been

destroyed, witnesses have gone elsewhere, and recollections of the events in question have become dim and confused." *Loc. Lodge No. 1424 v. NLRB*, 362 U.S. 411, 419 (1960) (cleaned up) (quoting H.R. Rep. No. 80-245, at 40 (1947)). What's more, this case is one with statutory priority under the NLRA, 29 U.S.C. § 160(m), because it involves allegations that YAPP engaged in unlawful anti-union discrimination, in violation of 29 U.S.C. § 158(a)(3), by suspending and terminating an employee during a union organizing drive. *See* Garrett Decl., R.4-2, at PageID.104-07. Among other relief, the terminated employee may be entitled to reinstatement under the express provisions of Section 10(c) of the NLRA. 29 U.S.C. § 160(c).

When it comes to the employees in this case, unduly delaying potential issuance of a Board remedial order poses real harm. If a final Board reinstatement order comes too late, the chill experienced by YAPP's workforce may not be successfully remedied, and YAPP may profit from its own ULPs if economic necessity forces the discharged employee to take another job and decline reinstatement. *See Ahearn v. Jackson Hosp. Corp.,* 351 F.3d 226, 230-31, 239 (6th Cir. 2003). Indeed, YAPP stands to benefit from halting enforcement of the NLRA without regard to the ultimate merit of its ULP positions, while employees and the public bear the cost. Workers, who will lose critical workplace protections if the NLRB is indefinitely enjoined from fulfilling its statutory mandate, cannot fairly

be treated as mere collateral damage to this proceeding. And if YAPP's positions were accepted, nearly every ULP case connected to this Circuit would be susceptible to indefinite injunctions.

YAPP's argument, Br. 55, that an injunction would "not harm" the NLRB completely ignores the aforementioned harm to the employees and the public that is caused by indefinitely delaying NLRB proceedings.[20] YAPP's argument, moreover, that that the government suffers "no cognizable harm from stopping the perpetuation of unlawful agency action," is unavailing since *Collins* teaches that unconstitutional removal restrictions do not affect the power of lawfully appointed officers to act. *See* above at 18-22. And, although YAPP invokes the prospect of "economic losses," Br. 56-57, as a basis for an injunction, its employees also stand to suffer economic losses if and while the alleged ULP's go unremedied. *See* above at 51-52. Given the foregoing, the Court should decline to freeze the NLRB at the expense of employees and the public interest.

---

[20] YAPP asserts, Br. 56, that the time it took for the NLRB to investigate the multitude of allegations contained in the ULP charges proves that "time is hardly of the essence." The NLRB, however, processed and investigated the allegations with all reasonable diligence. In any event, the Supreme Court has flatly rejected the notion that "the consequences of [NLRB] delay, even if inordinate" should fall "upon wronged employees to the benefit of wrongdoing employers." *NLRB v. J.H. Rutter-Rex Mfg. Co.*, 396 U.S. 258, 265 (1969).

# CONCLUSION

This Court should affirm the district court's denial of YAPP's motion for a preliminary injunction.

Respectfully submitted,

WILLIAM COWEN
*Acting General Counsel*

STEPHANIE CAHN
*Acting Deputy General Counsel*

NANCY E. KESSLER PLATT
*Assoc. General Counsel*

DAWN L. GOLDSTEIN
*Deputy Assoc. General Counsel*

KEVIN P. FLANAGAN
*Deputy Asst. General Counsel*

Dated: February 26, 2025
     at Washington, D.C.

STEVEN A. BIESZCZAT
*Attorney*

CRAIG EWASIUK
*Attorney*

/s/ Michael Dale
MICHAEL S. DALE
*Supervisory Attorney*
NATIONAL LABOR RELATIONS
BOARD
1015 Half Street S.E., 4th Floor
Washington, DC 20570
Tel: (202) 273-0008

# CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the typeface, type-style, and length requirements in Federal Rules of Appellate Procedure 27(d)(2)(A) and 27(d)(1)(E), because it contains 12,965 words, excluding those exempted by Federal Rule of Appellate Procedure 32(f), which are proportionally spaced, 14-point Times New Roman font, and the word-processing software used was Microsoft Word for Office 365.

/s/ Michael Dale
MICHAEL S. DALE
*Supervisory Attorney*
Tel: (202) 273-0008
Facsimile: (202) 273-4244
Email: michael.dale@nlrb.gov

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance, and*
*Special Litigation Branch*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20570

Dated this 26th day of February, 2025.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2025, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will

automatically send notification of the filing to all counsel of record.

/s/ Michael Dale
MICHAEL S. DALE
*Supervisory Attorney*
Tel: (202) 273-0008
Facsimile: (202) 273-4244
Email: michael.dale@nlrb.gov

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance, and*
*Special Litigation Branch*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20570

Dated this 26th day of February, 2025.

# DESIGNATION OF RECORD

| Case No. 24-12173 | | |
|---|---|---|
| **District Court for the Eastern District of Michigan** | | |
| **District Court Record Entry Number** | **Description** | **Page ID #** |
| R. 1 | Complaint | 1-28 |
| R. 4 | Motion for Preliminary Injunction | 37-80 |
| R. 4-2 | Complaint Exhibit 2 – September 25, 2023 Certification of Election Results, April 9, 2024 Complaint and Notice of Hearing, and August 6, 2024 Order Consolidating Cases, Consolidated Complaint and Notice of Hearing | 89-112 |
| R. 24 | Opposition to Motion for Preliminary Injunction | 201-45 |
| R. 27 | Reply in Support of Motion for Preliminary Injunction | 251-63 |
| R. 29 | Opinion and Order Denying Motion for Preliminary Injunction | 305-38 |
| R. 30 | Notice of Appeal | 339 |
| R. 31 | Motion for Stay and Injunction Pending Appeal | 340-54 |
| R. 33 | Opposition to Motion for Injunction Pending Appeal | 356-65 |
| R. 34 | Order Granting Motion to Stay Pending Appeal | 366-67 |
| R. 35 | Motion for Reconsideration of Injunction Pending Appeal | 368-86 |
| R. 37 | Order Granting Motion for Reconsideration and Denying Motion to Stay Pending Appeal | 406-09 |