No. 24-1754

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

YAPP USA AUTOMOTIVE SYSTEMS, INC.,

Plaintiff-Appellant,

v.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL 174,

Intervenor,

JENNIFER A. ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board; NATIONAL LABOR RELATIONS BOARD, a federal administrative agency; LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board; MARVIN E. KAPLAN, in his official capacity as Board Members of the National Labor Relations Board; GWYNNE A. WILCOX, in her official capacity as Board Members of the National Labor Relations Board; DAVID M. PROUTY, in his official capacity as Board Members of the National Labor Relations Board; ARTHUR AMCHAN, in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

Defendants-Appellees.

_____

On Appeal from the United States District Court
for the Eastern District of Michigan (No. 2:24-cv-12173)
The Honorable Laurie J. Michelson

## BRIEF OF AMICI CURIAE ILLINOIS, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, HAWAII, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, RHODE ISLAND, VERMONT, WASHINGTON, AND WISCONSIN IN SUPPORT OF DEFENDANTS-APPELLEES AND INTERVENOR AND AFFIRMANCE

(*Counsel list on inside cover*)

ALEX HEMMER
Deputy Solicitor General
R. SAM HORAN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5526
alex.hemmer@ilag.gov

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

Attorneys for Amici States

*(Additional counsel on signature page)*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ii

IDENTITY AND INTEREST OF AMICI STATES ................................... 1

SUMMARY OF ARGUMENT ................................................................... 2

ARGUMENT ............................................................................................. 4

I.    Plaintiff's Effort to Paralyze the NLRB, If Successful,
      Would Harm Amici States and Their Residents............................. 5

II.   Plaintiff Has Not Satisfied Multiple Threshold Requirements
      for Preliminary Injunctive Relief.................................................. 9

      A.    Plaintiff has not shown that the challenged removal
            protections caused it any harm — let alone
            irreparable harm. ................................................................ 10

      B.    The balance of equities and the public interest
            disfavor preliminary injunctive relief. ............................... 21

III.  In Any Event, the Challenged Removal Protections
      Are Constitutional............................................................................ 22

      A.    The removal protection for Board members
            is constitutional. ................................................................. 22

      B.    The removal protection for NLRB ALJs is also
            constitutional........................................................................ 29

CONCLUSION ....................................................................................... 33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Amalgamated Ass'n of St., Elec. Ry. &*
   *Motor Coach Emps. of Am. v. Lockridge,*
   403 U.S. 274 (1971) ...................................................................... 1, 8

*Axon Enter., Inc. v. FTC,*
   598 U.S. 175 (2023) .............................................................. 15, 16

*Bowsher v. Synar,*
   478 U.S. 714 (1986) ...................................................................... 18

*Calcutt v. FDIC,*
   598 U.S. 623 (2023) ...................................................................... 19

*Calcutt v. FDIC,*
   37 F.4th 293 (6th Cir. 2022)................................................. *passim*

*Cochran v. U.S. SEC,*
   20 F.4th 194 (5th Cir. 2021) (en banc) ......................................... 16

*Collins v. Yellen,*
   594 U.S. 220 (2021) ................................. 3, 10, 11, 13, 14, 16, 17, 18

*Consumers' Rsch. v. CPSC,*
   91 F.4th 342 (5th Cir. 2024)............................................. 22, 25, 27

*Decker Coal Co. v. Pehringer,*
   8 F.4th 1123 (9th Cir. 2021)..................................................... 29, 31

*Fischer v. Thomas,*
   78 F.4th 864 (6th Cir. 2023).................................................... 10, 14

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
   561 U.S. 477 (2010) .......................................................... 18, 28, 29

*Glacier Nw., Inc. v. Int'l Brotherhood of*
    *Teamsters Loc. Union No. 174,*
    598 U.S. 771 (2023) ................................................................8, 9

*Hedstrom Co. v. NLRB,*
    629 F.2d 305 (3d Cir. 1980)............................................30

*Humphrey's Executor v. United States,*
    295 U.S. 602 (1935) ................................3, 22, 23, 24, 27

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022)..........................................32

*Kaufmann v. Kijakazi,*
    32 F.4th 843 (9th Cir. 2022)..........................................14

*Leachco, Inc. v. CPSC,*
    103 F.4th 748 (10th Cir. 2024)..........................16, 25, 26, 27, 30, 32

*Mallory v. Norfolk S. Ry. Co.,*
    600 U.S. 122 (2023) ........................................................28

*Morrison v. Olson,*
    487 U.S. 654 (1988) ..................................................27, 28

*New Process Steel, L.P. v. NLRB,*
    560 U.S. 674 (2010) ..........................................................8

*Rieth-Riley Constr. Co. v. NLRB,*
    114 F.4th 519 (6th Cir. 2024)........................................25

*San Diego Bldg. Trades Council v. Garmon,*
    359 U.S. 236 (1959) .....................................................2, 8

*Sanborn v. Parker,*
    629 F.3d 554 (6th Cir. 2010) ...................................20, 21

*Sears, Roebuck & Co. v. San Diego Cnty.*
    *Dist. Council of Carpenters,*
    436 U.S. 180 (1978) ..........................................................5

*SEC v. Jarkesy*,
    603 U.S. 109 (2024) ....................................................................32

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) ........................12, 18, 22, 23, 27, 28, 29, 30, 31

*United States v. Cavazos*,
    950 F.3d 329 (6th Cir. 2020) .....................................................19

*VHS Acquisition Subsidiary No. 7 v. NLRB*,
    No. 24-cv-2577, 2024 WL 5056358
    (D.D.C. Dec. 10, 2024) .....................................................18, 19, 33

*Wilcox v. Trump*,
    No. 25-cv-334 (D.D.C. Feb. 5, 2025) .............................................15

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) ...................................................................4, 9, 21

## STATUTES

5 U.S.C.
    § 556....................................................................................30
    § 557....................................................................................31
    § 1202..................................................................................29
    § 7521..................................................................................29

15 U.S.C.
    § 41.....................................................................................27
    § 42 (1934)...........................................................................26
    § 2053...............................................................................26, 27
    § 2056..................................................................................25
    § 2057..................................................................................25
    § 2076..................................................................................26

29 U.S.C.
    § 151................................................................................1, 5, 6
    § 153........................................................................24, 25, 27, 28
    § 154..................................................................................26
    § 160........................................................................24, 30, 31

# OTHER AUTHORITIES

U.S. Const. art. II, § 1...............................................................12

U.S. Const. art. II, § 3...............................................................12

12 C.F.R.
    § 308.39 ...........................................................................31
    § 308.40 ...........................................................................31

16 C.F.R. § 1025.52..................................................................31

20 C.F.R. § 725.479 .................................................................31

29 C.F.R. § 102.48...................................................................14

Fed. R. App. P. 29 .....................................................................1

H.R. Rep. No. 74-1147 (1935),
    *reprinted in* 2 NLRB, *Legislative History*
    *of the National Labor Relations Act, 1935* (1959),
    https://tinyurl.com/3umsw7wp ....................................24

H.R. Rep. No. 74-1371 (1935) (Conf. Rep.),
    *reprinted in* 2 NLRB, *Legislative History*
    *of the National Labor Relations Act, 1935* (1959),
    https://tinyurl.com/3umsw7wp ..............................24, 28

Archibald Cox, *Federalism in the Law of Labor Relations*,
    67 Harv. L. Rev. 1297 (1954) .........................................7

Arindrajit Dube et al., *Nurse Unions and Patient Outcomes*,
    69 ILR Rev. 803 (2016)...................................................7

Henry S. Farber et al., *Unions and Inequality over the*
    *Twentieth Century: New Evidence from Survey Data*,
    136 Q.J. Econ. 1325 (2021)..............................................7

Maury Gittleman & Morris M. Kleiner, *Wage Effects of Unionization and Occupational Licensing Coverage in the United States*, 69 ILR Rev. 142 (2016)....................................................6

Walter Hourahan, *Collective Bargaining*, *in* 1 *Historical Encyclopedia of American Labor Law* 92 (Robert E. Weir & James P. Hanlan eds., 2004)............................6

William W. Olney, *A Race to the Bottom?  Employment Protection and Foreign Direct Investment*, 91 J. Int'l Econ. 191 (2013) ............................................7

Jake Rosenfeld et al., *Union Decline Lowers Wages of Nonunion Workers* (2016), https://tinyurl.com/ms625ftf ................6

U.S. Dep't of the Treasury, *Labor Unions and the Middle Class* (2023), https://tinyurl.com/55avze68 ....................6, 7

Brief of Petitioner Harry C. Calcutt III, *Calcutt v. FDIC*, 37 F.4th 293 (6th Cir. 2022) (No. 20-4303) ........20

Petition for a Writ of Certiorari, *Calcutt v. FDIC*, 598 U.S. 623 (2023) (No. 22-714), 2023 WL 1475313 ..........................................................19

## IDENTITY AND INTEREST OF AMICI STATES

The amici States of Illinois, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, Washington, and Wisconsin (collectively, "amici States") submit this amicus brief in support of defendants-appellees and intervenor pursuant to Federal Rule of Appellate Procedure 29(a)(2).

Amici States have a substantial interest in the stable, effective operation of the National Labor Relations Board ("Board" or "NLRB"), the "centralized, expert agency" to which Congress "entrusted [the] administration and development" of the Nation's "comprehensive national labor law." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 286 (1971). That comprehensive national law — the National Labor Relations Act ("Act" or "NLRA") — benefits amici States and their residents by safeguarding "the right of employees to organize and bargain collectively" and preventing "industrial strife and unrest." 29 U.S.C. § 151. Uniform administration of this regime by the NLRB protects amici States from a

race to the bottom, in which States might compete to attract businesses by reducing protections for workers. And, critically, if the Board fails to fulfill its statutory responsibilities, other actors generally cannot step into the breach, since, "[w]hen an activity is arguably subject to [the NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB]." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). Amici States thus have a substantial interest in defending the Board's ability to carry out its statutory duties in an orderly, effective manner, which plaintiff's requested relief would undermine.

## SUMMARY OF ARGUMENT

The Board's administration of the NLRA creates multiple important benefits for amici States and their residents. For example, by safeguarding collective-bargaining rights, the Board helps improve wages and working conditions and reduce industrial strife and inequality, while establishing a uniform national regime that prevents a race to the bottom in labor protections. And States and the federal courts cannot independently enforce the Act's requirements or, in many circumstances, impose their own analogous protections. Ready

2

availability of preliminary injunctions against the Board's operations, such as the one plaintiff requests, would thus seriously harm the public.

Moreover, plaintiff is not entitled to such an injunction for multiple threshold reasons. As the Supreme Court explained in *Collins v. Yellen*, 594 U.S. 220 (2021), and this court reiterated in *Calcutt v. FDIC*, 37 F.4th 293 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023) (per curiam), a plaintiff seeking to enjoin agency action based on a removal claim must show that the challenged removal protection caused concrete harm. Plaintiff has not done so. Instead, it seeks to paralyze the NLRB based on a wholly theoretical legal argument. This defect means both that plaintiff's claims fail on the merits and that it has not established the irreparable harm required for a preliminary injunction. In addition, given this lack of harm, the balance of the equities and the public interest cut decisively against plaintiff.

Even setting aside these threshold problems, plaintiff's claims independently fail because the challenged removal protections are constitutional. The NLRB is a multimember, expert agency whose members Congress may protect from removal without cause under *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). And

decisions from both this court and other circuits have upheld removal protections for administrative law judges ("ALJs") indistinguishable from those applicable to NLRB ALJs.  Thus, though the court need not reach these issues, it could affirm on this basis as well.

## ARGUMENT

Ready availability of preliminary injunctions in cases like this one would paralyze the NLRB, seriously harming amici States and their residents.  But this court can and should affirm the district court's denial of preliminary relief on plaintiff's removal claims for multiple independent reasons.[1]  To obtain the "extraordinary remedy" of a preliminary injunction, plaintiff must show "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 24 (2008).  Plaintiff stumbles at the threshold because it cannot show any harm — much less irreparable harm — caused by the challenged removal protections, and the remaining

---

[1]  Although this brief focuses on plaintiff's removal claims, the district court also correctly denied preliminary relief on plaintiff's other claims.

equitable factors cut strongly against its position.  Even looking past those deficiencies, however, plaintiff's claims fail because the removal protections it challenges, for both NLRB members and NLRB ALJs, are constitutional.

## I.    Plaintiff's Effort to Paralyze the NLRB, If Successful, Would Harm Amici States and Their Residents.

The NLRB's administration of the Act provides substantial benefits for amici States and their residents.  By essentially incapacitating the Board, preliminary relief of the type plaintiff requests would nullify those benefits.

First, the Board aids workers by protecting their collective-bargaining rights.  In enacting the NLRA — and creating the Board to administer it — "Congress expressly recognized that collective organization of segments of the labor force into bargaining units capable of exercising economic power comparable to that possessed by employers may produce benefits for the entire economy in the form of higher wages, job security, and improved working conditions."  *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 190 (1978); *see* 29 U.S.C. § 151.  Studies confirm that, as Congress predicted, the unionization facilitated by the Act improves wages,

benefits, and working conditions.  *See* U.S. Dep't of the Treasury, *Labor Unions and the Middle Class* 13-20 (2023), https://tinyurl.com/55avze68.[2]  These gains extend even to nonunion workers; for example, by creating competition for workers, unions increase wages for nonmembers, too.  *Id.* at 19.[3]  The Act thus boosts workers in an array of fields.

The Board's administration of the NLRA also brings broader benefits to amici States' economies.  By providing an accessible administrative forum for labor disputes, the NLRB has reduced "industrial strife and unrest" that disrupt "the free flow of commerce." 29 U.S.C. § 151; *see, e.g.*, Walter Hourahan, *Collective Bargaining*, *in* 1 *Historical Encyclopedia of American Labor Law* 92, 93 (Robert E. Weir & James P. Hanlan eds., 2004) (crediting NLRA with increasing "stability" of labor-management relations).  And studies show that

---

[2] *See also, e.g.*, Maury Gittleman & Morris M. Kleiner, *Wage Effects of Unionization and Occupational Licensing Coverage in the United States*, 69 ILR Rev. 142, 145, 164 (2016) (wages and benefits).

[3] *See also, e.g.*, Jake Rosenfeld et al., *Union Decline Lowers Wages of Nonunion Workers* 27-28 (2016), https://tinyurl.com/ms625ftf.

unions, protected by the NLRB, decrease income inequality and may increase productivity. U.S. Dep't of the Treasury, *supra*, at 23-26.[4]

In addition, the Board's uniform implementation of the Act protects amici States from a race to the bottom in labor standards. As former Solicitor General Archibald Cox explained, a lack of uniformity would "open the way to interstate competition in enacting statutes attractive to industry," threatening workers' rights. Archibald Cox, *Federalism in the Law of Labor Relations*, 67 Harv. L. Rev. 1297, 1317 (1954). Indeed, empirical evidence demonstrates the existence of this phenomenon at the international level. *See* William W. Olney, *A Race to the Bottom? Employment Protection and Foreign Direct Investment*, 91 J. Int'l Econ. 191, 203 (2013).

Granting preliminary relief here would deny amici States and their residents these benefits. If parties that have allegedly violated the Act can routinely obtain preliminary injunctions against administrative proceedings without any showing of harm arising from

---

[4] *See also, e.g.*, Henry S. Farber et al., *Unions and Inequality over the Twentieth Century: New Evidence from Survey Data*, 136 Q.J. Econ. 1325, 1380 (2021) (inequality); Arindrajit Dube et al., *Nurse Unions and Patient Outcomes*, 69 ILR Rev. 803, 830 (2016) (productivity).

the challenged removal protections, then the Board will be unable, as a practical matter, to administer the NLRA. *Cf. New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 688 n.7 (2010) (noting that other factors slowing NLRB operations, including membership turnover and vacancies, had "significant[ly] imped[ed] . . . the operations of the Board"). And without an agency able to implement the Act, its protections will be no help to workers or amici States.

Federal law circumscribes the authority of both States and the federal courts to administer labor law, underscoring the NLRB's critical role. "When an activity is arguably subject to [the NLRA], the States as well as the federal courts must defer to the exclusive competence of the . . . Board . . . ." *Garmon*, 359 U.S. at 245.[5] As a result, "States cannot regulate conduct that the NLRA protects, prohibits, or arguably protects or prohibits," and neither state nor federal courts can hear claims alleging violations of the Act in the first instance. *Glacier Nw.*,

---

[5] To be sure, the Supreme Court has "recognized exceptions to this rule," *Glacier Nw., Inc. v. Int'l Brotherhood of Teamsters Loc. Union No. 174*, 598 U.S. 771, 777 n.1 (2023), and this brief takes no position about the applicability of NLRA preemption doctrine to any specific state law. But the scope of NLRA preemption is unquestionably "broad." *Lockridge*, 403 U.S. at 284.

8

598 U.S. at 776 (cleaned up); *see id.* at 777 ("*Garmon* . . . tells us not just what law applies (federal law, not state law) but who applies it (the [NLRB], not the state courts or federal district courts)." (cleaned up)). In other words, if conduct even arguably implicates the Act, subject to certain exceptions, *see id.* at 777 n.1, any unfair-practices claim arising from that conduct *must* commence before the agency. Preventing the Board from considering alleged NLRA violations, as plaintiff seeks to do, would thus potentially immunize the conduct at issue from *any* regulation, whether state or federal, leaving workers unprotected and harming amici States.

## II.   Plaintiff Has Not Satisfied Multiple Threshold Requirements for Preliminary Injunctive Relief.

As the motions panel recognized, plaintiff cannot meet multiple threshold requirements for the "extraordinary remedy," *Winter*, 555 U.S. at 24, of a preliminary injunction. It has not shown that the challenged removal protections caused it any harm, as required to prevail on the merits under the Supreme Court's decision in *Collins*. That failure necessarily means that it also has not shown the irreparable harm required for any preliminary injunction. And the remaining equitable factors — the balance of equities and the public

interest — also disfavor plaintiff.  Each of these defects independently

bars preliminary relief.

### A.  Plaintiff has not shown that the challenged removal protections caused it any harm — let alone irreparable harm.

Plaintiff bears the burden of showing harm arising from the

challenged removal protections.  *Collins* makes this showing an element

of plaintiff's claim, and a failure to make it means that plaintiff is

unlikely to succeed on the merits.  And to obtain a preliminary

injunction, a plaintiff must show not just harm but "immediate" and

"irreparable" harm.  *Fischer v. Thomas*, 78 F.4th 864, 868 (6th Cir.

2023).  For both reasons, demonstrating harm is "indispensable."  *Id.*

(cleaned up); *see Collins*, 594 U.S. at 259-60.  Yet plaintiff has not done

so, and its arguments for ignoring that failure are meritless.

1.    *Collins* makes clear that a plaintiff challenging a removal

protection cannot obtain injunctive relief without showing that the

protection caused it harm.  The plaintiffs in that case sought to

invalidate certain agency actions on the basis that the agency's director

was subject to an allegedly unconstitutional removal protection.  *See*

594 U.S. at 227.  After agreeing that the removal provision was

unconstitutional, the Court explained that the plaintiffs still might not be entitled to the requested relief.  *See id.* at 257-60.  Because the official at issue was "properly appointed," the Court reasoned, and thus had "the authority to carry out the functions of the office," "there [was] no reason to regard any of the actions taken by the [agency] . . . as void." *Id.* at 257-58 (cleaned up).  Instead, the plaintiffs could obtain relief only if "the unconstitutional [removal] restriction" — and not just the agency's actions — had "inflict[ed] compensable harm." *Id.* at 259.

In *Calcutt*, this court applied *Collins* in refusing to invalidate on removal grounds an enforcement action conducted by the Federal Deposit Insurance Corporation ("FDIC").  *See* 37 F.4th at 314-19.  The court reasoned that "*Collins* . . . provides a clear instruction:  To invalidate an agency action due to a removal violation, that constitutional infirmity must 'cause harm' to the challenging party." *Id.* at 316 (quoting *Collins*, 594 U.S. at 260).  It emphasized that this requirement "remains the same whether the [party] seeks retrospective or prospective relief." *Id.*  Nor could the party seeking relief satisfy this requirement through general allegations that the removal protection might have altered the officer's actions; instead, "a more concrete

11

showing was needed." *Id.* at 316-17. Because the petitioner in that case had made no such showing, its removal claims failed. *See id.* at 314-19.

This harm requirement makes good sense. The Supreme Court has rooted its removal jurisprudence in Article II's vesting of "'the executive Power . . . in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020) (cleaned up) (quoting U.S. Const. art. II, §§ 1, 3). The Court has reasoned that, for the President to fulfill that role, he must generally be able to hold executive officers accountable, often including through the removal power. *See id.* at 213-14. If the President does not want to remove an officer, however, a removal restriction does not interfere with his Article II responsibilities; it has no practical effect at all. As a result, invalidating agency action on removal grounds under those circumstances does not safeguard the President's constitutional role but instead impedes his ability to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, by preventing executive officers from carrying out their statutory duties based on a purely theoretical legal argument. *Collins*'s harm requirement thus protects the President's

constitutional prerogatives by "ensur[ing] that actions the President supports — which would have gone forward whatever his removal power — will remain in place." *Collins*, 594 U.S. at 274 (Kagan, J., concurring in part and concurring in the judgment).

Plaintiffs may often be unable to satisfy the *Collins* standard. But that is simply because "[p]residential control does not show itself in all, or even all important, regulation." *Id.* at 275 (cleaned up). In the mine-run of cases, which "would not capture a President's attention, his removal authority could not make a difference — and so no injunction should issue." *Id.* A plaintiff's inability to show the required harm does not mean that a colorable claim will go unredressed, *contra* Tenn. Amicus Br. 15; it means that the plaintiff never had a claim to begin with.

2.    Plaintiff has not shown the necessary harm with respect to either NLRB ALJs or Board members.

Plaintiff has submitted no evidence that the removal protection for NLRB ALJs has caused or likely will cause it any harm. Instead, it asserts generally that "ALJs who are not accountable to the President act differently than those who know they are subject to the President's

13

control." Pl. Br. 30. But *Calcutt* rejected this same argument. *See* 37 F.4th at 317 ("The *Collins* Court was not deterred from its holding by the very possibility that harm *might* occur; rather, it indicated that a more concrete showing was needed."); *see also Kaufmann v. Kijakazi*, 32 F.4th 843, 849-50 (9th Cir. 2022) (similar). And although plaintiff complains that it could not make a more specific showing without knowing which ALJ would hear its case, Pl. Br. 30, nothing in the record suggests that it could have met its burden with respect to *any* ALJ. Instead, the record's silence demonstrates that this is one of the "mass" of agency proceedings that do "not concern the President at all" and to which the removal power is irrelevant. *Collins*, 594 U.S. at 275 (Kagan, J., concurring in part and concurring in the judgment).

Plaintiff similarly cannot show harm — much less the "immediate," irreparable harm required for a preliminary injunction, *Fischer*, 78 F.4th at 868 — arising from NLRB members' removal protection. Plaintiff's administrative proceeding may never reach the Board; the parties may settle, or the losing party before the ALJ may choose not to appeal. *See* 29 C.F.R. § 102.48(a). And, if the matter does reach the Board, any controversy about the removal protection will

14

likely already have been resolved: President Trump has purported to remove one of the Board's members from office, the discharged member has sued to challenge her removal, and the suit is proceeding on an expedited schedule. *See Wilcox v. Trump*, No. 25-cv-334 (D.D.C. Feb. 5, 2025). Thus, if plaintiff's administrative proceeding reaches the Board, that Board will likely consist of either (1) members whom the President believes he has the power to remove but has chosen to retain, ruling out any harm under *Collins*, or (2) members whom the President has chosen not to remove and a member whose removal protection has been upheld by the courts. Given the absence of any nonspeculative harm, preliminary relief is unwarranted.

3.    Plaintiff's and its amici's responses to *Collins* and *Calcutt* are unpersuasive.

Many of their arguments rest on an overreading of *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023). *Axon* held that, because "being subjected to unconstitutional agency authority" is "a here-and-now injury," *id.* at 180 (cleaned up), the availability of post-decision judicial review does not implicitly deprive district courts of jurisdiction to hear cases, like this one, that seek to preemptively enjoin agency

15

proceedings based on alleged separation-of-powers violations, *see id.* at 195-96.  But the Supreme Court addressed only *when* plaintiffs could bring those claims; it did not discuss *what* those plaintiffs would need to show to obtain injunctive relief.  *See id.* at 180 ("Our task today is not to resolve [the removal] challenges . . . ."); *see also Leachco, Inc. v. CPSC*, 103 F.4th 748, 758-59 (10th Cir. 2024) ("[W]e will not misunderstand what was said about jurisdiction in *Axon* as a holding on a party's entitlement to relief based on an unconstitutional removal provision." (cleaned up)), *cert. denied*, No. 24-156, 2025 WL 76435 (U.S. Jan. 13, 2025).[6]  And under *Collins*, there is no exercise of "unconstitutional agency authority," *Axon*, 598 U.S. at 191 (cleaned up), and thus no harm to remedy, unless the removal protection at issue mattered in practice, *see* 594 U.S. at 257-60.  Even if the district court had jurisdiction to hear plaintiff's removal claims, plaintiff cannot prevail on those claims without satisfying *Collins*'s harm requirement.

Several other features of *Axon* confirm that it did not displace *Collins* or *Calcutt*.  Because *Axon* addressed a fundamentally different

---

[6]  *Cochran v. U.S. SEC*, 20 F.4th 194 (5th Cir. 2021) (en banc), on which plaintiff's amici rely, *see* Tenn. Amicus Br. 8, 14, similarly addressed only jurisdiction, *see* 20 F.4th at 197-98, 212.

question from *Collins*, neither the majority nor either of the two concurring opinions cited that decision. And *Axon*'s author — Justice Kagan — had not only joined *Collins*'s remedial reasoning but also written separately to emphasize the importance of the harm requirement and to reiterate that an "injunction should issue" only when "an agency decision would . . . capture a President's attention." *Collins*, 594 U.S. at 275 (Kagan, J., concurring in part and concurring in the judgment). *Axon* did not implicitly abrogate *Collins*.

Plaintiff and its amici's effort to confine the harm requirement to cases seeking retrospective relief not only depends on this overreading of *Axon* but also fundamentally misunderstands *Collins*. As *Calcutt* explained, "[t]he *Collins* inquiry focuses on whether a harm occurred that would create an entitlement to a remedy" and "remains the same whether the [party] seeks retrospective or prospective relief." 37 F.4th at 316 (cleaned up). In other words, plaintiff's and its amici's repeated assertions that, absent relief, plaintiff will be subjected to "an illegitimate proceeding," Tenn. Amicus Br. 10 (cleaned up), simply beg the question. Unless a plaintiff can show that a removal protection mattered in practice, an agency proceeding cannot be "illegitimate" and

17

there is no reason to enjoin it. *See Collins*, 594 U.S. at 257-60; *see also id.* at 267 (Thomas, J., concurring) ("The mere existence of an unconstitutional removal provision . . . generally does not automatically taint Government action by an official unlawfully insulated."). That reasoning applies with no less force to prospective than retrospective relief.

Plaintiff's amici also wrongly assert that three Supreme Court decisions predating *Collins* support awarding injunctive relief even without a showing of harm. *See* Tenn. Amicus Br. 15-16 (citing *Seila Law*, 591 U.S. 197; *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010); *Bowsher v. Synar*, 478 U.S. 714 (1986)). *Collins* itself addressed *Seila Law* and *Bowsher*, explaining that the former did not determine the appropriate remedy and the latter "simply [applied] the remedy specifically prescribed by Congress." 594 U.S. at 258-59. In *Free Enterprise Fund*, meanwhile, the Court specifically denied the requested injunctive relief, granting only declaratory relief — a distinct remedy that, unlike a preliminary injunction, would not interfere with the agency's ability to carry out its responsibilities. *See* 561 U.S. at 513; *see also VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 24-cv-2577,

18

2024 WL 5056358, at *1, *9 (D.D.C. Dec. 10, 2024) (granting only declaratory relief), *appeal docketed*, No. 25-5006 (D.C. Cir. Feb. 5, 2025).  Since this appeal concerns only a motion for a preliminary injunction, the court need not decide the appropriateness of declaratory relief at this juncture.

Finally, plaintiff and its amici attack *Calcutt*'s precedential value. Even setting aside the fact that *Collins*, standing alone, resolves this case, these arguments have no merit.  The Supreme Court's reversal of *Calcutt* on unrelated statutory grounds does not affect the precedential value of its removal analysis, which the Supreme Court did not discuss. *See Calcutt v. FDIC*, 598 U.S. 623, 628-30 (2023) (per curiam).  Indeed, the petitioner in *Calcutt* specifically sought certiorari on the *Collins* issue, Petition for a Writ of Certiorari at I, *Calcutt*, 598 U.S. 623 (No. 22-714), 2023 WL 1475313, at *i, but the Court declined to grant review on that point, 598 U.S. at 624.  That disposition leaves *Calcutt*'s removal reasoning undisturbed.  *See United States v. Cavazos*, 950 F.3d 329, 336 (6th Cir. 2020).

Nor are plaintiff's amici correct that the Supreme Court's decision retroactively rendered *Calcutt*'s removal analysis dicta.  Tenn. Amicus

Br. 18-19. Amici cite no case applying this novel understanding of precedent. And, in any event, the argument fails even on its own terms: while amici argue that, since the Supreme Court ultimately directed this court to remand the case to the agency on statutory grounds, this court's rejection of the constitutional claims made no difference to the result, *id.*, that argument cannot be squared with the record in *Calcutt*. The *Calcutt* petitioner had argued that, if he prevailed on his constitutional claims, he would be entitled to a more expansive remedy than he would on his statutory claims, *see* Brief of Petitioner Harry C. Calcutt III, at 26, 33, *Calcutt*, 37 F.4th 293 (No. 20-4303) (seeking remedies that included "invalidat[ing]" the challenged removal protections and "end[ing] the[ ] proceedings"), an understanding this court adverted to in describing the petitioner's constitutional claims, *see Calcutt*, 37 F.4th at 310 (noting that the petitioner's constitutional claims sought "invalidation of the agency's proceeding against him"). Given these different potential remedies, *Calcutt*'s removal analysis remains "necessary to [the] result," and therefore binding precedent, even under amici's approach. *Sanborn v. Parker*, 629 F.3d 554, 570 (6th

Cir. 2010) (cleaned up).  That binding precedent defeats plaintiff's claims.

### B.    The balance of equities and the public interest disfavor preliminary injunctive relief.

The balance of equities and the public interest also weigh against plaintiff.  This imbalance is an additional sufficient basis to deny relief.  *See Winter*, 555 U.S. at 23-24.  As explained above, *supra* pp. 5-9, granting preliminary relief would seriously harm amici States and their residents.  Plaintiff has shown no countervailing harm warranting an injunction.  Nor has its amici:  although they allude generally to concern for the separation of powers and the States' ability to monitor removal-protected officers "through the bicameral lawmaking process," Tenn. Amicus Br. 2, the challenged removal protections — and the NLRA as a whole — are the product of, and could be amended or eliminated through, that process.  Those protections also do not interfere with Congress's oversight or impeachment powers over the Board and, as plaintiff's failure to meet *Collins*'s harm requirement shows, have not hindered the President in carrying out his constitutional responsibilities.  The final two equitable factors thus tip decisively against plaintiff.

## III.  In Any Event, the Challenged Removal Protections Are Constitutional.

For the threshold reasons discussed above, this court can affirm the denial of preliminary relief without deciding the constitutionality of the challenged removal protections.  If the court does reach the constitutional issues, however, it should uphold the protections.

### A.    The removal protection for Board members is constitutional.

Under *Humphrey's Executor*, Congress may, at minimum, impose "for-cause removal protections for 'multimember expert agencies that do not wield substantial executive power.'" *Calcutt*, 37 F.4th at 313 (quoting *Seila Law*, 591 U.S. at 218); *see Humphrey's Ex'r*, 295 U.S. at 624, 628-29.[7]  The NLRB falls squarely in that category, and thus its members' removal protection is constitutional.  Decisions from the Fifth

---

[7]  The Fifth Circuit has reasoned that *Humphrey's Executor* "protects any traditional independent agency headed by a multimember board," regardless of the powers it exercises.  *Consumers' Rsch. v. CPSC*, 91 F.4th 342, 352 (5th Cir.) (cleaned up), *cert. denied*, 145 S. Ct. 414 (2024); *see id.* at 351-56.  For the reasons discussed below, this court need not decide whether to adopt that view:  even assuming the level of executive power exercised by an agency is relevant, the Board's powers leave its members' removal protection well within constitutional bounds.

and Tenth Circuits confirm that result, and plaintiff's counterarguments lack merit.

*Humphrey's Executor* upheld a removal protection for FTC Commissioners. *See* 295 U.S. at 626-32. The Court explained that Congress's authority to "preclud[e] a removal except for cause will depend upon the character of the office," *id.* at 631, and highlighted several characteristics of the FTC that made removal protection appropriate. It observed that the Commission was a "nonpartisan . . . body of experts" serving staggered terms whose "duties [were] neither political nor executive, but predominantly quasi judicial and quasi legislative," requiring members "to exercise [their] trained judgment . . . informed by experience." *Id.* at 623-24 (cleaned up); *see also Seila Law*, 591 U.S. at 215-16 (highlighting these features). In carrying out its duties, the Commission had the power to — among other things — conduct investigations and issue cease-and-desist orders, which it could then seek to enforce in courts of appeals. *See* 295 U.S. at 620-21.

Those same characteristics justify the removal protection for Board members. Plaintiff properly does not dispute that, as the district court recognized, "the NLRB is a multi-member independent, expert

23

agency" whose members "are balanced along partisan lines . . . [and] serve staggered multi-year terms."  R. 29, Op. & Order, PageID 315; *see* 29 U.S.C. § 153(a).  Its duties, like the 1935 FTC's, are "predominantly quasi judicial and quasi legislative," with members employing their "trained judgment . . . informed by experience."  *Humphrey's Ex'r*, 295 U.S. at 624 (cleaned up).  And the Board's powers track the FTC's as characterized in *Humphrey's Executor*.  Like the 1935 FTC, for example, the Board can issue cease-and-desist orders concerning unfair conduct but can enforce them only by petitioning a court of appeals.  *See* 29 U.S.C. § 160(c), (e); *Humphrey's Ex'r*, 295 U.S. at 620-21.[8]  Indeed, the Board's powers are in some respects more limited than the 1935 FTC's: while the FTC had "wide powers of investigation" and the ability to "issue . . . complaint[s]," *Humphrey's Ex'r*, 295 U.S. at 620-21, the

---

[8] The resemblance between the 1935 FTC and the NLRB is not accidental:  Congress intended the Board "to have a status similar to that of the [FTC]" as "a quasi-judicial and quasi-legislative body," and it inserted the removal protection, which it considered "[s]imilar" to that "found in . . . the [FTC] Act," in response to *Humphrey's Executor* — decided roughly a month before the NLRA's enactment.  H.R. Rep. No. 74-1371, at 4 (1935) (Conf. Rep.), *reprinted in* 2 NLRB, *Legislative History of the National Labor Relations Act, 1935*, at 3255 (1959), https://tinyurl.com/3umsw7wp; *accord* H.R. Rep. No. 74-1147, at 14 (1935), *reprinted in* 2 NLRB, *supra*, at 3062.

NLRA gives "final authority . . . in respect of the investigation of charges and issuance of complaints" to the NLRB's General Counsel, 29 U.S.C. § 153(d) — a distinct officer who is removable by the President at will, *see Rieth-Riley Constr. Co. v. NLRB*, 114 F.4th 519, 529-31 (6th Cir. 2024), *petition for cert. filed*, No. 24-767 (U.S. Jan. 17, 2025). Because the Board is a multimember expert body that wields no more substantial executive power than did the FTC in 1935 and whose members serve staggered terms, its members' removal protection is constitutional. *See Calcutt*, 37 F.4th at 313-14.

That conclusion finds further support in recent decisions of the Fifth and the Tenth Circuits applying *Humphrey's Executor* to uphold removal protections for another independent agency:  the Consumer Product Safety Commission ("CPSC").  *See Consumers' Rsch.*, 91 F.4th at 351-56; *Leachco*, 103 F.4th at 760-63.  In addition to its multimember, expert structure, the CPSC also shares several of the Board's powers — for instance, the ability to engage in rulemaking.  *See Consumers' Rsch.*, 91 F.4th at 346 (citing 15 U.S.C. §§ 2056(a), 2057). And, as with the 1935 FTC, the CPSC's powers in some respects go beyond the Board's.  For example, the CPSC may initiate certain

criminal actions. *See Leachco*, 103 F.4th at 750 (citing 15 U.S.C. § 2076(b)(7)). Plaintiff makes no serious effort to distinguish these decisions, *see* Pl. Br. 18-20 (misidentifying *Consumers' Research* as "a petition for certiorari filing" and asserting that *Leachco* "was wrongly decided"), which further demonstrate that *Humphrey's Executor* controls this case.

Plaintiff's counterarguments miss the mark. Its leading contention — that *Humphrey's Executor* does not apply because the Board exercises too much executive power — fails because, as discussed above, the NLRB's powers fall well within the bounds set by other agencies whose removal protections have been upheld by courts. For example, plaintiff takes issue with the Board's ability to appoint an "executive secretary" and other staff. Pl. Br. 17 (quoting 29 U.S.C. § 154(a)). But that is a commonplace administrative power shared by both the 1935 FTC and the CPSC. *See* 15 U.S.C. § 2053(g); *id.* § 42 (1934). None of the Board's powers render its members' removal protection unconstitutional.

Plaintiff's attempt to distinguish *Humphrey's Executor* based on the language of the removal protection also falls short. True, the

26

President can remove Board members only "for neglect of duty or malfeasance in office," 29 U.S.C. § 153(a), while the removal protection in *Humphrey's Executor* also authorized removal for "inefficiency," 295 U.S. at 620 (quoting 15 U.S.C. § 41). But *Humphrey's Executor* focused on "the character of the office," not the wording of the removal protection. *Id.* at 631; *see also Seila Law*, 591 U.S. at 215 (the permissibility of a removal protection "depend[s] upon the characteristics of the agency"). Nothing in the decision suggests that the "inefficiency" prong was essential to the Court's holding, *see* 295 U.S. at 626-32 (not discussing "inefficiency"), and plaintiff does not explain why the wording change is of constitutional significance, *cf. Morrison v. Olson*, 487 U.S. 654, 692 (1988) ("This is not a case in which the power to remove an executive official has been completely stripped from the President . . . ."). Further, plaintiff's approach would diverge from the Fifth and the Tenth Circuits, both of which upheld an identically worded removal protection for CPSC Commissioners. *See Leachco*, 103 F.4th at 760-63; *Consumers' Rsch.*, 91 F.4th at 346, 351-56; 15 U.S.C. § 2053(a). It was the FTC's nature, powers, and structure

that rendered the removal protection constitutional in *Humphrey's Executor*, and the same considerations compel the same result here.[9]

As a final fallback, plaintiff proposes that this court "overturn[ ]" *Humphrey's Executor* or "limit[ ] [it] to its facts."  Pl. Br. 22 n.3.  The Supreme Court, however, has not overruled *Humphrey's Executor*, *see Seila Law*, 591 U.S. at 228; *Free Enter. Fund*, 561 U.S. at 483, and the case remains binding precedent, *see Calcutt*, 37 F.4th at 313-14; *see also Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) ("[A] lower court should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (cleaned up)).  The removal protection for NLRB members thus is constitutional.

---

[9]  Even if this court concludes that Article II requires that NLRB members be removable for inefficiency, the solution would not be to hold the removal protection unconstitutional or to grant plaintiff a preliminary injunction.  Instead, the court could simply construe the NLRA's authorization of removal for "neglect of duty," 29 U.S.C. § 153(a), to allow removal for inefficiency.  *See Morrison*, 487 U.S. at 682 ("[I]t is the duty of federal courts to construe a statute in order to save it from constitutional infirmities . . . .");  H.R. Rep. No. 74-1371, at 4 (describing NLRA's removal protection as "[s]imilar" to that upheld in *Humphrey's Executor*).

**B.    The removal protection for NLRB ALJs is also constitutional.**

Plaintiff is equally unlikely to succeed in its argument that NLRB ALJs' two-layer removal protection is unconstitutional.[10]  The Supreme Court has recognized that Congress may protect inferior officers, like ALJs, from at-will removal so long as the "restriction is [not] of such a nature that it impedes the President's ability to perform his constitutional duty." *Seila Law*, 591 U.S. at 217 (cleaned up).  And, although the Court has held that dual layers of removal protection sometimes violate the separation of powers, it expressly declined to extend that holding to ALJs.  *See Free Enter. Fund*, 561 U.S. at 507 n.10, 514.  Based on those precedents, this court reasoned in *Calcutt* that the two-layer protection enjoyed by ALJs serving the FDIC was likely constitutional.  *See* 37 F.4th at 319-20.  The Ninth Circuit had previously reached the same conclusion concerning ALJs in the Department of Labor, *see Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1129-36 (9th Cir. 2021), and the Tenth Circuit has since concurred with

---

[10]  NLRB ALJs are removable "only for good cause established and determined by the Merit Systems Protection Board," 5 U.S.C. § 7521(a), whose members are also removable only for cause, *id.* § 1202(d).

respect to ALJs employed by the CPSC, *see Leachco*, 103 F.4th at 763-65. Those decisions were correct, and plaintiff develops no meaningful argument to the contrary — indeed, it does not even acknowledge the Ninth or Tenth Circuit decisions.[11]

Instead, plaintiff tries — and fails — to distinguish NLRB ALJs from the FDIC ALJs considered in *Calcutt*. In particular, plaintiff relies on the fact that an NLRB ALJ's decision "become[s] the order of the Board" unless either party files exceptions, *see* 29 U.S.C. § 160(c), or the Board orders review, *see Hedstrom Co. v. NLRB*, 629 F.2d 305, 315-16 (3d Cir. 1980); 29 U.S.C. § 160(d) — though plaintiff does not reference this latter possibility. Far from being an outlier, however,

---

[11] Plaintiff appears to suggest in passing that NLRB ALJs exercise too much authority to allow even one layer of removal protection. Pl. Br. 23. Plaintiff cites no case holding that a single-layer removal protection for ALJs is unconstitutional, and, to amici States' knowledge, none exists. In support of this novel view, plaintiff points to NLRB ALJs' ability to "control[ ] the presentation and admission of evidence" and the fact that their decisions sometimes become final without further action by the Board. *Id.* The ability to administer evidence presentation is a core aspect of all ALJs' responsibilities, *see, e.g.*, 5 U.S.C. § 556(c), yet no court has concluded that it "impedes the President's ability to perform his constitutional duty," *Seila Law*, 591 U.S. at 217 (cleaned up), and plaintiff leaves unexplained how it might do so. And the potential finality of ALJ decisions cannot bear the weight plaintiff places on it for the reasons discussed below. *Infra* pp. 30-32.

30

that commonplace forfeiture rule is the default arrangement under the Administrative Procedure Act.  *See* 5 U.S.C. § 557(b).  Functionally identical arrangements govern ALJs employed by the FDIC, *see* 12 C.F.R. §§ 308.39(b), 308.40(c)(1) (FDIC Board of Directors need not consider issues not raised by parties); CPSC, *see* 16 C.F.R. § 1025.52 (ALJ's decision final unless party appeals or agency orders review); and Department of Labor, *see* 20 C.F.R. § 725.479(a) (same); *see also Decker*, 8 F.4th at 1134 (even if appeal filed, ALJ's factual findings reviewable only under substantial-evidence standard).  So plaintiff's observation provides no basis to depart from *Calcutt*, *Decker*, or *Leachco*.

Even setting aside those decisions, plaintiff's argument falls short as a doctrinal matter.  In considering a removal claim, courts must evaluate "whether [the] removal restriction . . . impedes the President's ability to perform his constitutional duty."  *Seila Law*, 591 U.S. at 217 (cleaned up).  It is difficult to see how the forfeiture rule could do so:  for the rule to have any effect, the case must be sufficiently unimportant that the Board elects not to hear it in the first instance, *see* 29 U.S.C. § 160(b), and the ALJ's decision must be sufficiently uncontroversial that neither party appeals and the Board declines to order review sua

31

sponte. Plaintiff does not explain how ALJs' actions in this class of cases could interfere with the President's constitutional duties.

Plaintiff's reliance on the Fifth Circuit's decision in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *aff'd*, 603 U.S. 109 (2024), is also misplaced. As the Tenth Circuit explained, the Fifth Circuit "seemed to disregard the distinction between [the inferior officers for whom the Supreme Court held a two-layer removal protection unconstitutional] in *Free Enterprise Fund*, who exercised executive functions, and ALJs, who perform adjudicatory functions." *Leachco*, 103 F.4th at 764. As a result, *Jarkesy* stands as the only circuit-level decision striking down removal protections for ALJs. In reviewing the decision, the Supreme Court declined to adopt the Fifth Circuit's removal reasoning while resolving the case on other grounds, *see SEC v. Jarkesy*, 603 U.S. 109, 140-41 (2024), and three Justices expressly disagreed with the Fifth Circuit's removal holding, *id.* at 170 n.1 (Sotomayor, J., dissenting). *Jarkesy* — and decisions from district courts in the Fifth Circuit that

were bound by it — thus cannot overcome *Calcutt*.[12]  The removal

protection for NLRB ALJs is constitutional.

## CONCLUSION

For these reasons, the Court should affirm the district court's

denial of preliminary injunctive relief.

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

/s/ Alex Hemmer
ALEX HEMMER
Deputy Solicitor General
R. SAM HORAN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5526
alex.hemmer@ilag.gov

---

[12] Nor can the U.S. District Court for the District of Columbia's decision in *VHS Acquisition*, which held that NLRB ALJs' removal protection was unconstitutional only after "disagree[ing]" with *Calcutt* in favor of *Jarkesy*.  2024 WL 5056358, at *9.

KRIS MAYES
*Attorney General*
*State of Arizona*
2005 N. Central Avenue
Phoenix, AZ 85004

ROB BONTA
*Attorney General*
*State of California*
1300 I Street
Sacramento, CA 95814

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway
Denver, CO 80203

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th Street NW, Suite 8100
Washington, DC 20001

ANNE E. LOPEZ
*Attorney General*
*State of Hawai'i*
425 Queen Street
Honolulu, HI 96813

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
Augusta, ME 04333

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of*
*  Massachusetts*
One Ashburton Place
Boston, MA 02108

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. MLK Jr. Blvd.
St. Paul, MN 55155

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

RAÚL TORREZ
*Attorney General*
*State of New Mexico*
201 3rd Street NW
Albuquerque, NM 87109

DAN RAYFIELD
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

JOSHUA L. KAUL
*Attorney General*
*State of Wisconsin*
17 W. Main Street
Madison, WI 53703

March 5, 2025

MATTHEW J. PLATKIN
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Maine Street
Providence, RI 02903

NICHOLAS W. BROWN
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) because it contains 6,491 words, excluding the parts of the brief exempted by Rule 32(f).  This brief complies with the typeface requirement of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.

/s/ Alex Hemmer
ALEX HEMMER

March 5, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2025, I electronically filed the foregoing Brief of Amici Curiae Illinois et al. with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


/s/ Alex Hemmer
ALEX HEMMER